# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES LIFE INSURANCE COMPANY | : | |
| OF THE CITY OF NEW YORK, et al., | : | |
| | : | Civil Action No. |
| Plaintiffs, | : | 3:03 CV 2114 (AVC) |
| | : | |
| v. | : | |
| | : | |
| TRUSTMARK INSURANCE COMPANY, | : | October 1, 2007 |
| | : | |
| Defendant. | : | |

## **TRUSTMARK'S PROPOSED JURY INSTRUCTIONS**

Anthony M. Fitzgerald (ct 04167)
Howard K. Levine (ct 10555)
CARMODY & TORRANCE LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT  06509
Phone:  (203) 777-5501
Facsimile:  (203) 784-3199

Robert L. Byman (ct 19410)
Joel T. Pelz (ct 25800)
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL  60611-7603
Phone:  (312) 222-9350
Facsimile:  (312) 527-0484

Attorneys for Defendant
Trustmark Insurance Company

# TABLE OF CONTENTS

Page No.

**PRELIMINARY INSTRUCTIONS** ....................................................................................... 1

Introductory Statement ................................................................................................. 1

Order of Trial ................................................................................................................ 3

Province of Judge and Jury ......................................................................................... 4

Jury Conduct ................................................................................................................ 5

Evidence in the Case ................................................................................................... 6

What is not Evidence ................................................................................................... 8

Direct and Circumstantial Evidence ........................................................................... 9

Burden of Proof ........................................................................................................... 10

Credibility of Witnesses .............................................................................................. 11

**INSTRUCTIONS DURING TRIAL** ..................................................................................... 12

Cautionary Instruction Before Recess ....................................................................... 12

Bench Conferences ..................................................................................................... 13

Depositions as Substantive Evidence ........................................................................ 14

Use of Interrogatories ................................................................................................. 15

Judge's Comments to Lawyer ..................................................................................... 16

Objections and Rulings ............................................................................................... 17

**INSTRUCTIONS AT CLOSE OF EVIDENCE** ................................................................... 18

Closing Instruction ...................................................................................................... 18

Evidence in the Case ................................................................................................... 19

Corporate Parties' Agents and Employees ................................................................ 20

Jury Procedures ........................................................................................................... 21

Standard of Proof: Preponderance of the Evidence .................................................. 22

Standard of Proof: Clear and Convincing Evidence .................................................. 23

Inferences .................................................................................................................... 24

Failure to Call Available Witness ................................................................................ 25

Failure to Produce Available Evidence ...................................................................... 26

Suppression or Fabrication of Evidence .................................................................... 27

Expert Witnesses................................................................................................................28

Charts and Summaries ........................................................................................................29

Oral Statements or Admissions...........................................................................................30

Answers to Interrogatories..................................................................................................31

Discrepancies in Testimony................................................................................................32

Use of Depositions as Evidence..........................................................................................33

Impeachment.......................................................................................................................34

Effect of refusal of witness to answer................................................................................35

Inference Based on Invocation of the Fifth Amendment Privilege ....................................36

Duty to Deliberate...............................................................................................................37

Election of Foreperson: Special Verdicts ...........................................................................38

Verdict Forms: Jury's Responsibility .................................................................................39

Communications Between Court and Jury During Jury's Deliberations..............................40

Agency of WEB..................................................................................................................41

Joint Venture Definition .....................................................................................................42

Definition of Reinsurance...................................................................................................43

The Parties' Claims.............................................................................................................44

Plaintiffs' Claims:  Introduction ........................................................................................45

Plaintiffs' Count I:  Introduction .......................................................................................47

Plaintiffs' Count I:  Elements ............................................................................................48

Plaintiffs' Count I:  Existence of a Contract......................................................................50

Plaintiffs' Count I:  Contingent Contract...........................................................................52

Plaintiffs' Count I:  Performance by Plaintiff.....................................................................54

Plaintiffs' Count I:  Breach of Contract..............................................................................55

Plaintiffs' Count I:  Existence And/Or Failure of Condition Precedent ..............................56

Plaintiffs' Count I:  Affirmative Defenses to Contract Enforcement ..................................57

Plaintiffs' Count I:  Affirmative Defenses – Breach of Partnership Duty............................58

Plaintiffs' Count I:  Affirmative Defense – Breach of Partnership Duties...........................60

Count I: Affirmative Defense – Breach of Partnership Duties.............................................61

Plaintiffs' Count I: Affirmative Defense - Breach of Partnership Duties.............................63

Plaintiffs' Count I:  Affirmative Defenses – Breach of Contract .......................................65

Plaintiffs' Count I:  Affirmative Defenses – Breach of Implied Duty of Utmost
Good Faith ..........................................................................................................................67

Plaintiffs' Count I:  Affirmative Defenses – Estoppel.................................................69

Plaintiffs' Count IV:  Introduction..............................................................................71

Plaintiffs' Count IV:  Elements ...................................................................................72

Plaintiffs' Count IV:  Existence of a Contract .............................................................74

Plaintiffs' Count IV:  Contingent Contract...................................................................76

Plaintiffs' Count IV:  Performance by Plaintiff.............................................................78

Plaintiffs' Count IV:  Breach of Contract .....................................................................79

Plaintiffs' Count IV:  Existence And/Or Failure of Condition Precedent .....................80

Plaintiffs' Count IV:  Resulting Damages ....................................................................81

Plaintiffs' Count IV:  Affirmative Defenses to Contract Enforcement .........................82

Plaintiffs' Count IV:  Affirmative Defenses – Breach of Partnership Duty...................83

Plaintiffs' Count IV:  Affirmative Defense – Breach of Partnership Duties ..................85

Count IV: Affirmative Defense – Breach of Partnership Duties ...................................86

Count IV: Affirmative Defense – Breach of Partnership Duties ...................................88

Plaintiffs' Count IV:  Affirmative Defenses – Breach of Contract ...............................90

Plaintiffs' Count IV:  Affirmative Defenses – Breach of Implied Duty of Utmost
Good Faith .................................................................................................................92

Plaintiffs' Count IV:  Affirmative Defenses – Waiver .................................................94

Plaintiffs' Count IV:  Affirmative Defenses – Estoppel...............................................95

Plaintiffs' Count IV:  Damages ...................................................................................97

Plaintiffs' Count V:  Introduction................................................................................98

Plaintiffs' Count V:  Elements.....................................................................................99

Plaintiffs' Count V:  Existence of a Contract .............................................................101

Plaintiffs' Count V:  Contingent Contract ..................................................................103

Plaintiffs' Count V:  Performance by Plaintiff ...........................................................105

Plaintiffs' Count V:  Breach of Contract ....................................................................106

Plaintiffs' Count V:  Existence And/Or Failure of Condition Precedent .....................107

Plaintiffs' Count V:  Resulting Damages ...................................................................108

Plaintiffs' Count V:  Follow the Fortunes Doctrine ....................................................109

Plaintiffs' Count V:  Reinsurance – No Follow the Fortunes......................................110

Plaintiffs' Count V:  Reinsurance – Follow the Fortunes............................................111

Plaintiffs' Count V:  Affirmative Defenses to Contract Enforcement.........................113

Plaintiffs' Count V:  Affirmative Defenses – Breach of Partnership Duty ..................114

Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties ............................116

Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties ............................117

Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties ............................119

Plaintiffs' Count V:  Affirmative Defenses – Breach of Contract............................................121

Plaintiffs' Count V:  Affirmative Defenses – Breach of Implied Duty of Utmost
Good Faith ......................................................................................................................123

Plaintiffs' Count V:  Damages..................................................................................................125

Plaintiffs' Count VI:  Introduction............................................................................................126

Plaintiffs' Count VI:  Elements ................................................................................................127

Plaintiffs' Count VI:  Existence of a Contract .........................................................................128

Plaintiffs' Count VI:  Contingent Contract ..............................................................................130

Plaintiffs' Count VI:  Performance by Plaintiff........................................................................132

Plaintiffs' Count VI:  Breach of Contract ................................................................................133

Plaintiffs' Count VI:  Existence And/Or Failure of Condition Precedent ...............................134

Plaintiffs' Count VI:  Resulting Damages ...............................................................................135

Plaintiffs' Count VI:  Follow the Fortunes Doctrine ...............................................................136

Plaintiffs' Count VI:  Reinsurance – No Follow the Fortunes .................................................137

Plaintiffs' Count VI:  Reinsurance – Follow the Fortunes ......................................................138

Plaintiffs' Count VI:  Affirmative Defenses to Contract Enforcement ...................................140

Plaintiffs' Count VI:  Affirmative Defenses – Breach of Partnership Duty............................141

Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties ...........................143

Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties ...........................144

Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties ...........................146

Plaintiffs' Count VI:  Affirmative Defenses – Breach of Contract .........................................148

Plaintiffs' Count VI:  Affirmative Defenses – Breach of Implied Duty of Utmost
Good Faith ......................................................................................................................150

Plaintiffs' Count VI:  Damages ................................................................................................152

Trustmark's Claims Against US Life:  Introduction ................................................................153

Trustmark's Count I Against US Life:  Introduction................................................................155

Trustmark's Count I Against US Life:  Elements.....................................................................156

Trustmark's Count I Against US Life:  Partnership .................................................................158

Trustmark's Count I Against US Life:  Partnership Duties......................................................159

Trustmark's Count I Against US Life:  Partnership Duties......................................................161

iv

Trustmark's Count I Against US Life: Partnership Duties ......................................................162

Trustmark's Count I Against US Life:  Resulting Damage ..................................................163

Trustmark's Count I Against US Life:  Affirmative Defenses ................................................164

Trustmark's Count I Against US Life: Affirmative Defenses – Estoppel ..............................165

Trustmark's Count I Against US Life: Damages...................................................................166

Trustmark's Count I Against US Life: Punitive/Exemplary Damages...................................167

Trustmark's Count II Against US Life:  Introduction ..........................................................168

Trustmark's Count II Against US Life:  Elements ...............................................................169

Trustmark's Count II Against US Life:  Partnership...........................................................171

Trustmark's Count II Against US Life:  Partnership Duties ................................................172

Trustmark's Count II Against US Life:  Partnership Duties ................................................174

Trustmark's Count II Against US Life:  Partnership Duties ................................................175

Trustmark's Count II Against US Life: Affirmative Defenses................................................176

Trustmark's Count II Against US Life: Affirmative Defenses – Estoppel.............................177

Trustmark's Count III Against US Life:  Introduction .........................................................178

Trustmark's Count III Against US Life:  Elements ..............................................................179

Trustmark's Count III Against US Life:  Partnership...........................................................181

Trustmark's Count III Against US Life:  Partnership Duties ...............................................182

Trustmark's Count III Against US Life:  Partnership Duties ...............................................184

Trustmark's Count III Against US Life: Partnership Duties ................................................185

Trustmark's Count III Against US Life:  Affirmative Defenses ............................................186

Trustmark's Count III Against US Life: Affirmative Defenses – Estoppel ...........................187

Trustmark's Count IV Against US Life:  Introduction..........................................................188

Trustmark's Count IV Against US Life:  Elements...............................................................189

Trustmark's Count IV Against US Life:  Proof of Formation of Contract............................190

Trustmark's Count IV Against US Life:  Promissory Estoppel ............................................192

Trustmark's Count IV Against US Life:  Performance .........................................................193

Trustmark's Count IV Against US Life:  Breach of Contract ...............................................194

Trustmark's Count IV Against US Life:  Damages as a Result of Breach.............................195

Trustmark's Count IV Against US Life:  Damages...............................................................196

Trustmark's Claims Against All American:  Introduction ....................................................197

Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark:
Introduction...........................................................................................................199

v

Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Elements.................................................................................................................200

Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Partnership ............................................................................................................202

Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Binding of a Contract..........................................................................................203

Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Damages..............................................................................................................205

Trustmark's Count II Against All American:  Introduction ...............................206

Trustmark's Count II Against All American:  Elements ....................................207

Trustmark's Count II Against All American:  Partnership.................................209

Trustmark's Count II Against All American:  Partnership Duties .....................210

Trustmark's Count II Against All American:  Partnership Duties .....................212

Trustmark's Count II Against All American:  Partnership Duties .....................213

Trustmark's Count II Against All American:  Resulting Damage ......................214

Trustmark's Count II Against All American:  Affirmative Defenses ..................215

Trustmark's Count II Against All American: Affirmative Defenses – Estoppel ...................216

Trustmark's Count II Against All American: Damages .....................................218

Trustmark's Count III Against All American:  Introduction...............................219

Trustmark's Count III Against All American:  Elements....................................220

Trustmark's Count III Against All American:  Partnership ................................221

Trustmark's Count III Against All American:  Damages....................................222

Trustmark's Count IV Against All American:  Introduction...............................223

Trustmark's Count IV Against All American:  Elements....................................225

Trustmark's Count IV Against All American:  Proof of Formation of Contract ...................226

Trustmark's Count IV Against All American:  Promissory Estoppel ..................228

Trustmark's Count IV Against All American:  Performance ..............................229

Trustmark's Count IV Against All American:  Breach of Contract ....................230

Trustmark's Count IV Against All American:  Damages as a Result of Breach....................232

Trustmark's Count IV Against All American:  Damages....................................233

Trustmark's Claim Against US Life:  Introduction ...........................................234

Trustmark's Claim Against US Life:  Elements.................................................235

Trustmark's Claim Against US Life: Breach of Contract ..................................236

Trustmark's Claim Against US Life:  Resulting Damage ..................................237

vi

Trustmark's Claim Against US Life:  Damages ....................................................238

US Life's Counterclaim:  Introduction ...................................................................239

US Life's Counterclaim:  Elements ........................................................................240

US Life's Counterclaim:  Existence of a Contract .................................................242

US Life's Counterclaim:  Contingent Contract ......................................................244

US Life's Counterclaim:  Performance by Plaintiff ...............................................246

US Life's Counterclaim:  Breach of Contract ........................................................247

US Life's Counterclaim:  Existence And/Or Failure of Condition Precedent........248

US Life's Counterclaim:  Resulting Damages ........................................................249

US Life's Counterclaim:  Follow the Fortunes Doctrine.........................................250

US Life's Counterclaim:  Reinsurance – No Follow the Fortunes ..........................251

US Life's Counterclaim:  Reinsurance – Follow the Fortunes ...............................252

US Life's Counterclaim:  Affirmative Defenses to Contract Enforcement.............254

US Life's Counterclaim:  Affirmative Defenses – Breach of Partnership Duty ...................255

US Life's Counterclaim:  Affirmative Defense – Breach of Partnership Duties....................257

US Life's Counterclaim:  Affirmative Defense – Breach of Partnership Duties....................258

US Life's Counterclaim:  Affirmative Defense – Breach of Partnership Duties....................260

US Life's Counterclaim:  Affirmative Defenses – Breach of Contract..................262

US Life's Counterclaim:  Affirmative Defenses – Breach of Implied Duty of Utmost Good Faith ........................................................................................................264

US Life's Counterclaim:  Affirmative Defenses – Estoppel ...................................266

US Life's Counterclaim:  Affirmative Defenses – Waiver......................................268

US Life's Counterclaim:  Damages ........................................................................269

**DEFENDANT'S PROPOSED INSTRUCTION NO. 1**

**PRELIMINARY INSTRUCTIONS**

<u>**Introductory Statement**</u>

We are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before.  Let me briefly explain some of the most common to you.  The party who sues is called the plaintiff.  In this action, the plaintiffs are United States Life Insurance Company of the City of New York or US Life and American General Life Insurance Company.  American General Life Insurance Company was formerly known as All American Life Insurance Company or All American.  The party being sued is called the defendant.  In this action, the defendant is Trustmark Insurance Company or Trustmark.  The defendant Trustmark has also filed what is known as a counterclaim in which the defendant seeks to recover damages from the plaintiffs.

You will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received in to evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence.

From time to time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  You should not be unfair or partial against a lawyer or

the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.

The trial lawyers are not allowed to speak with you during this case.  When you see them at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Source/Authority:**          O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                               101.01 (5th ed. 2007) (modified).
**Given:**                     _____
**Given as Modified:**         _____
**Rejected:**                  _____
**Withdrawn:**                 _____

2

**DEFENDANT'S PROPOSED INSTRUCTION NO. 2**

**PRELIMINARY INSTRUCTIONS**

**<u>Order of Trial</u>**

The case will proceed as follows:

First, the lawyer for each side may make opening statements.  What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, the plaintiffs All American and US Life will present evidence in support of plaintiffs' claims and the defendant's lawyer may cross-examine the witnesses.  At the conclusion of All American's and US Life's case, the defendant Trustmark will present evidence in support of its defense and its claims against plaintiffs and the plaintiffs' lawyer may cross-examine the witnesses.  The plaintiffs All American and US Life may then present rebuttal evidence in support of their claims, and the defendant Trustmark may then present sur-rebuttal evidence in support of its claims.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 101.02 (5th ed. 2007) (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 3**

**PRELIMINARY INSTRUCTIONS**

<u>**Province of Judge and Jury**</u>

After all of the evidence has been heard and arguments and instructions are finished, you will meet to make your decision.  You will determine the facts from all the testimony and other evidence that is presented.  You are the sole and exclusive judge of the facts.  I must stress that you are required to accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury.  Such comments are only expressions of my opinion as to the facts.  You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

**Source/Authority:**        O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                              101.10 (5th ed. 2007) (unmodified).

**Given:**                   _____
**Given as Modified:**       _____
**Rejected:**                _____
**Withdrawn:**               _____

4

**DEFENDANT'S PROPOSED INSTRUCTION NO. 4**

**PRELIMINARY INSTRUCTIONS**

**<u>Jury Conduct</u>**

To insure fairness, you must obey the following rules:

1.      Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.      Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell people you are a juror, but do not tell them anything else about the case.

3.      Outside the courtroom, do not let anyone tell you anything about the case, or about anyone else involved with it until the trial has ended.  If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.      During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case--you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.      Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6.      Do not do any research, such as checking dictionaries, or make any investigation about the case on your own.

7.      Do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8.      If you need to tell me something, simply give a signed note to the bailiff or clerk to give to me.


| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 101.11 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 5**

**PRELIMINARY INSTRUCTIONS**

**<u>Evidence in the Case</u>**

The evidence in the case will consist of the following:

1.      The sworn testimony of the witnesses, no matter who called the witness.

2.      All exhibits received in evidence, regardless of who may have produced the exhibits.

3.      All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  In some cases, a deposition may be played for you on videotape.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witnesses.  In other words, you are not limited solely to what you see and hear as the witnesses testifies.  You may draw from the facts that you find have been proved such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence.  I urge you to pay close attention to the testimony as it is given.

**Source/Authority:**      O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
101.40 (5th ed. 2007) (unmodified).

**Given:**        _____

**Given as Modified:**   _____

**Rejected:**        _____

**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 6**

**PRELIMINARY INSTRUCTIONS**

**<u>What is not Evidence</u>**

In deciding the facts of this case, you are not to consider the following as evidence:  statements and arguments of the lawyers, questions and objections of the lawyers, testimony that I instruct you to disregard, and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**Source/Authority:**        O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                            101.44 (5th ed. 2007) (unmodified).

**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 7**

**PRELIMINARY INSTRUCTIONS**

**<u>Direct and Circumstantial Evidence</u>**

Generally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  As a general rule, the law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

**Source/Authority:**     O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 101.42 (5th ed. 2007) (modified); *see id.* § 104.05.

**Given:**                    _____

**Given as Modified:**  _____

**Rejected:**               _____

**Withdrawn:**           _____

9

## DEFENDANT'S PROPOSED INSTRUCTION NO. 8

## PRELIMINARY INSTRUCTIONS

### <u>Burden of Proof</u>

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

**Source/Authority:**        O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                             101.41 (5th ed. 2007) (unmodified).

**Given:**                   _____

**Given as Modified:**       _____

**Rejected:**                _____

**Withdrawn:**               _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 9**

**PRELIMINARY INSTRUCTIONS**

**<u>Credibility of Witnesses</u>**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testifies about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence.  The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 101.43 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 10**

**INSTRUCTIONS DURING TRIAL**

<u>**Cautionary Instruction Before Recess**</u>

We are about to take our first recess.  I want to remind you of the instructions I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including other jurors, members of your family, people involved in the trial, or anyone else.  You may not permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the bailiff or clerk to give to me.

**Source/Authority:**        O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 102.01 (5th ed. 2007) (modified).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

12

**DEFENDANT'S PROPOSED INSTRUCTION NO. 11**

**INSTRUCTIONS DURING TRIAL**

**<u>Bench Conferences</u>**

From time to time it may be necessary for me to talk to the lawyers out of your hearing.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.  Do not consider my granting or denying a request for a conference as an indication of my opinion of the case or of what your verdict should be.

I do not wish to cause you any delay, but these conferences are necessary.  I apologize for any inconvenience and I will do what I can to limit the number and length of these conferences.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 102.02 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

13

## DEFENDANT'S PROPOSED INSTRUCTION NO. 12

## INSTRUCTIONS DURING TRIAL

### Depositions as Substantive Evidence

Testimony will now be presented through depositions.  A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial.  A witness's testimony may be presented in the form of a deposition if the witness is not present.  Some time before this trial, attorneys representing the parties in this case questioned the witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers will be shown to you today.

You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

**Source/Authority:**    O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 102.23 (5th ed. 2007) (modified).

**Given:**    _____

**Given as Modified:**    _____

**Rejected:**    _____

**Withdrawn:**    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 13**

**INSTRUCTIONS DURING TRIAL**

<u>**Use of Interrogatories**</u>

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 102.24 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

15

**DEFENDANT'S PROPOSED INSTRUCTION NO. 14**

**INSTRUCTIONS DURING TRIAL**

**<u>Judge's Comments to Lawyer</u>**

It is my duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure.  You are not to draw any inference against the side whom I may caution or warn during the trial.

**Source/Authority:**     O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §102.70 (5th ed. 2007) (unmodified).

**Given:**               _____

**Given as Modified:**    _____

**Rejected:**             _____

**Withdrawn:**            _____

16

**DEFENDANT'S PROPOSED INSTRUCTION NO. 15**

**INSTRUCTIONS DURING TRIAL**

<u>**Objections and Rulings**</u>

Testimony and exhibits can be admitted into evidence during a trial only if it meets certain criteria or standards.  It is the duty of the lawyer on each side of a case to object when the other side offers testimony or an exhibit that the lawyer believes is not properly admissible under the rules of law.  Only by offering an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence being offered by the other side.  You should not be influenced against any lawyer or the lawyer's client because the lawyer has made objections.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case.  I am simply making a ruling on a legal question.

**Source/Authority:**          O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 102.71 (5th ed. 2007) (unmodified).

**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 16**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Closing Instruction**</u>

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  You are not to be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

The lawyers properly have referred to some of the governing rules of law in their arguments.  If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 103.01 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

18

**DEFENDANT'S PROPOSED INSTRUCTION NO. 17**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Evidence in the Case</u>**

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 103.30 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

19

## DEFENDANT'S PROPOSED INSTRUCTION NO. 18

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### <u>Corporate Parties' Agents and Employees</u>

A corporation may act only through natural persons as its agents and employees.  In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of the authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

**Source/Authority:**      O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 103.31 (5th ed. 2007) (unmodified).

**Given:**      _____

**Given as Modified:**      _____

**Rejected:**      _____

**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 19**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Jury Procedures</u>**

You must follow the following rules while deliberating and returning your verdict:

First, when you go the jury room, you must select a foreperson.  The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the bailiff or clerk, signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone—including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law that I have given to you in my instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.  You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 103.50 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

21

**DEFENDANT'S PROPOSED INSTRUCTION NO. 20**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Standard of Proof: Preponderance of the Evidence**</u>

Plaintiffs US Life and All American have the burden in a civil action such as this to prove every essential element of each of their claims either by a preponderance of the evidence or by clear and convincing evidence.  If US Life and All American should fail to establish any essential element of a claim by the applicable standard, you should find for defendant Trustmark as to that claim.

As to the counterclaims, defendant Trustmark is in the position of a plaintiff, and Trustmark has the burden of proving the essential elements of its counterclaims by a preponderance of the evidence.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

**Source/Authority:**          O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                              104.01 (5th ed. 2007) (modified).

**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 21**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Standard of Proof: Clear and Convincing Evidence**</u>

"Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.02 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 22**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Inferences**</u>

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.20 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

24

**DEFENDANT'S PROPOSED INSTRUCTION NO. 23**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Failure to Call Available Witness</u>**

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.25 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 24**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Failure to Produce Available Evidence</u>**

If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.26 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

26

**DEFENDANT'S PROPOSED INSTRUCTION NO. 25**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Suppression or Fabrication of Evidence</u>**

If you should find that a party willfully suppressed or hid evidence in order to prevent its being presented in this trial, you may consider such suppression or hiding in determining what inferences to draw from the evidence or facts in the case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.27 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 26**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Expert Witnesses**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists for "expert witnesses."  An expert witness is a person who, by education and experience has become expert in some art, science, profession, or calling.  Expert witnesses may state their opinions as to matters in which they profess to be experts, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.40 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

28

**DEFENDANT'S PROPOSED INSTRUCTION NO. 27**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Charts and Summaries**</u>

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.26 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

29

**DEFENDANT'S PROPOSED INSTRUCTION NO. 28**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Oral Statements or Admissions</u>**

Evidence as to any oral statements or admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care. The person making the alleged statement or admission may not have expressed clearly the meaning intended, or the witness testifying to an alleged admission may have misunderstood or may have misquoted what was actually said.

However, when an oral statement or admission made outside of court is proved by reliable evidence, that statement or admission may be treated as trustworthy and should be considered along with all other evidence in the case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.53 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 29**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Answers to Interrogatories</u>**

Each party has introduced into evidence certain interrogatories – that is, questions together with answers signed and sworn to by the other party.  A party is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, a party does not bind itself to those answers.  The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

**Source/Authority:**          O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 104.72 (5th ed. 2007) (unmodified).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

31

**DEFENDANT'S PROPOSED INSTRUCTION NO. 30**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Discrepancies in Testimony</u>**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by the evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 105.01 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

32

**DEFENDANT'S PROPOSED INSTRUCTION NO. 31**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Use of Depositions as Evidence**</u>

During the trial, certain testimony has been presented by way of deposition.  The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath or on a videotape.  Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

**Source/Authority:**    O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 105.02 (5th ed. 2007) (modified).

**Given:**                   _____
**Given as Modified:**   _____
**Rejected:**                _____
**Withdrawn:**            _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 32

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### <u>Impeachment</u>

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 105.04 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

34

**DEFENDANT'S PROPOSED INSTRUCTION NO. 33**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Effect of refusal of witness to answer</u>**

The law requires that every witness answer all proper questions put to him or her at trial, unless I rule the witness is privileged to refuse to answer on Constitutional or other grounds.

The fact that a witness refuses to answer a question may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 105.10 (5th ed. 2007) (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 34

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Inference Based on Invocation of the Fifth Amendment Privilege

During the trial you heard evidence by AIG's former Senior Vice President in charge of Reinsurance, Christian Milton.  During his deposition in this case, Mr. Milton refused to answer questions on the ground that his answers might tend to incriminate him.  A witness has a constitutional right to decline to answer questions on the ground that his answers may tend to incriminate him.  You may, but you need not, infer by such refusal that the answers would have been adverse to the plaintiffs' interests.

**Source/Authority:**    Baxter v. Palmigiano, 425 U.S. 308, 318-19 (1976); Brink's Inc. v. City of New York, 717 F.2d 700, 710 (2d Cir. 1983); Cerro Gordo Charity v. N. Am. Life & Cas. Co., 819 F.2d 1471, 1481-82 (8th Cir. 1987); RAD Servs., Inc. v. Aetna Cas. & Sur. Co., 808 F.2d 271, 277 (3d Cir. 1986); Rosebud Sioux Tribe v. A&P Steel, Inc., 733 F.2d 509, 521-22 (8th Cir. 1984), cert. denied, 469 U.S. 1072 (1984); Penfield v. Venuti, 589 F. Supp. 250, 255 (D. Conn. 1984).

**Given:**    _____

**Given as Modified:**    _____

**Rejected:**    _____

**Withdrawn:**    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 35**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Duty to Deliberate</u>**

The verdict must represent the considered judgment of each of you.  In order to return a verdict it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and to change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 106.01 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 36

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Election of Foreperson: Special Verdicts

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesperson here in Court.

A form of special verdict has been prepared for your convenience.  You will take this form to the jury room.  I direct your attention to the form of special verdict.

You will note that each of the interrogatories or questions calls for a "Yes" or "No" answer.  The answer to each question must be the unanimous answer of the jury.  Your foreperson will write the unanimous answer of the jury in the space provided opposite each question when completed. As you will note from the wording of the questions, it will not be necessary to consider or answer question (2) if you answer to question (1) is "No."  Nor will it be necessary for you to consider or answer question (3), unless your answer to both questions (1) and (2) is "Yes."  And so on.

When you have reached unanimous agreement the foreperson will then date and sign the special verdict form. You will then return with the completed special verdict to the courtroom.


**Source/Authority:**          O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions §
                               106.05 (5th ed. 2007) (modified).

**Given:**                     _____
**Given as Modified:**         _____
**Rejected:**                  _____
**Withdrawn:**                 _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 37**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Verdict Forms: Jury's Responsibility</u>**

Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 106.07 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 38**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Communications Between Court and Jury During Jury's Deliberations</u>**

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing and I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

You will notice from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

| | |
|---|---|
| **Source/Authority:** | O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions § 106.08 (5th ed. 2007) (unmodified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

40

**DEFENDANT'S PROPOSED INSTRUCTION NO. 39**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Agency of WEB</u>**

An agent is a person who, by agreement with another, called the principal, represents the principal in dealings with third persons or transacts business, manages some affair or does some service for the principal, with or without compensation.  The agreement may be oral or written, express or implied.

An agent is acting within the scope of his authority if he is engaged in the transaction of business which has been assigned to him by his principal, or if he is doing anything which may reasonably be said to have been contemplated as a part of his service.  It is not necessary that an act or failure to act must have been expressly authorized by the principal.

If you find that WEB was the agent of US Life, All American, Trustmark, and/or the partnership and was acting within the scope of its authority as the agent of US Life, All American, Trustmark, or the partnership at the time of an act, then the act of WEB at the time was, in law, the act or omission of the US Life, All American, Trustmark, or the partnership.

**Source/Authority:**          Illinois Pattern Jury Instructions §50.04 - §50.06 (2006 ed.)
(modified);

**Given:**                             _____
**Given as Modified:**       _____
**Rejected:**                        _____
**Withdrawn:**                    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 40**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Joint Venture Definition**</u>

A joint venture and a partnership are generally synonymous.  Partnership legal principles govern joint ventures, and like partners, joint venturers owe partnership and fiduciary duties to one another.

| | |
|---|---|
| **Source/Authority:** | <u>Scandinavian Airlines Sys. Denmark-Norway-Sweden v. McDonald's Corp.</u>, 947 F. Supp. 1257, 1259 (N.D. Ill. 1996); <u>Landers-Scelfo v. Corp. Office Sys., Inc.</u>, 356 Ill. App. 3d 1060, 1066, 827 N.E.2d 1051, 1057-58 (Ill. App. Ct. 2005); <u>Dremco, Inc. v. S. Chapel Hill Gardens, Inc.</u>, 274 Ill. App. 3d 534, 538-39, 654 N.E.2d 501, 504-05 (Ill. App. Ct. 1995). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 41**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Definition of Reinsurance**</u>

Reinsurance is a contract whereby an insurer transfers or "cedes" to another insurer all or part of the risk it has assumed under a separate insurance policy in exchange for a portion of the premium.  In essence, reinsurance is insurance for insurance companies.

The insurance company which is transferring or "ceding" its risk is known as the reinsured, the original insurer, or the direct insurer.  The insurance company to which the risk is being transferred is known as the reinsurer.

**Source/Authority:**        Robert W. Strain, Reinsurance, Ch. 1 at p.9 (Revised Ed. 1997).
**Given:**                        _____
**Given as Modified:**        _____
**Rejected:**                      _____
**Withdrawn:**                  _____

43

**DEFENDANT'S PROPOSED INSTRUCTION NO. 42**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**The Parties' Claims**</u>

In this case, plaintiffs US Life and All American have asserted claims against Trustmark for breach of contract.

Trustmark has asserted claims against US Life and All American for breach of contract and breach of partnership duties.

First, I will explain each of plaintiffs' claims, then I will explain each of Trustmark's claims.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 43**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Claims:  Introduction</u>**

In this case, the plaintiffs US Life and All American have asserted breach of contract claims against Trustmark.

Plaintiffs contend that US Life and All American on the one hand, and defendant Trustmark on the other hand, were equal partners in a reinsurance pool created as joint venture to underwrite reinsurance.

According to plaintiffs, US Life, All American, and Trustmark formed a contract called the "Pooling Arrangement."  Plaintiffs contend that, under this contract:

(a)     WEB would bind assumed risks.  WEB could do so on Trustmark, US Life, or All American paper.  Although the technical steps which followed might vary depending upon which paper was used, the parties' agreement was that Trustmark, on the one hand, and US Life and All American, on the other hand, would share equally in the net profits and losses from the WEB business.

(b)     If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

(c)     If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

(d)     Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

(e)     The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

Plaintiffs allege that Trustmark breached the Pooling Arrangement by failing to pay half of payments, settlements, or judgments incurred by plaintiffs.

Trustmark admits that US Life on one hand, and US Life and All American on the other hand, formed a joint venture partnership to issue reinsurance contracts.  Trustmark denies that the parties formed a contract called a "Pooling Arrangement," and Trustmark denies that the parties agreed on all of the terms alleged by plaintiffs.  Further, Trustmark denies that plaintiffs settled

45

or otherwise resolved claims in good faith and that any action or failure to act on its part was a proximate cause of any damages to plaintiffs.  In addition, Trustmark claims that it was relieved of any obligations by plaintiffs' own breaches of their partnership and contractual obligations and under the doctrines of waiver and estoppel.


**Source/Authority:**      Am. Compl. ¶¶ 1, 11-12, 71-72, 95-112; Answer ¶¶ 1, 11-12, 71-72, 95-112; Affirm. Defs. 2-7.

**Given:**                 _____

**Given as Modified:**     _____

**Rejected:**              _____

**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 44**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count I:  Introduction</u>**

In Count I, US Life alleges that, under the Pooling Arrangement, Trustmark's share of the risk of the Superior National Treaty is one half of the net loss; US Life alleges that, as a result of the failure by WEB to place certain retrocessional coverage, Trustmark's share of losses is 37.5%. Further, as a result of losses in excess of the amount paid in a settlement with other retrocessional carriers, Trustmark's share exceeds 37.5%.

Trustmark denies US Life's allegations.  In addition, Trustmark claims that any obligation with respect to the Superior National Treaty was relieved in whole or in part by US Life's breaches of its partnership and contractual duties, and under the doctrine of estoppel.

**Source/Authority:**     Am. Compl. ¶¶ 81-84; Answer to Am. Coml. ¶¶ 81-84; Affirm. Defenses 2-7.

**Given:**                    _____
**Given as Modified:**     _____
**Rejected:**                _____
**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 45**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count I:  Elements</u>**

As stated in instruction 44, under Count I, US Life claims that Trustmark is obligated to bear a 37.5% share of the risk on the Superior National Treaty.  US Life has the burden of proving by a preponderance of the evidence:

      1.     The existence of a contract between US Life and Trustmark.

      2.     Performance by US Life of all of its obligations.

      3.     That Trustmark's failure to bear a 37.5% share of the risk on the Superior National Treaty would violate its obligations under the contract.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Trustmark.

If you find that each of the above elements has been proved, then you must consider Trustmark's claims of affirmative defenses.

Trustmark claims and has the burden of proving the following affirmative defenses by a preponderance of the evidence:

      1.     Breach of partnership duty

      2.     Breach of contractual duty

      3.     Breach of implied duty of utmost good faith and fair dealing

      4.     Estoppel

US Life denies Trustmark's affirmative defenses.

If you find from your consideration of all of the evidence that US Life has proved all the elements of its case and Trustmark has not proved any affirmative defense, you must find in favor of US Life on Count I.  If Trustmark proves one of its affirmative defenses, then it is relieved of its obligations under the contract and you must find in favor of Trustmark.

48

**Source/Authority:**  Illinois Pattern Instructions § 700.02 (modified).
**Given:**      _____
**Given as Modified:** _____
**Rejected:**     _____
**Withdrawn:**    _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 46

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count I:  Existence of a Contract

As stated in Instruction 45, the first element of a contract claim US Life must prove is the existence of a contract.  There is a contract if US Life proves there was an offer by one party, acceptance by the other party and consideration between the parties.

US Life claims that US Life and Trustmark entered into a contract called the "Pooling Arrangement," which had the following terms:

(a)     WEB could bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

(b)     If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

(c)     If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

(d)     Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

(e)     The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

(f)     Trustmark was obligated to contribute toward any Special Schedule P Deposit made by US Life.

To prove the existence of a contract between US Life and Trustmark, US Life has the burden of proving each of the following propositions by a preponderance of the evidence:

First, US Life must make or have made an offer to Trustmark or vice versa.  An "offer" is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

(1)     the communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

(2)     the important and necessary terms must be definite;

50

(3)      the terms must be communicated by words or conduct to the other party; and

(4)      the communication must give the other party the power to agree to its terms.

Second, the recipient of the offer accepted the offer made by the other party. "Acceptance" of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

(1)      the recipient of the offer must agree to all of the material terms in the offer; and

(2)      the recipient of the offer must have communicated agreement to the maker of the offer.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if US Life can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, or a promise to act or not to act.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).

**Given:**                   _____

**Given as Modified:**       _____

**Rejected:**                _____

**Withdrawn:**               _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 47**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count I:  Contingent Contract**

As indicated in instruction 46, to prove that the parties entered into a valid contract, US Life must prove that the parties reached a final agreement.

Trustmark contends that the parties negotiated only to the point of a tentative agreement and that a final agreement was contingent upon the parties finalizing and signing a contract.

US Life has the burden to prove that the parties reached a final agreement.  To establish that the parties reached a final agreement, US Life must prove at least one of the following facts:

      1.      That the parties reached a final agreement without any contingency that the parties finalize and sign a contract;

      2.      That, if the agreement was contingent on the parties finalizing and signing a contract, the contingency occurred; or

      3.      That, if the agreement was contingent on the parties finalizing and signing a contract and the contingency did not occur, the only reason it did not occur was because Trustmark failed to act reasonably with respect to matters under its control.

In determining whether the parties intended a final agreement to be contingent on their finalizing and signing a contract, you should consider any factors that you deem important, which may include the following factors: (1) whether agreements of this type are usually put in writing; (2) the complexity of the agreement; (3) the amount of money involved in the agreement; and (4) whether the negotiations between the parties indicate that the parties intended for there to be a formal written agreement at the end of the negotiations.

**Source/Authority:**        Kehoe, Robert E., Jr., Jury Instructions for Contract Cases § 4.08 (1995) (modified); see Quake Constr., Inc. v. Am. Airlines, Inc., 565 N.E.2d 281, 288, 289 (Ill. 1990) (holding that "[w]here the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done" and setting forth a list of factors that may be considered in "determining whether the parties intended to reduce their agreement to writing"); see also Kipnis v.

Mandel Metals, Inc., 471 N.E.2d 1033, 1037 (Ill. App. Ct. 2000) (holding that no binding contract existed where the parties expressed their intention to execute a "definitive written agreement" and no such agreement was ever executed).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 48**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count I:  Performance by Plaintiff</u>**

As stated in Instruction 45, the second element of a contract claim US Life must prove is it performed all obligations required of it under the contract.  To recover on its claim, US Life must prove it did what the contract required it to do or had a valid excuse for not doing so.

US Life claims that it performed under the contract by settling or otherwise resolving the claims related to the Superior National Treaty in good faith.  Trustmark denies that US Life performed under the contract by acting in good faith with respect to the Superior National Treaty.

**Source/Authority:**          Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**                      _____
**Given as Modified:**          _____
**Rejected:**                   _____
**Withdrawn:**                  _____

54

**DEFENDANT'S PROPOSED INSTRUCTION NO. 49**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count I:  Breach of Contract</u>**

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether Trustmark failed to do what it was required to do under the contract.

As stated in instruction 45, the third element of a contract claim which US Life must prove is Trustmark's breach of the contract.  To recover on its claim, US Life has the burden to prove that Trustmark failed to do something the contract required it to do.  US Life claims and has the burden of proving that, under the contract, Trustmark was required to bear 37.5% of the risk on the Superior National Treaty.

Trustmark denies US Life's allegations.  Trustmark also claims that it did not breach the contract because the parties agreed:

  1.   That any settlement or other resolution of claims would be made by a mutual joint agent or with the approval of both US Life and Trustmark; and

  2.   That US Life would be responsible for overseeing placement of retrocessional coverage and collecting from the retrocessionaires before sharing any retained risk with Trustmark.

Trustmark claims that US Life failed to involve Trustmark in settlement negotiations, agreements, and arbitrations related to the Superior National Treaty or obtain Trustmark's consent, and that US Life failed to ensure the placement of retrocessional coverage for the Superior National Treaty or collect from retrocessionaires.  The law regarding conditions will be explained in the next instruction.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

55

**DEFENDANT'S PROPOSED INSTRUCTION NO. 50**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count I:  Existence And/Or Failure of Condition Precedent**

As stated in instruction 45, the third element US Life must prove is Trustmark's failure to perform the obligations under the contract.  In this case, Trustmark claims the parties agreed that Trustmark did not have an obligation to pay until US Life had performed its obligations to:

    1.      Obtain Trustmark's informed consent to any settlement or other resolution of claims; and

    2.      Oversee placement of the agreed amount of retrocessional coverage and collect from the WEB facility's retrocessionaires before sharing any retained risk with Trustmark.

US Life has the burden of proving these conditions were not part of the contract.

If you find these conditions were part of the contract, you must then decide whether US Life obtained Trustmark's informed consent to the arbitration, settlement, and commutations entered in connection with the Superior National Treaty, and whether US Life ensured the placement of the agreed amount of retrocessional coverage and collected from the WEB facility's retrocessionaires.  If these conditions did not occur, then US Life cannot recover.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.09 (2006 ed.) (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 51**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count I:  Affirmative Defenses to Contract Enforcement</u>**

The law recognizes that sometimes, even though US Life may have met its burden of proving that a contract exists, facts or circumstances may exist which would excuse Trustmark from being liable to US Life.  These facts or circumstances are called affirmative defenses.

If this lawsuit, Trustmark has raised and has the burden to prove the following affirmative defenses:

     1.     Breach of partnership duty;
     2.     Material breach of contract;
     3.     Material breach of the implied duty of utmost good faith and fair dealing; and
     4.     Estoppel.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**     _____
**Given as Modified:**     _____
**Rejected:**     _____
**Withdrawn:**     _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 52**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count I:  Affirmative Defenses – Breach of Partnership Duty**

Trustmark claims that it is relieved from liability to US Life because US Life breached its partnership duties by taking (and failing to take) various actions in connection with the Superior National Treaty.  Trustmark claims that US Life failed to fulfill its obligation to oversee the placement of retrocessional coverage for the Superior National Treaty, unilaterally usurped from WEB control of claims handling and activities relating to the Superior National Treaty, to the exclusion of Trustmark, committed prejudicial errors, and denied Trustmark information.  In particular, Trustmark claims that US Life:

    a.      Misrepresented to Trustmark and others that it had obtained 75% reinsurance for the Superior National Treaty and that 50% had been or would be ceded to the Variable Quota Share ("VQS") Treaty;

    b.      Improperly accepted and failed to cancel the Superior National Treaty before it had obtained the retrocessional cover and verified the retrocessional placements;

    c.      Failed to conduct an investigation to determine whether the Superior National risk could be ceded to the VQS Treaty;

    d.      Ignored legal advice from its own counsel that it obtain an endorsement executed by the VQS;

    e.      Failed to share this legal advice, or the fact that documentation was incomplete, with Trustmark;

    f.      Unilaterally, without Trustmark's consent, elected not to cede the Superior National Treaty to the VQS;

    g.      Failed to obtain the promised reinsurance for the Superior National Treaty and refused offers by the VQS to accept some share for the Superior National Treaty;

    h.      Refused to allow Trustmark full access to partnership books and records;

    i.      Unilaterally conducted settlement negotiations and made settlement offers and agreements without the consent of Trustmark;

    j.      Excluded Trustmark from settlement negotiations (despite repeated requests to participate) and failed to provide Trustmark information that would enable it to evaluate any settlement offer or agreement;

    k.      Refused to allow Trustmark or its counsel to participate in, and failed to keep Trustmark advised of, activities related to the Superior National Treaty;

    l.      Unilaterally selected counsel for the Superior National Treaty arbitration, who represented US Life and were adverse to Trustmark, and denied Trustmark the right to have legal counsel who represented the interests of the partnership;

    m.      Made all decisions relating to the arbitration, including what witnesses and evidence to present;

    n.      Failed to keep Trustmark advised of its decisions and strategy both with respect to the arbitration and to Treaty matters generally;

    o.      Failed to rescind the Superior National Treaty in a timely fashion.

p.      Prejudiced its position in the Superior National arbitration by shopping for retrocessional coverage with the same allegedly faulty information that gave rise to its rescission claim;

q.      US Life unilaterally and improperly handled an arbitration against the WEB principals, ultimately settling and waiving claims;

r.      Unilaterally arbitrated against the WEB principals at a time it knew that the WEB principals would be key witnesses in the Superior National arbitration;

s.      Unilaterally waived claims during the Superior National arbitration; and

t.      Unilaterally chose not to require reconstitution of the Superior National arbitration panel following the death of one of the arbitrators.

US Life denies that it acted wrongfully.

This affirmative defense requires that Trustmark prove by a preponderance of the evidence that a partnership relationship existed between Trustmark and US Life.

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

If you find that US Life has failed to meet its burden of proof, then your verdict on Count I must be in favor of Trustmark.

| | |
|---|---|
| **Source/Authority:** | Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Worner Agency, Inc. v. Doyle, 121 Ill. App. 3d 219, 222-23, 459 N.E.2d 633, 635-36 (Ill. App. Ct. 1984) Kirkland & Ellis v. CMI Corp., No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); Smith v. Howery, 217 Mont. 23, 28,701 P.2d 1381, 1384 (Mont. 1985). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 53

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### **Plaintiffs' Count I:  Affirmative Defense – Breach of Partnership Duties**

Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.) at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1051, 381 N.E.2d 11, 14 (Ill. App. Ct. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Kirkland & Ellis v. CMI Corp., No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); Smith v. Howery, 217 Mont. 23, 28,701 P.2d 1381, 1384 (Mont. 1985). |

| | |
|---|---|
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 54**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Count I: Affirmative Defense – Breach of Partnership Duties</u>**

If you find that Trustmark has proved the existence of a partnership, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts which are in willful disregard of this duty or grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  Gross negligence does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

**Source/Authority:**    Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); <u>ARTRA Group, Inc. v. Salomon Bros. Holding Co.</u>, 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); <u>Winston & Strawn v. Nosal</u>, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); <u>Peskin v. Deutsch</u>, 134 Ill. App. 3d 48, 53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); <u>Saballus v. Timke</u>, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct.

1983); City of Mt. Carmel v. Guthridge, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); Zokoych v. Spalding, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); see also 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1098 (8th Cir. 2005); Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); Spector v. Konover, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 55**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count I: Affirmative Defense - Breach of Partnership Duties**</u>

In the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners. Where there are only two partners, however, agreement by both partners is required to take any action. In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other. The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

If a partner takes action within the partnership business over the objection of its co-partner without first obtaining consent from a majority of partners, or takes an action outside the ordinary scope of partnership business without first obtaining the consent of a majority of partners, that partner is liable for all damages resulting from that conduct.

**Source/Authority:**     805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); 805 Ill. Comp. Stat. §205/9 (2) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401 (j) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners.") (West 2007); 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983) (applying Illinois version of the UPA); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971) (partner not entitled to reimbursement from co-partner for costs incurred over the objection of co-partner); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind

a joint venture to an arbitration award if it acted without the authority of its co-adventurers); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (partner liable to co-partner for damages in the form of lost profits stemming from partner's breach of fiduciary duty); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg and Ribstein on Partnership</u> § 6.03(c)(1) (2007)

**Given:**                              _____
**Given as Modified:**                  _____
**Rejected:**                           _____
**Withdrawn:**                          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 56**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count I:  Affirmative Defenses – Breach of Contract**</u>

The second affirmative defense asserted by Trustmark is material breach of contract.  Trustmark claims that it is relieved from liability to US Life because US Life breached its contractual obligations duties by taking (and failing to take) various actions in connection with the Superior National Treaty.

Trustmark contends that US Life committed the following material breaches of contract:

1. US Life failed to ensure that 75% retrocessional coverage was placed for the Superior National Treaty;

2. US Life unilaterally usurped claims handling authority from WEB;

3. US Life unilaterally handled activities related to the Superior National Treaty, including the arbitration and settlement negotiations, to the exclusion of Trustmark and without its consent;

4. US Life unilaterally negotiated with and terminated the retrocessional protection of Overseas Partners Re (OP Re) without advance notice or consent from Trustmark.

5. US Life unilaterally elected not to cede the Superior National risk to the Variable Quota Share retrocessional treaty without advance notice or consent from Trustmark.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the contract and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1. Whether the breach would defeat the basic purpose of the contract;

2. Whether the breach would cause disproportionate prejudice to Trustmark;

3. Whether custom considers such a breach to be material; and

4. Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life materially breached any of its obligations under the contract, then your verdict must be in favor of Trustmark.

**Source/Authority:**       Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); <u>Mohanty v. St. John Heart Clinic</u>, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); <u>Heritage Bank & Trust Co. v. Abnor</u>, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); <u>Fireman's Fund v. Mortg. Corp. v. Zollicoffer</u>, 719 F. Supp. 650, 657 (N.D. Ill. 1989); <u>Danigegelis v. Pivan</u>, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing <u>Kosuga v. Kelly</u>, 257 F.2d 48, 56 (7th Cir. 1958)); <u>Goldstein v. Lustig</u>, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.").

**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 57**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count I:  Affirmative Defenses – Breach of Implied Duty of Utmost Good Faith**

Trustmark also contends that it is relieved from liability to US Life because US Life materially breached its contractual duty of utmost good faith and fair dealing.

Every reinsurance contract, including the contract alleged by US Life, contains an implied duty of utmost good faith and fair dealing.  The duty of utmost good faith and fair dealing obligates the parties to deal fairly, honestly, and candidly with one another.  This duty requires full and timely disclosure of all facts material to the reinsurance relationship.

The duty of utmost good faith and fair dealing applies in the context of claims administration and handling, including settlement and the payment of premiums.

To find a breach of the duty of utmost good faith and fair dealing, you need not find that the failure to disclose material facts was fraudulent or even intentional.  An innocent failure to disclose a material fact is sufficient to constitute a breach of the duty.

Trustmark contends that it is relieved from liability to US Life because US Life breached its contractual duty of utmost good faith and fair dealing by taking (and failing to take) various actions in connection with the Superior National Treaty, including:

1.   US Life misrepresented to Trustmark and others that 75% reinsurance had been obtained for the Superior National Treaty and that 50% of the risk had been or would be ceded to the Variable Quota Share ("VQS") Treaty;

2.   US Life failed to share legal advice, or the fact that the VQS documentation was incomplete, with Trustmark;

3.   US Life excluded Trustmark from settlement negotiations related to the Superior National Treaty, despite repeated requests to participate;

4.   US Life made settlement offers and agreements without Trustmark's knowledge or consent;

5.   US Life failed to provide Trustmark information that would enable it to evaluate any settlement offer or agreement; and

6.   US Life refused to allow Trustmark or its counsel to participate in, and failed to keep Trustmark advised of, activities related to the Superior National Treaty, including the Superior National arbitration.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the implied duty of utmost good faith and fair dealing and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.      Whether the breach would defeat the basic purpose of the contract;

2.      Whether the breach would cause disproportionate prejudice to Trustmark;

3.      Whether custom considers such a breach to be material; and

4.      Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life committed a material breach of its duty of utmost good faith and fair dealing, then your verdict must be in favor of Trustmark.

**Source/Authority:**          Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Martindell v. Lake Shore Nat'l Bank, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (Ill. 1958) ("Every contract implies good faith and fair dealing between the parties to it"); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract."); In the Matter of the Liquidation of Union Indem. Ins. Co. v. N.Y., 89 N.Y.2d 94, 106-07 (2d Cir. 1992); Unigard Sec. Ins. Co. v. North River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992).

**Given:**                        _____
**Given as Modified:**            _____
**Rejected:**                     _____
**Withdrawn:**                    _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 58

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count I:  Affirmative Defenses – Estoppel

If US Life led Trustmark to reasonably believe that compliance with a particular obligation would not be required, US Life cannot now enforce that obligation.  This is known as "estoppel."

Trustmark claims that US Life is barred by estoppel in the following respects.  Trustmark claims that US Life should be estopped from asserting that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty because:

1.    US Life represented that 75% retrocessional coverage had been placed, 50% with the VQS and 25% with Overseas Partners Re (OP Re); and

2.    US Life represented that Trustmark's share of the Superior National Treaty was 12 ½ %.

US Life denies this.

In order to prove a defense based on estoppel, Trustmark must show the following facts by clear and convincing evidence:

1.    US Life misrepresented or concealed material facts;

2.    US Life knew these misrepresentations were untrue at the time they were made;

3.    Trustmark did not know the representations were untrue at the time they were made and acted upon;

4.    US Life intended or reasonably expected that Trustmark would act upon the representations;

5.    Trustmark reasonably relied on the representations in good faith to its detriment;

6.    Trustmark would be prejudiced by its reliance on the representations if US Life is permitted to deny the truth thereof.

If you find each of these propositions to be proved, US Life should be barred from claiming that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty.

69

| | |
|---|---|
| **Source/Authority:** | <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); <u>see</u> Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 59

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### <u>Plaintiffs' Count IV:  Introduction</u>

In Count IV, US Life alleges that Trustmark breached the Pooling Arrangement by failing to pay 37.5% of the Special Schedule P Deposit made by US Life in connection with the Superior National Treaty.  US Life contends that, as a direct and proximate cause of Trustmark's failure to pay, US Life has suffered damages in the amount of $124.5 million.

Trustmark denies US Life's allegations.  In addition, Trustmark claims that it was relieved of any obligation with respect to the Special Schedule P Deposit by US Life's breaches of its own contractual and partnership obligations, and under the doctrines of waiver and estoppel.

| | |
|---|---|
| **Source/Authority:** | Am. Compl. ¶¶ 95-101; Answer to Am. Coml. ¶¶ 95-101; Affirm. Defenses 2-7. |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

71

**DEFENDANT'S PROPOSED INSTRUCTION NO. 60**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Elements</u>**

In Count IV, US Life claims that it is entitled to recover contract damages from Trustmark for breach of contract.  US Life has the burden of proving by a preponderance of the evidence:

    1.      The existence of a contract between US Life and Trustmark.

    2.      Performance by US Life of all of its obligations.

    3.      Trustmark's failure to adequately perform its obligations under the contract.

    4.      Resulting damage to US Life.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Trustmark.

If you find that each of the above elements has been proved, then you must consider Trustmark's claims of affirmative defenses.

Trustmark claims and has the burden of proving the following affirmative defenses by a preponderance of the evidence:

    1.      Breach of partnership duty

    2.      Breach of contractual duty

    3.      Breach of implied duty of utmost good faith and fair dealing

    4.      Waiver

    5.      Estoppel

US Life denies Trustmark's affirmative defenses.

If you find from your consideration of all of the evidence that US Life has proved all the elements of its case and Trustmark has not proved any affirmative defense, you must find in favor of US Life and consider the amount of damages to be awarded.  If Trustmark proves one of its affirmative defenses, then it is relieved of its obligations under the contract and you must find in favor of Trustmark.

72

**Source/Authority:**       Illinois Pattern Instructions § 700.02 (modified).
**Given:**                      _____
**Given as Modified:**   _____
**Rejected:**                  _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 61**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count IV:  Existence of a Contract**

As stated in Instruction 60, the first element of a contract claim US Life must prove is the existence of a contract.  There is a contract if US Life proves there was an offer by one party, acceptance by the other party and consideration between the parties.

US Life claims that US Life and Trustmark entered into a contract called the "Pooling Arrangement," which had the following terms:

    (a)    WEB could bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

    (b)    If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

    (c)    If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

    (d)    Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

    (e)    The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

    (f)    Trustmark was obligated to contribute toward any Special Schedule P Deposit made by US Life.

To prove the existence of a contract between US Life and Trustmark, US Life has the burden of proving each of the following propositions:

        First, US Life must make or have made an offer to Trustmark or vice versa.  An "offer" is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

    (1)    the communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

(2)     the important and necessary terms must be definite;
(3)     the terms must be communicated by words or conduct to the other party; and
(4)     the communication must give the other party the power to agree to its terms.

Second, the recipient of the offer accepted the offer made by the other party. "Acceptance" of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

(1)     the recipient of the offer must agree to all of the material terms in the offer; and
(2)     the recipient of the offer must have communicated agreement to the maker of the offer.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if US Life can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, or a promise to act or not to act.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).
**Given:**                        _____
**Given as Modified:**      _____
**Rejected:**                    _____
**Withdrawn:**                _____

75

## DEFENDANT'S PROPOSED INSTRUCTION NO. 62

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count IV:  Contingent Contract

As indicated in instruction 61, to prove that the parties entered into a valid contract, US Life must prove that the parties reached a final agreement.

Trustmark contends that the parties negotiated only to the point of a tentative agreement and that a final agreement was contingent upon the parties finalizing and signing a contract.

US Life has the burden to prove that the parties reached a final agreement.  To establish that the parties reached a final agreement, US Life must prove at least one of the following facts:

1.      That the parties reached a final agreement without any contingency that the parties finalize and sign a contract;

2.      That, if the agreement was contingent on the parties finalizing and signing a contract, the contingency occurred; or

3.      That, if the agreement was contingent on the parties finalizing and signing a contract and the contingency did not occur, the only reason it did not occur was because Trustmark failed to act reasonably with respect to matters under its control.

In determining whether the parties intended a final agreement to be contingent on finalizing and signing a contract, you should consider any factors that you deem important, which may include the following factors: (1) whether agreements of this type are usually put in writing; (2) the complexity of the agreement; (3) the amount of money involved in the agreement; and (4) whether the negotiations between the parties indicate that the parties intended for there to be a formal written agreement at the end of the negotiations.

**Source/Authority:**        Kehoe, Robert E., Jr., Jury Instructions for Contract Cases § 4.08 (1995) (modified); see Quake Constr., Inc. v. Am. Airlines, Inc., 565 N.E.2d 281, 288, 289 (Ill. 1990) (holding that "[w]here the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done" and setting forth a list of factors that may be considered in "determining whether the parties intended to reduce their agreement to writing"); see also Kipnis v. Mandel Metals, Inc., 471 N.E.2d 1033, 1037 (Ill. App. Ct. 2000) (holding that no binding contract existed where the parties

expressed their intention to execute a "definitive written agreement" and no such agreement was ever executed).

**Given:**                      _____

**Given as Modified:**          _____

**Rejected:**                   _____

**Withdrawn:**                  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 63**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Performance by Plaintiff</u>**

As stated in Instruction 60, the second element of a contract claim US Life must prove is it performed all obligations required of it under the contract.  To recover on its claim, US Life must prove it did what the contract required it to do or had a valid excuse for not doing so.

US Life claims that it performed under the contract by agreeing to a stipulation with the California Department of Insurance and making the Special Schedule P Deposit in good faith. Trustmark denies that US Life performed under the contract by acting in good faith.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 64**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count IV:  Breach of Contract**</u>

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether Trustmark failed to do what it was required to do under the contract.

As stated in instruction 60, the third element of a contract claim which US Life must prove is Trustmark's breach of the contract.  To recover on its claim, US Life has the burden to prove that Trustmark failed to do something the contract required it to do.  US Life claims and has the burden of proving that, under the contract, Trustmark was required to contribute 37.5% of the Special Schedule P Deposit that US Life posted in connection with the Superior National Treaty.

Trustmark denies US Life's allegations.  Trustmark also claims that it did not breach the contract because the parties agreed:

  1.  That any settlement or payment would be made by a mutual joint agent or with the approval of both US Life and Trustmark; and

  2.  That US Life would ensure the placement of the agreed retrocessional coverage and collect from the retrocessionaires before sharing any retained risk with Trustmark.

Trustmark claims that US Life failed to involve Trustmark in its stipulation with the California Department of Insurance requiring it to post the Special Schedule P Deposit or obtain Trustmark's consent, and that US Life failed to ensure the placement of the agreed retrocessional coverage for the Superior National Treaty or collect from retrocessionaires.  The law regarding conditions will be explained in the next instruction.

**Source/Authority:**  Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**     _____
**Given as Modified:** _____
**Rejected:**    _____
**Withdrawn:**   _____

79

**DEFENDANT'S PROPOSED INSTRUCTION NO. 65**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count IV:  Existence And/Or Failure of Condition Precedent**

As stated in instruction 60, the third element US Life must prove is Trustmark's failure to perform the obligations under the contract.  In this case, Trustmark claims the parties agreed that Trustmark did not have an obligation to pay unless or until:

1.      The settlement or payment was made by a mutual joint agent or with the approval of both US Life and Trustmark; and

2.      US Life ensured the placement of the agreed upon retrocessional coverage and collected from the WEB facility's retrocessionaires.

US Life has the burden of proving these conditions were not part of the contract.

If you find these conditions were part of the contract, you must then decide whether US Life obtained Trustmark's approval of its settlement with the California Department of Insurance and its Special Schedule P payment, and placed the agreed upon retrocessional coverage and collected from the WEB facility's retrocessionaires.  If these conditions did not occur, then US Life cannot recover.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.09 (2006 ed.) (modified).
**Given:**                          _____
**Given as Modified:**       _____
**Rejected:**                      _____
**Withdrawn:**                   _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 66**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Resulting Damages</u>**

If you find that Trustmark has breached the contract, you must decide whether US Life sustained damages as a result of Trustmark's breach of the contract.

As stated in Instruction 60, the fourth element of a contract claim is damages.  US Life must prove it sustained damage resulting from Trustmark's breach.  To recover on its claim, US Life must prove that, because of Trustmark's failure to perform the contract, it has been damaged.

Trustmark denies that US Life sustained damage as a result of Trustmark's alleged breach.

**Source/Authority:**    Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                        _____
**Given as Modified:**    _____
**Rejected:**                   _____
**Withdrawn:**               _____

81

**DEFENDANT'S PROPOSED INSTRUCTION NO. 67**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count IV:  Affirmative Defenses to Contract Enforcement**</u>

The law recognizes that sometimes, even though US Life may have met its burden of proving that a contract exists, facts or circumstances may exist which would excuse Trustmark from being liable to US Life.  These facts or circumstances are called affirmative defenses.

If this lawsuit, Trustmark has raised and has the burden to prove the following affirmative defenses:

1.      Breach of partnership duties;
2.      Material breach of contract;
3.      Material breach of implied duty of utmost good faith and fair dealing;
4.      Waiver; and
5.      Estoppel.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**                         _____
**Given as Modified:**       _____
**Rejected:**                     _____
**Withdrawn:**                  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 68**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count IV:  Affirmative Defenses – Breach of Partnership Duty**

Trustmark claims that it is relieved from liability to US Life because US Life breached its partnership duties by taking (and failing to take) various actions in connection with the Superior National Treaty and the Special Schedule P Deposit.  In particular, Trustmark claims that US Life:

a. Reneged on its agreement to be solely responsible for any Special Schedule P Deposit required in connection with the Superior National Treaty;

b. Unilaterally stipulated and agreed with the California Department of Insurance to post such a Deposit without advance notice or consent from Trustmark;

c. Wrongfully demanded cash contributions from Trustmark for such Deposit and filed a lawsuit to coerce Trustmark into paying such funds;

d. Misrepresented to Trustmark and others that it had obtained 75% reinsurance for the Superior National Treaty and that 50% had been or would be ceded to the Variable Quota Share ("VQS") Treaty;

e. Improperly accepted and failed to cancel the Superior National Treaty before it had obtained the retrocessional cover and verified the retrocessional placements;

f. Failed to conduct an investigation to determine whether the Superior National risk could be ceded to the VQS Treaty;

g. Ignored legal advice from its own counsel that it obtain an endorsement executed by the VQS and failed to share this legal advice, or the fact that documentation was incomplete, with Trustmark; and

h. Unilaterally, without Trustmark's consent, elected not to cede the Superior National Treaty to the VQS and refused offers by the VQS to accept some share for the Superior National Treaty.

US Life denies that it acted wrongfully.

This affirmative defense requires that Trustmark prove by a preponderance of the evidence that a partnership relationship existed between Trustmark and US Life.

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable

evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

If you find that US Life has failed to meet its burden of proof, then your verdict on Count IV must be in favor of Trustmark.


**Source/Authority:**   Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Worner Agency, Inc. v. Doyle, 121 Ill. App. 3d 219, 222-23, 459 N.E.2d 633, 635-36 (Ill. App. Ct. 1984); Kirkland & Ellis v. CMI Corp., No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); Smith v. Howery, 217 Mont. 23, 28,701 P.2d 1381, 1384 (Mont. 1985).

**Given:**   _____
**Given as Modified:**   _____
**Rejected:**   _____
**Withdrawn:**   _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 69

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count IV:  Affirmative Defense – Breach of Partnership Duties

Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

**Given:**              _____
**Given as Modified:**  _____
**Rejected:**           _____
**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 70**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Count IV: Affirmative Defense – Breach of Partnership Duties**</u>

If you find that Trustmark has proved the existence of a partnership, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts which are in willful disregard of this duty or grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  Gross negligence does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

**Source/Authority:**       Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48, 53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); Saballus v. Timke, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct.

86

1983); <u>City of Mt. Carmel v. Guthridge</u>, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); <u>Zokoych v. Spalding</u>, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); <u>see also</u> <u>Triple Five of Minn., Inc. v. Simon</u>, 404 F.3d 1088, 1098 (8th Cir. 2005); <u>Konover Dev. Corp. v. Zeller</u>, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); <u>Spector v. Konover</u>, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); <u>see also</u> 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____
**Given as Modified:** _____
**Rejected:** _____
**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 71**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Count IV: Affirmative Defense – Breach of Partnership Duties**</u>

In the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.  Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.  The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

If a partner takes action within the partnership business over the objection of its co-partner without first obtaining consent from a majority of partners, or takes an action outside the ordinary scope of partnership business without first obtaining the consent of a majority of partners, that partner is liable for all damages resulting from that conduct.

**Source/Authority:**   805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); 805 Ill. Comp. Stat. §205/9 (2) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401 (j) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners.") (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971) (partner not entitled to reimbursement from co-partner for costs incurred over the objection of co-partner); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg and Ribstein on Partnership</u> § 6.03(c)(1) (2007); 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting

that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (partner liable to co-partner for damages in the form of lost profits stemming from partner's breach of fiduciary duty)

**Given:**              _____
**Given as Modified:**  _____
**Rejected:**           _____
**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 72**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Affirmative Defenses – Breach of Contract</u>**

The second affirmative defense asserted by Trustmark is material breach of contract.  Trustmark claims that it is relieved from liability to US Life because US Life breached its contractual obligations duties by taking (and failing to take) various actions in connection with the Superior National Treaty and the Special Schedule P Deposit.

Trustmark contends that US Life committed the following material breaches of contract:

1.     US Life failed to ensure that 75% retrocessional coverage was placed for the Superior National Treaty;

2.     US Life unilaterally negotiated with and terminated the retrocessional protection of Overseas Partners Re (OP Re) without advance notice or consent from Trustmark;

3.     US Life unilaterally elected not to cede the Superior National risk to the Variable Quota Share retrocessional treaty without advance notice or consent from Trustmark;

4.     US Life reneged on its agreement to be solely responsible for any Special Schedule P Deposit required in connection with the Superior National Treaty; and

5.     US Life unilaterally stipulated and agreed with the California Department of Insurance to post such a Deposit without advance notice or consent from Trustmark.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the contract and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.     Whether the breach would defeat the basic purpose of the contract;

2.     Whether the breach would cause disproportionate prejudice to Trustmark;

3.     Whether custom considers such a breach to be material; and

4.     Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life materially breached any of its obligations under the contract, then your verdict must be in favor of Trustmark.

**Source/Authority:**      Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.").

**Given:**      _____

**Given as Modified:**      _____

**Rejected:**      _____

**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 73**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count IV:  Affirmative Defenses – Breach of Implied Duty of Utmost Good Faith**

Trustmark also contends that it is relieved from liability to US Life because US Life materially breached its contractual duty of utmost good faith and fair dealing.

Every reinsurance contract, including the contract alleged by US Life, contains an implied duty of utmost good faith and fair dealing.  The duty of utmost good faith and fair dealing obligates the parties to deal fairly, honestly, and candidly with one another.  This duty requires full and timely disclosure of all facts material to the reinsurance relationship.

The duty of utmost good faith and fair dealing applies in the context of claims administration and handling, including settlement and the payment of premiums.

To find a breach of the duty of utmost good faith and fair dealing, you need not find that the failure to disclose material facts was fraudulent or even intentional.  An innocent failure to disclose a material fact is sufficient to constitute a breach of the duty.

Trustmark contends that it is relieved from liability to US Life because US Life breached its contractual duty of utmost good faith and fair dealing by taking (and failing to take) various actions in connection with the Superior National Treaty and the Special Schedule P Deposit.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the implied duty of utmost good faith and fair dealing and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.    Whether the breach would defeat the basic purpose of the contract;

2.    Whether the breach would cause disproportionate prejudice to Trustmark;

3.    Whether custom considers such a breach to be material; and

4.    Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life committed a material breach of its duty of utmost good faith and fair dealing, then your verdict must be in favor of Trustmark.

**Source/Authority:**  Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Martindell v. Lake Shore Nat'l Bank, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (Ill. 1958) ("Every contract implies good faith and fair dealing between the parties to it"); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract."); In the Matter of the Liquidation of Union Indem. Ins. Co. v. N.Y., 89 N.Y.2d 94, 106-07 (2d Cir. 1992); Unigard Sec. Ins. Co. v. N. River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992).

**Given:**  _____

**Given as Modified:**  _____

**Rejected:**  _____

**Withdrawn:**  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 74**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Affirmative Defenses – Waiver</u>**

Trustmark claims that it is relieved from liability to US Life because US Life waived a particular part of the alleged contract and that US Life can no longer enforce that part of the agreement.

More specifically, Trustmark claims that the US Life waived certain terms of the alleged contract, including that which allegedly requires Trustmark to contribute to any Special Schedule P Deposit in connection with the Superior National Treaty.

US Life denies this.

In order to prove a defense based on waiver, Trustmark must show that US Life intended to relinquish a known right under the contract.  This may be shown by US Life's statements or by US Life's conduct (including delay or inaction), provided that the conduct clearly and unambiguously indicates that US Life intended to relinquish its rights.  A waiver may be express or implied.

| | |
|---|---|
| **Source:** | Kehoe, Robert E., Jr., Jury Instructions for Contract Cases §8.13 (1995) (modified); <u>Crum & Forster Managers Corp. v. Resolution Trust Corp.</u>, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

94

**DEFENDANT'S PROPOSED INSTRUCTION NO. 75**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Affirmative Defenses – Estoppel</u>**

If US Life led Trustmark to reasonably believe that compliance with a particular obligation would not be required, US Life cannot now enforce that obligation.  This is known as "estoppel."

Trustmark claims that US Life is barred by estoppel in the following respects.  Trustmark claims that US Life should be estopped from asserting that Trustmark has any responsibility with respect to the Special Schedule P Deposit because:

1.      US Life acknowledged and agreed that US Life would be solely responsible for any Special Schedule P Deposit that the California Department of Insurance might require with respect to the Superior National Treaty.

Trustmark claims that US Life should be estopped from asserting that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty because:

1.      US Life represented that 75% retrocessional coverage had been placed, 50% with the VQS and 25% with Overseas Partners Re (OP Re); and

2.      US Life represented that Trustmark's share of the Superior National Treaty was 12 ½ %.

US Life denies this.

In order to prove a defense based on estoppel, Trustmark must show the following facts by clear and convincing evidence:

1.      US Life misrepresented or concealed material facts;

2.      US Life knew these misrepresentations were untrue at the time they were made;

3.      Trustmark did not know the representations were untrue at the time they were made and acted upon;

4.      US Life intended or reasonably expected that Trustmark would act upon the representations;

5.      Trustmark reasonably relied on the representations in good faith to its detriment;

6.      Trustmark would be prejudiced by its reliance on the representations if US Life is permitted to deny the truth thereof.

If you find each of these propositions to be proved, US Life should be barred from claiming that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty and that Trustmark has any responsibility for the Special Schedule P Deposit.

| | |
|---|---|
| **Source/Authority:** | <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); <u>see</u> Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 76**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count IV:  Damages</u>**

If you find in favor of US Life, you must then decide how much money would fairly compensate US Life for Trustmark's breach of contract.  US Life has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of Trustmark's breach.  In calculating US Life's damages, you should determine that sum of money that will put US Life in as good a position as it would have been in if both US Life and Trustmark had performed all of their obligations under the contract.

US Life seeks direct damages of $124.5 million for Trustmark's failure to contribute 37.5% of the Special Schedule P Deposit made by US Life.

"Direct damages" are the amount of gain US Life would have received if both the parties had fully performed the contract.  You calculate the amount of this gain by determining the value of the contract benefits US Life did not receive because of Trustmark's breach and then subtracting from that value of whatever expenses US Life saved because of the breach.

| | |
|---|---|
| **Source/Authority:** | Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 77

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count V:  Introduction

In Count V, US Life alleges that Trustmark breached the Pooling Arrangement by failing to pay half of amounts owed by US Life with respect to the TIG Claim Payment and the TIG Award. US Life alleges that, as a direct and proximate result of Trustmark's failure to pay, US Life has been damaged in the sum of $9,388,124.50.

Trustmark denies US Life's allegations.  In addition, Trustmark claims that it was relieved of any obligation with respect to the TIG Claim Payment or the TIG Award by US Life's breaches of its partnership and contractual duties.

**Source/Authority:**          Am. Compl. ¶¶ 102-106; Answer to Am. Compl. ¶¶ 102-106; Affim. Defenses 2-7.

**Given:**                            _____

**Given as Modified:**          _____

**Rejected:**                         _____

**Withdrawn:**                      _____

98

**DEFENDANT'S PROPOSED INSTRUCTION NO. 78**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count V:  Elements**</u>

In Count V, US Life claims that it is entitled to recover contract damages from Trustmark for breach of contract.  US Life has the burden of proving by a preponderance of the evidence:

      1.      The existence of a contract between US Life and Trustmark.

      2.      Performance by US Life of all of its obligations.

      3.      Trustmark's failure to adequately perform its obligations under the contract.

      4.      Resulting damage to US Life.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Trustmark.

If you find that each of the above elements has been proved, then you must consider Trustmark's claims of affirmative defenses.

Trustmark claims and has the burden of proving the following affirmative defenses by a preponderance of the evidence:

      1.      Breach of partnership duty

      2.      Breach of contractual duty

      3.      Breach of implied duty of utmost good faith and fair dealing

US Life denies Trustmark's affirmative defenses.

If you find from your consideration of all of the evidence that US Life has proved all the elements of its case and Trustmark has not proved any affirmative defense, you must find in favor of US Life and consider the amount of damages to be awarded.  If Trustmark proves one of its affirmative defenses, then it is relieved of its obligations under the contract and you must find in favor of Trustmark.

**Source/Authority:**    Illinois Pattern Instructions § 700.02 (modified).
**Given:**    _____
**Given as Modified:**    _____
**Rejected:**    _____
**Withdrawn:**    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 79**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count V:  Existence of a Contract**

As stated in Instruction 78, the first element of a contract claim US Life must prove is the existence of a contract.  There is a contract if US Life proves there was an offer by one party, acceptance by the other party and consideration between the parties.

US Life claims that US Life and Trustmark entered into a contract called the "Pooling Arrangement," which had the following terms:

    (a)    WEB could bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

    (b)    If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

    (c)    If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

    (d)    Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

    (e)    The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

    (f)    Trustmark was obligated to contribute toward any Special Schedule P Deposit made by US Life.

To prove the existence of a contract between US Life and Trustmark, US Life has the burden of proving each of the following propositions:

    First, US Life must make or have made an offer to Trustmark or vice versa.  An "offer" is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

    (1)    the communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

(2)      the important and necessary terms must be definite;

(3)      the terms must be communicated by words or conduct to the other party; and

(4)      the communication must give the other party the power to agree to its terms.

Second, the recipient of the offer accepted the offer made by the other party. "Acceptance" of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

(1)      the recipient of the offer must agree to all of the material terms in the offer; and

(2)      the recipient of the offer must have communicated agreement to the maker of the offer.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if US Life can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, or a promise to act or not to act.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).

**Given:**                  _____

**Given as Modified:**      _____

**Rejected:**               _____

**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 80**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Contingent Contract</u>**

As indicated in instruction 79, to prove that the parties entered into a valid contract, US Life must prove that the parties reached a final agreement.

Trustmark contends that the parties negotiated only to the point of a tentative agreement and that a final agreement was contingent upon the parties finalizing and signing a contract.

US Life has the burden to prove that the parties reached a final agreement.  To establish that the parties reached a final agreement, US Life must prove at least one of the following facts:

1.     That the parties reached a final agreement without any contingency that the parties finalize and sign a contract;

2.     That, if the agreement was contingent on the parties finalizing and signing a contract, the contingency occurred; or

3.     That, if the agreement was contingent on the parties finalizing and signing a contract and the contingency did not occur, the only reason it did not occur was because Trustmark failed to act reasonably with respect to matters under its control.

In determining whether the parties intended a final agreement to be contingent on finalizing and signing a contract, you should consider any factors that you deem important, which may include the following factors: (1) whether agreements of this type are usually put in writing; (2) the complexity of the agreement; (3) the amount of money involved in the agreement; and (4) whether the negotiations between the parties indicate that the parties intended for there to be a formal written agreement at the end of the negotiations.

**Source/Authority:**          Kehoe, Robert E., Jr., Jury Instructions for Contract Cases § 4.08 (1995) (modified); <u>see</u> <u>Quake Constr., Inc. v. Am. Airlines, Inc.</u>, 565 N.E.2d 281, 288, 289 (Ill. 1990) (holding that "[w]here the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done" and setting forth a list of factors that may be considered in "determining whether the parties intended to reduce their agreement to writing"); <u>see also</u> <u>Kipnis v.</u>

<u>Mandel Metals, Inc.,</u> 471 N.E.2d 1033, 1037 (Ill. App. Ct. 2000) (holding that no binding contract existed where the parties expressed their intention to execute a "definitive written agreement" and no such agreement was ever executed).

**Given:**                       _____

**Given as Modified:**    _____

**Rejected:**                  _____

**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 81**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Performance by Plaintiff</u>**

As stated in Instruction 78, the second element of a contract claim US Life must prove is that it performed all obligations required of it under the contract.  To recover on its claim, US Life must prove it did what the contract required it to do or had a valid excuse for not doing so.

US Life claims that it performed under the contract by arbitrating and paying claims on the TIG Treaty in good faith.  Trustmark denies that US Life performed under the contract by acting in good faith.

| | |
|---|---|
| **Source/Authority:** | Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 82**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count V:  Breach of Contract**</u>

As stated in instruction 78, the third element of a contract claim which US Life must prove is Trustmark's breach of the contract.  To recover on its claim, US Life has the burden to prove that Trustmark failed to do something the contract required it to do.  US Life claims and has the burden of proving that, under the contract, Trustmark was required to pay 50% of the TIG Payment and TIG Award.

Trustmark denies US Life's allegations.  Trustmark also claims that it did not breach the contract because the parties agreed:

    1.     That any settlement or other resolution of a claim would be made by a mutual joint agent or with the approval of both US Life and Trustmark; and

    2.     That US Life would ensure the placement of the agreed upon retrocessional coverage and collect from the retrocessionaires before sharing any retained risk with Trustmark.

Trustmark claims that US Life failed to involve Trustmark in the TIG payment or arbitration or obtain Trustmark's consent, and that US Life failed to ensure the placement of the agreed retrocessional coverage for the TIG Treaty or collect from retrocessionaires.  The law regarding conditions will be explained in the next instruction.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**                      _____
**Given as Modified:**     _____
**Rejected:**            _____
**Withdrawn:**         _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 83**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Existence And/Or Failure of Condition Precedent</u>**

As stated in instruction 78, the third element US Life must prove is Trustmark's failure to perform the obligations under the contract.  In this case, Trustmark claims the parties agreed that Trustmark did not have an obligation to pay unless or until:

1.      The settlement or other resolution of a claim was made by a mutual joint agent or with the approval of both US Life and Trustmark; and

2.      US Life ensured the placement of the agreed upon retrocessional coverage and collected from the WEB facility's retrocessionaires.

US Life has the burden of proving these conditions were not part of the contract.

If you find these conditions were part of the contract, you must then decide whether US Life obtained Trustmark's approval of the TIG payment and arbitration, and placed the agreed upon retrocessional coverage and collected from the WEB facility's retrocessionaires.  If these conditions did not occur, then US Life cannot recover.

**Source/Authority:**         Illinois Pattern Jury Instructions § 700.09 (2006 ed.) (modified).
**Given:**                          _____
**Given as Modified:**        _____
**Rejected:**                      _____
**Withdrawn:**                   _____

107

**DEFENDANT'S PROPOSED INSTRUCTION NO. 84**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Resulting Damages</u>**

If you find that Trustmark has breached the contract, you must decide whether US Life sustained damages as a result of Trustmark's breach of the contract.

As stated in Instruction 78, the fourth element of a contract claim is damages.  US Life must prove it sustained damage resulting from Trustmark's breach.  To recover on its claim, US Life must prove that because of Trustmark's failure to perform the contract, it has been damaged.

Trustmark denies that US Life sustained damage as a result of Trustmark's alleged breach.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                         _____
**Given as Modified:**       _____
**Rejected:**                     _____
**Withdrawn:**                  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 85**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count V:  Follow the Fortunes Doctrine**

Under a follow the fortunes clause, a reinsurer must reimburse the reinsured for settlement payments made by the reinsurer so long as those settlements were reasonable, made in good faith, and without collusion.

A reinsurer is not bound by settlements made without the reinsurer's consent unless the reinsurance agreement expressly contains a follow the fortunes clause.

A follow the fortunes clause is not automatically implied into all reinsurance contracts as a matter of law.  Where there is no express agreement on a follow the fortunes clause, the clause is not part of the reinsurance contract.

| | |
|---|---|
| **Source/Authority:** | Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters, at Lloyd's London, 93 F.3d 529, 535 (9th Cir. 1996); Employer Reins. Corp v. Laurier Indem. Co., No. 8:03-cv-1650-T-17MSS, 2007 WL 1831775, at * (M.D. Fla. Jun. 6, 2007) (holding that follow the fortunes clause should not be implied into a reinsurance contract that was silent on the issue); Am. Ins. Co. v. Am. Re-Ins. Co., 2006 WL 3412079, at *3-5 (N.D. Cal. Nov. 27, 2006); Sec. Ins. Co. v. Trustmark Ins. Co., No. Civ. 3:00CV1247(PCD), 2002 WL 32500922, at *7 (D. Conn. Sept. 4, 2002); Vill. of Thompsonville v. Fed. Ins. Co., 592 N.W.2d 760, 763 (Mich. App. 1999). |

**Given:**                    _____
**Given as Modified:**   _____
**Rejected:**                _____
**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 86**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count V:  Reinsurance – No Follow the Fortunes**

To recover from Trustmark for breach of contract, US Life has the burden to prove that it was entitled to reimbursement under the agreement and Trustmark failed to reimburse US Life.

If you find that the contract proved by US Life did not contain a follow the fortunes term, US Life must prove all the following elements by a preponderance of the evidence to prove that it is entitled to reimbursement:

1.    That US Life was actually liable for the losses paid in connection with the underlying treaties;

2.    That US Life settled or otherwise resolved the claims on the underlying treaties in good faith;

3.    That the losses in connection with the underlying treaties fall within the scope of the reinsurance agreement; .

4.    That US Life billed Trustmark for certain amounts paid in connection with the losses; and

5.    That Trustmark refused to reimburse US Life for the losses.

If you find that US Life has failed to prove any element by a preponderance of the evidence, then your verdict for these claims must be in favor of Trustmark.

| | |
|---|---|
| **Source/Authority:** | Yale University v. CIGNA Ins. Co., 224 F. Supp. 2d 402, 411 (D. Conn. 2002) ("As a general matter, the existence of coverage is an essential element of the insured's case and the insured has the burden of proving the loss falls within the terms of the policy"); Stonewall Ins. Co. v. Argonaut Ins. Co., 75 F. Supp. 2d 893, 895 (N.D. Ill. 1999). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 87

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count V:  Reinsurance – Follow the Fortunes

If you find that US Life and Trustmark entered into a contract that contains a "follow the fortunes" provision, you must determine whether US Life is entitled to reimbursement from Trustmark under the contract.

US Life is only entitled to reimbursement from Trustmark if US Life proves the following by a preponderance of the evidence:

1.     That US Life paid for losses in connection with the underlying treaties;

2.     That the losses reasonably fell within the scope of the underlying treaties;

3.     That US Life settled or otherwise resolved the claims on the underlying treaties in good faith;

4.     That the losses in connection with the underlying treaties fell within the scope of the reinsurance agreement;

5.     That US Life billed Trustmark for certain amounts paid in connection with the losses; and

6.     That Trustmark refused to reimburse US Life for the losses.

If US Life proves all of the above elements by a preponderance of the evidence, then US Life is entitled to reimbursement from Trustmark under the Pooling Arrangement and you must consider Trustmark's affirmative defenses.  However, your verdict must be in favor of Trustmark if the evidence establishes any of the following:

1.     That the losses clearly fell outside the scope of the underlying treaties;

2.     That the losses fell outside the scope of the Pooling Arrangement;

3.     That US Life acted in a grossly negligent or reckless manner; or

4.     That US Life failed to conduct a good faith, reasonable, businesslike investigation into whether the underlying treaties provided coverage for the losses.

**Sources/Authority:**            In re Liquidation of Inter-Am. Ins. Co. of Ill., 329 Ill. App. 3d 606, 617, 768 N.E.2d 182, 192 (Ill. App. Ct. 2002) (reinsured has burden to prove "offer and acceptance, consideration, definite and

certain terms of the contract, [reinsured's] performance of all required contractual conditions, [reinsurer's] breach of the terms of the contract, and damages resulting from the breach"); Reedy Indus., Inc. v. Hartford Ins. Co. of Ill., 306 Ill. App. 989, 715 N.E.2d 728 (Ill. App. Ct. 1999) (insured has burden to prove "that its claim falls within the terms of the policy"); Mich. Twp. Participating Plan v. Fed. Ins. Co., 223 Mich. App. 422, 432, 592 N.W.2d 760, 765 (Mich. Ct. App. 1999) (reinsured carries the "burden of showing that it was entitled to reimbursement in the amount granted"); Christiana Gen. Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268, 280 (2d Cir. 1992) (follow the fortunes doctrine only requires reinsurers to indemnify reinsureds for payments that reasonably fall within the scope of the underlying policy; reinsurers are not obligated to indemnify for payments clearly outside the scope of the underlying policy or beyond the scope of the reinsuring agreement); Bellefonte Reins. Co. v. Aetna Cas. & Surety Co., 903 F.2d 910, 914 (2d Cir. 1990) ("[R]einsurers are liable only to the extent of the risk they agreed to reinsure.  They cannot be held liable for the insurer's action in excess of the agreement"); Plaintiffs' First Am. Compl., ¶ 71 (Pooling Arrangement only contemplates claims that are "settled or otherwise resolved in good faith"); Unigard Sec. Ins. Co. v. N. River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993) (bad faith contemplates gross negligence or recklessness); Suter v. General Accident Ins. Co. of Am., No. 01-2686 (WGB), 2006 U.S. Dist. LEXIS 48209, at *74 (D.N.J. July 14, 2006) (reinsured is required to make "a good faith and a reasonable, businesslike investigation").

**Given:**            _____
**Given as Modified:**  _____
**Rejected:**          _____
**Withdrawn:**         _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 88

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count V:  Affirmative Defenses to Contract Enforcement

The law recognizes that sometimes, even though US Life may have met its burden of proving that a contract exists, facts or circumstances may exist which would excuse Trustmark from being liable to US Life.  These facts or circumstances are called affirmative defenses.

If this lawsuit, Trustmark has raised and has the burden to prove the following affirmative defenses:

1.  Breach of partnership duties;
2.  Material breach of contract; and
3.  Material breach of utmost good faith and fair dealing.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

113

**DEFENDANT'S PROPOSED INSTRUCTION NO. 89**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Affirmative Defenses – Breach of Partnership Duty</u>**

Trustmark claims that it is relieved from liability to US Life because US Life breached its partnership duties by taking (and failing to take) various actions in connection with the TIG Treaty.  Trustmark claims that US Life:

1.     Failed to fulfill its obligation to oversee the placement of retrocessional coverage for the TIG Treaty,

2.     Unilaterally usurped from WEB control of claims handling and activities relating to the TIG Treaty, to the exclusion of Trustmark,

3.     Committed prejudicial errors in its handling of claims and activities relating to the TIG Treaty, and

4.     Denied Trustmark material information pertaining to the TIG Treaty, including information relating to claims, the TIG arbitration, and settlement discussions.

US Life denies that it acted wrongfully.

This affirmative defense requires that Trustmark prove by a preponderance of the evidence that a partnership relationship existed between Trustmark and US Life.

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

If you find that US Life has failed to meet its burden of proof, then your verdict on Count V must be in favor of Trustmark.

114

**Source/Authority:**    <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Worner Agency, Inc. v. Doyle</u>, 121 Ill. App. 3d 219, 222-23, 459 N.E.2d 633, 635-36 (Ill. App. Ct. 1984); <u>Kirkland & Ellis v. CMI Corp.</u>, No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); <u>Smith v. Howery</u>, 217 Mont. 23, 28,701 P.2d 1381, 1384 (Mont. 1985).

**Given:**                 _____

**Given as Modified:** _____

**Rejected:**            _____

**Withdrawn:**         _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 90**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties</u>**

Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); <u>Thomson v. Hiter</u>, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); <u>Koestner v. Wease & Koestner Jewelers, Inc.</u>, 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

**Given:**                              _____
**Given as Modified:**          _____
**Rejected:**                          _____
**Withdrawn:**                      _____

DEFENDANT'S PROPOSED INSTRUCTION NO. 91

INSTRUCTIONS AT CLOSE OF EVIDENCE

**Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties**

If you find that Trustmark has proved the existence of a partnership, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts which are in willful disregard of this duty or grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  Gross negligence does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

| | |
|---|---|
| **Source/Authority:** | Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48, 53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); Saballus v. Timke, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. |

1983); <u>City of Mt. Carmel v. Guthridge</u>, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); <u>Zokoych v. Spalding</u>, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); <u>see also</u> 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); <u>Triple Five of Minn., Inc. v. Simon</u>, 404 F.3d 1088, 1098 (8th Cir. 2005); <u>Konover Dev. Corp. v. Zeller</u>, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); <u>Spector v. Konover</u>, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 92**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count V:  Affirmative Defense – Breach of Partnership Duties**</u>

In the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.  Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.  The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

If a partner takes action within the partnership business over the objection of its co-partner without first obtaining consent from a majority of partners, or takes an action outside the ordinary scope of partnership business without first obtaining the consent of a majority of partners, that partner is liable for all damages resulting from that conduct.

**Source/Authority:**     805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); 805 Ill. Comp. Stat. §205/9 (2) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401 (j) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners.") (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971) (partner not entitled to reimbursement from co-partner for costs incurred over the objection of co-partner); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.03(c)(1) (2007); 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting

119

that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (partner liable to co-partner for damages in the form of lost profits stemming from partner's breach of fiduciary duty)

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 93**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Affirmative Defenses – Breach of Contract</u>**

The second affirmative defense asserted by Trustmark is material breach of contract.  Trustmark claims that it is relieved from liability to US Life because US Life breached its contractual obligations duties by taking (and failing to take) various actions in connection with the TIG Treaty.

Trustmark contends that US Life committed the following material breaches of contract:

1.      US Life failed to ensure that retrocessional coverage was placed for the TIG Treaty;

2.      US Life unilaterally usurped control of claims handling relating to the TIG Treaty from WEB;

3.      US Life unilaterally handled activities related to the TIG, including the arbitration and settlement negotiations, to the exclusion of Trustmark and without its consent.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the contract and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.      Whether the breach would defeat the basic purpose of the contract;

2.      Whether the breach would cause disproportionate prejudice to Trustmark;

3.      Whether custom considers such a breach to be material; and

4.      Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life materially breached any of its obligations under the contract, then your verdict must be in favor of Trustmark.

**Source/Authority:**             Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); <u>Mohanty v. St. John Heart Clinic</u>, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); <u>Heritage Bank & Trust Co.</u>

v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.").

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

122

**DEFENDANT'S PROPOSED INSTRUCTION NO. 94**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count V:  Affirmative Defenses – Breach of Implied Duty of Utmost
Good Faith</u>**

Trustmark also contends that it is relieved from liability to US Life because US Life materially
breached its contractual duty of utmost good faith and fair dealing.

Every reinsurance contract, including the contract alleged by US Life, contains an implied duty
of utmost good faith and fair dealing.  The duty of utmost good faith and fair dealing obligates
the parties to deal fairly, honestly, and candidly with one another.  This duty requires full and
timely disclosure of all facts material to the reinsurance relationship.

The duty of utmost good faith and fair dealing applies in the context of claims administration and
handling, including settlement and the payment of premiums.

To find a breach of the duty of utmost good faith and fair dealing, you need not find that the
failure to disclose material facts was fraudulent or even intentional.  An innocent failure to
disclose a material fact is sufficient to constitute a breach of the duty.

Trustmark contends that it is relieved from liability to US Life because US Life breached its
contractual duty of utmost good faith and fair dealing by taking (and failing to take) various
actions in connection with the TIG Treaty, including:

1.   Failing to fulfill its obligation to oversee the placement of retrocessional coverage
     for the TIG Treaty,

2.   Unilaterally usurping control of claims handling and activities relating to the TIG
     Treaty, to the exclusion of Trustmark,

3.   Denying Trustmark material information pertaining to the TIG Treaty, including
     information relating to claims, the TIG arbitration, and settlement discussions,

4.   Excluding Trustmark from participating in the TIG arbitration and settlement
     discussions relating to the TIG Treaty.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached
the implied duty of utmost good faith and fair dealing and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time
they entered into their contract.  You may consider such factors as:

1.   Whether the breach would defeat the basic purpose of the contract;

2.      Whether the breach would cause disproportionate prejudice to Trustmark;

3.      Whether custom considers such a breach to be material; and

4.      Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life committed a material breach of its duty of utmost good faith and fair dealing, then your verdict must be in favor of Trustmark.

**Source/Authority:**          Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Martindell v. Lake Shore Nat'l Bank, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (Ill. 1958) ("Every contract implies good faith and fair dealing between the parties to it"); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract."); In the Matter of the Liquidation of Union Indem. Ins. Co. v. N.Y., 89 N.Y.2d 94, 106-07 (2d Cir. 1992); Unigard Sec. Ins. Co. v. N. River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992).

**Given:**                          _____
**Given as Modified:**      _____
**Rejected:**                     _____
**Withdrawn:**                 _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 95**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count V:  Damages**

If you find in favor of US Life, you must then decide how much money would fairly compensate US Life for Trustmark's breach of contract.  US Life has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of Trustmark's breach.  In calculating US Life's damages, you should determine that sum of money that will put US Life in as good a position as it would have been in if both US Life and Trustmark had performed all of their obligations under the contract.

US Life seeks direct damages for Trustmark's failure to pay half of amounts owed by US Life with respect to the TIG Claim Payment and the TIG Award.

"Direct damages" are the amount of gain US Life would have received if both the parties had fully performed the contract.  You calculate the amount of this gain by determining the value of the contract benefits US Life did not receive because of Trustmark's breach and then subtracting from that value of whatever expenses US Life saved because of the breach.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                      _____
**Given as Modified:**    _____
**Rejected:**                 _____
**Withdrawn:**             _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 96

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### <u>Plaintiffs' Count VI:  Introduction</u>

In Count VI, All American alleges that Trustmark breached the Pooling Arrangement by failing to pay half of amounts owed by All American as a result of the Pac Rim Claim Payment, the Converium/Pac Rim Settlement, the SNICIL/Pac Rim Settlement, the GAN Commutation, and the Busbridge (TPAC) Commutation.  Further, All American claims that Trustmark breached the Pooling Agreement by failing to pay half of amounts paid by All American on the following programs:

1. New Cap Re
2. CM Owen
3. Hiscox
4. IGI Palmer
5. Cassidy
6. Villers
7. Busbridge
8. Battle
9. AIOI
10. Rivington
11. QBE
12. Etheridge

These are collectively referred to as the All American programs.  All American alleges that, as a direct and proximate result of Trustmark's failure to pay, it has been damaged in the sum of $5,395,388, together with Trustmark's share of the confidential sums paid under the Converium/Pac Rim Settlement, the SNICIL/Pac Rim Settlement, the GAN Commutation, and the Busbridge (TPAC) Commutation.

Trustmark denies All American's allegations.  In addition, Trustmark claims that it was relieved of any obligation with respect to these payments, settlements, and commutations by All American's breaches of its partnership and contractual duties.


**Source/Authority:**       Am. Compl. ¶¶ 107-112; Answer to Am. Compl. ¶¶ 107-112;
Affim. Defenses 2-7.

**Given:**                  _____

**Given as Modified:**      _____

**Rejected:**               _____

**Withdrawn:**              _____

**PROPOSED INSTRUCTION NO. 97**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Elements</u>**

In Count VI, All American claims that it is entitled to recover damages from Trustmark for breach of contract.  All American has the burden of proving:

      1.      The existence of a contract between All American and Trustmark.

      2.      Performance by All American of all of its obligations.

      3.      Trustmark's failure to adequately perform its obligations under the contract.

      4.      Resulting damage to All American.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Trustmark.

If you find that each of the above elements has been proved, then you must consider Trustmark's claims of affirmative defenses.

Trustmark claims and has the burden of proving the following affirmative defenses:

      1.      Breach of partnership duty

      2.      Breach of contractual duty

      3.      Breach of the implied duty of utmost good faith and fair dealing

All American denies Trustmark's affirmative defenses.

If you find from your consideration of all of the evidence that All American has proved all the elements of its case and Trustmark has not proved any affirmative defense, you must find in favor of All American and consider the amount of damages to be awarded.  If Trustmark proves one of its affirmative defenses, then it is relieved of its obligations under the contract and you must find in favor of Trustmark.

**Source/Authority:**      Illinois Pattern Instructions § 700.02 (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 98**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count VI:  Existence of a Contract**</u>

As stated in Instruction 97, the first element of a contract claim All American must prove is the existence of a contract.  There is a contract if All American proves there was an offer by one party, acceptance by the other party and consideration between the parties.

All American claims that All American and Trustmark entered into a contract called the "Pooling Arrangement," which had the following terms:

(a)   WEB could bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

(b)   If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

(c)   If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

(d)   Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

(e)   The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

(f)   Trustmark was obligated to contribute toward any Special Schedule P Deposit made by US Life.

To prove the existence of a contract between All American and Trustmark, All American has the burden of proving each of the following propositions:

First, All American must make or have made an offer to Trustmark or vice versa.  An "offer" is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

(1)   the communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

(2)   the important and necessary terms must be definite;

(3)      the terms must be communicated by words or conduct to the other party; and

(4)      the communication must give the other party the power to agree to its terms.

Second, the recipient of the offer accepted the offer made by the other party. "Acceptance" of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

(1)      the recipient of the offer must agree to all of the material terms in the offer; and

(2)      the recipient of the offer must have communicated agreement to the maker of the offer.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if All American can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, or a promise to act or not to act.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).

**Given:**      _____

**Given as Modified:**      _____

**Rejected:**      _____

**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 99**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Contingent Contract</u>**

As indicated in instruction 98, to prove that the parties entered into a valid contract, All American must prove that the parties reached a final agreement.

Trustmark contends that the parties negotiated only to the point of a tentative agreement and that a final agreement was contingent upon the parties finalizing and signing a contract.

All American has the burden to prove that the parties reached a final agreement.  To establish that the parties reached a final agreement, All American must prove at least one of the following facts:

1.     That the parties reached a final agreement without any contingency that the parties finalize and sign a contract;

2.     That, if the agreement was contingent on the parties finalizing and signing a contract, the contingency occurred; or

3.     That, if the agreement was contingent on the parties finalizing and signing a contract and the contingency did not occur, the only reason it did not occur was because Trustmark failed to act reasonably with respect to matters under its control.

In determining whether the parties intended a final agreement to be contingent on finalizing and signing a contract, you should consider any factors that you deem important, which may include the following factors: (1) whether agreements of this type are usually put in writing; (2) the complexity of the agreement; (3) the amount of money involved in the agreement; and (4) whether the negotiations between the parties indicate that the parties intended for there to be a formal written agreement at the end of the negotiations.

**Source/Authority:**          Kehoe, Robert E., Jr., Jury Instructions for Contract Cases § 4.08 (1995) (modified); <u>see</u> <u>Quake Constr., Inc. v. American Airlines, Inc.</u>, 565 N.E.2d 281, 288, 289 (Ill. 1990) (holding that "[w]here the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done" and setting forth a list of factors that may be considered in "determining whether the parties intended to reduce their agreement to writing"); <u>see also</u> <u>Kipnis v.</u>

<u>Mandel Metals, Inc.</u>, 471 N.E.2d 1033, 1037 (Ill. App. Ct. 2000) (holding that no binding contract existed where the parties expressed their intention to execute a "definitive written agreement" and no such agreement was ever executed).

**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 100**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Performance by Plaintiff</u>**

As stated in Instruction 97, the second element of a contract claim All American must prove is it performed all obligations required of it under the contract.  To recover on its claim, All American must prove it did what the contract required it to do or had a valid excuse for not doing so.

All American claims that it performed under the contract by settling or otherwise resolving the claims on which it seeks payment in good faith.  Trustmark denies that All American performed under the contract by acting in good faith.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**                   _____
**Given as Modified:**       _____
**Rejected:**                _____
**Withdrawn:**               _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 101

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count VI:  Breach of Contract

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether Trustmark failed to do what it was required to do under the contract.

As stated in instruction 97, the third element of a contract claim which All American must prove is Trustmark's breach of the contract.  To recover on its claim, All American has the burden to prove that Trustmark failed to do something the contract required it to do.  All American claims and has the burden of proving that, under the contract, Trustmark was required to pay 50% of the claims payments and other resolutions made by All American.

Trustmark denies All American's allegations.  Trustmark also claims that it did not breach the contract because the parties agreed:

1.      That any settlement or other resolution of a claim would be made by a mutual joint agent or with the approval of both All American and Trustmark; and

2.      That All American would ensure the placement of the agreed upon retrocessional coverage and collect from the retrocessionaires before sharing any retained risk with Trustmark.

Trustmark claims that All American failed to involve Trustmark in the settlement or other resolution of the claims for which it seeks payment or obtain Trustmark's consent, and that All American failed to ensure the placement of retrocessional coverage and collect from retrocessionaires before submitting claims to Trustmark.  The law regarding conditions will be explained in the next instruction.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

133

**DEFENDANT'S PROPOSED INSTRUCTION NO. 102**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Existence And/Or Failure of Condition Precedent</u>**

As stated in instruction 97, the third element All American must prove is Trustmark's failure to perform the obligations under the contract.  In this case, Trustmark claims the parties agreed that Trustmark did not have an obligation to pay unless or until:

    1.       The settlement or payment was made by a mutual joint agent or with the approval of both All American and Trustmark; and

    2.       All American ensured the placement of the agreed upon retrocessional coverage and collected from the WEB facility's retrocessionaires.

All American has the burden of proving these conditions were not part of the contract.

If you find these conditions were part of the contract, you must then decide whether All American obtained Trustmark's approval of the settlements or payments on which it seeks recovery and placed the agreed upon retrocessional coverage for those treaties and collected from the WEB facility's retrocessionaires before submitting claims to Trustmark.  If these conditions did not occur, then All American cannot recover.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.09 (2006 ed.) (modified).
**Given:**        _____
**Given as Modified:**        _____
**Rejected:**        _____
**Withdrawn:**        _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 103**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Resulting Damages</u>**

If you find that Trustmark has breached the contract, you must decide whether All American sustained damages as a result of Trustmark's breach of the contract.

As stated in Instruction 97, the fourth element of a contract claim is damages.  All American must prove it sustained damage resulting from Trustmark's breach.  To recover on its claim, All American must prove that because of Trustmark's failure to perform the contract, it has been damaged.

Trustmark denies that All American sustained damage as a result of Trustmark's alleged breach.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                   _____
**Given as Modified:**       _____
**Rejected:**                _____
**Withdrawn:**               _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 104**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Follow the Fortunes Doctrine**

Under a follow the fortunes clause, a reinsurer must reimburse the reinsured for settlement payments made by the reinsurer if those settlements were reasonable, made in good faith, and without collusion.

A reinsurer is not bound by settlements made without the reinsurer's consent unless the reinsurance agreement expressly contains a follow the fortunes clause.

A follow the fortunes clause is not automatically implied into all reinsurance contracts as a matter of law.  Where there is no express agreement on a follow the fortunes clause, the clause is not part of the reinsurance contract.

| | |
|---|---|
| **Source/Authority:** | Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters, at Lloyd's London, 93 F.3d 529, 535 (9th Cir. 1996); Employer Reins. Corp v. Laurier Indem. Co., No. 8:03-cv-1650-T-17MSS, 2007 WL 1831775, at *(M.D. Fla. Jun. 6, 2007) (holding that follow the fortunes clause should not be implied into a reinsurance contract that was silent on the issue); Am. Ins. Co. v. Am. Re-Ins. Co., 2006 WL 3412079, at *3-5 (N.D. Cal. Nov. 27, 2006); Sec. Ins. Co. v. Trustmark Ins. Co., No. Civ. 3:00CV1247(PCD), 2002 WL 32500922, at *7 (D. Conn. Sept. 4, 2002); Vill. of Thompsonville v. Fed. Ins. Co., 592 N.W.2d 760, 763 (Mich. App. 1999). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

## DEFENDANT'S PROPOSED INSTRUCTION NO. 105

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Plaintiffs' Count VI:  Reinsurance – No Follow the Fortunes

To recover from Trustmark for breach of contract, All American has the burden to prove that it was entitled to reimbursement under the agreement and Trustmark failed to reimburse All American.

If you find that the contract proved by All American did not contain a "follow the fortunes" term, All American must prove all the following elements by a preponderance of the evidence to prove that it is entitled to reimbursement:

1.  That All American was actually liable for the losses paid in connection with the underlying treaties;

2.  That All American settled or otherwise resolved the claims on the underlying treaties in good faith;

3.  That the losses in connection with the underlying treaties fall within the scope of the reinsurance agreement;

4.  That All American billed Trustmark for certain amounts paid in connection with the losses; and

5.  That Trustmark refused to reimburse All American for the losses.

If you find that All American has failed to prove any element by a preponderance of the evidence, then your verdict for these claims must be in favor of Trustmark.

| | |
|---|---|
| **Source/Authority:** | Yale University v. CIGNA Ins. Co., 224 F. Supp. 2d 402, 411 (D. Conn. 2002) ("As a general matter, the existence of coverage is an essential element of the insured's case and the insured has the burden of proving the loss falls within the terms of the policy"); Stonewall Ins. Co. v. Argonaut Ins. Co., 75 F. Supp. 2d 893, 895 (N.D. Ill. 1999). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 106**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Reinsurance – Follow the Fortunes</u>**

If you find that All American and Trustmark entered into a contract that contains a "follow the fortunes" provision, you must determine whether All American is entitled to reimbursement from Trustmark under the contract.

All American is only entitled to reimbursement from Trustmark if All American proves the following by a preponderance of the evidence:

1. That All American paid for losses in connection with the underlying treaties;

2. That the losses reasonably fell within the scope of the underlying treaties;

3. That All American settled or otherwise resolved the claims on the underlying treaties in good faith;

4. That the losses in connection with the underlying treaties fell within the scope of the reinsurance agreement;

5. That All American billed Trustmark for certain amounts paid in connection with the losses; and

6. That Trustmark refused to reimburse All American for the losses.

If All American proves all of the above elements by a preponderance of the evidence, then All American is entitled to reimbursement from Trustmark under the Pooling Arrangement and you must consider Trustmark's affirmative defenses.  However, your verdict must be in favor of Trustmark if the evidence establishes any of the following:

1. That the losses clearly fell outside the scope of the underlying treaties;

2. That the losses fell outside the scope of the Pooling Arrangement;

3. That All American acted in a grossly negligent or reckless manner; or

4. That All American failed to conduct a good faith, reasonable, businesslike investigation into whether the underlying treaties provided coverage for the losses.

138

**Sources/Authority:**    <u>In re Liquidation of Inter-Am. Ins. Co. of Ill.</u>, 329 Ill. App. 3d 606, 617, 768 N.E.2d 182, 192 (Ill. App. Ct. 2002) (reinsured has burden to prove "offer and acceptance, consideration, definite and certain terms of the contract, [reinsured's] performance of all required contractual conditions, [reinsurer's] breach of the terms of the contract, and damages resulting from the breach"); <u>Reedy Indus., Inc. v. Hartford Ins. Co. of Ill.</u>, 306 Ill. App. 989, 715 N.E.2d 728 (Ill. App. Ct. 1999) (insured has burden to prove "that its claim falls within the terms of the policy"); <u>Mich. Twp. Participating Plan v. Fed. Ins. Co.</u>, 223 Mich. App. 422, 432, 592 N.W.2d 760, 765 (Mich. Ct. App. 1999) (reinsured carries the "burden of showing that it was entitled to reimbursement in the amount granted"); <u>Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.</u>, 979 F.2d 268, 280 (2d Cir. 1992) (follow the fortunes doctrine only requires reinsurers to indemnify reinsureds for payments that reasonably fall within the scope of the underlying policy; reinsurers are not obligated to indemnify for payments clearly outside the scope of the underlying policy or beyond the scope of the reinsuring agreement); <u>Bellefonte Reins. Co. v. Aetna Cas. & Surety Co.</u>, 903 F.2d 910, 914 (2d Cir. 1990) ("reinsurers are liable only to the extent of the risk they agreed to reinsure.  They cannot be held liable for the insurer's action in excess of the agreement"); Plaintiffs' First Am. Compl. ¶ 71 (Pooling Arrangement only contemplates claims that are "settled or otherwise resolved in good faith"); <u>Unigard Sec. Ins. Co. v. N. River Ins. Co.</u>, 4 F.3d 1049, 1069 (2d Cir. 1993) (bad faith contemplates gross negligence or recklessness); <u>Suter v. Gen. Accident Ins. Co. of Am.</u>, No. 01-2686 (WGB), 2006 U.S. Dist. LEXIS 48209, at *74 (D.N.J. July 14, 2006) (reinsured is required to make "a good faith and a reasonable, businesslike investigation").

**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 107**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Affirmative Defenses to Contract Enforcement**

The law recognizes that sometimes, even though All American may have met its burden of proving that a contract exists, facts or circumstances may exist which would excuse Trustmark from being liable to All American.  These facts or circumstances are called affirmative defenses.

If this lawsuit, Trustmark has raised and has the burden to prove the following affirmative defenses:

1. Breach of partnership duties;
2. Material breach of contract; and
3. Material breach of the implied duty of utmost good faith and fair dealing.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

140

**DEFENDANT'S PROPOSED INSTRUCTION NO. 108**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Affirmative Defenses – Breach of Partnership Duty**

Trustmark claims that it is relieved from liability to All American because All American breached its partnership duties by taking (and failing to take) various actions in connection with the All American programs.  Trustmark claims that All American:

1. Failed to obtain reinsurance or obtained reinsurance of such poor quality that it provided no protection to the partnership.
2. Failed to provide timely notice and reports to the retrocessionaires.
3. Failed properly to cede losses and to pursue retrocessional recoveries.
4. Engaged in misconduct that caused the loss of reinsurance.
5. Failed to pay proper premiums and retrocessional recoveries to Trustmark.
6. Engaged in unilateral conduct, without Trustmark's consent, that caused the partnership to lose reinsurance.
7. Took actions with respect to partnership business, including agreeing to settlements and initiating arbitrations, without the consent of, and over the objection of, Trustmark.
8. Failed to advise, consult, or share information with Trustmark with respect to partnership business, including with respect to arbitrations, litigations, and settlements.
9. Took actions with respect to partnership business without any consideration of how those actions might affect partnership interests, but rather solely considered the interests of All American and its affiliates.
10. Unilaterally made omissions and took actions, such as initiating arbitrations and entering settlement agreements, without considering the best interests of the partnership.
11. Unilaterally made omissions and taking actions, such as initiating arbitrations and agreeing to settlements, that were not in the best interests of the partnership.
12. Failed properly to prepare for and conduct arbitration and litigation proceedings.
13. Excluded Trustmark and its counsel from settlement negotiations and arbitration and litigation proceedings.

All American denies that it acted wrongfully.

This affirmative defense requires that Trustmark prove by a preponderance of the evidence that a partnership relationship existed between Trustmark and All American.

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to All American to prove by clear, convincing, unequivocal and unmistakable evidence that All American acted in a manner consistent with the partnership duties owed to Trustmark.

141

If you find that All American has failed to meet its burden of proof, then your verdict on Count VI must be in favor of Trustmark.

**Source/Authority:**   <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Worner Agency, Inc. v. Doyle</u>, 121 Ill. App. 3d 219, 222-23, 459 N.E.2d 633, 635-36 (Ill. App. Ct. 1984); <u>Kirkland & Ellis v. CMI Corp.</u>, No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); <u>Smith v. Howery</u>, 217 Mont. 23, 28, 701 P.2d 1381, 1384 (Mont. 1985).

**Given:**                _____

**Given as Modified:**    _____

**Rejected:**             _____

**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 109**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties**

Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and All American.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 110**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties**

If you find that Trustmark has proved the existence of a partnership, the burden of proof then shifts to All American to prove by clear, convincing, unequivocal and unmistakable evidence that All American acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts which are in willful disregard of this duty or grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  Gross negligence does not require intentional wrongdoing.  You may consider all of All American's individual acts and the circumstances surrounding those acts as a whole in determining whether All American acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

| | |
|---|---|
| **Source/Authority:** | Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48, 53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); Saballus v. Timke, |

122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. 1983); City of Mt. Carmel v. Guthridge, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); Zokoych v. Spalding, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); see also 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1098 (8th Cir. 2005); Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); Spector v. Konover, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 111**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Plaintiffs' Count VI:  Affirmative Defense – Breach of Partnership Duties**

In the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.  Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.  The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

If a partner takes action within the partnership business over the objection of its co-partner without first obtaining consent from a majority of partners, or takes an action outside the ordinary scope of partnership business without first obtaining the consent of a majority of partners, that partner is liable for all damages resulting from that conduct.

**Source/Authority:**    805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); 805 Ill. Comp. Stat. §205/9 (2) (West 2007); see also 805 Ill. Comp. Stat § 206/401 (j) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners.") (West 2007); Northmon Inv. Co. v. Milford Plaza Assocs., 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); Covalt v. High, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983); Summers v. Dooley, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971); Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership § 6.03(c)(1) (2007); 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); Bras v. Bras, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); Peterson v. Superior Bank FSB, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the

authority of its co-adventurers); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (partner liable to co-partner for damages in the form of lost profits stemming from partner's breach of fiduciary duty)

**Given:**                    _____

**Given as Modified:**        _____

**Rejected:**                 _____

**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 112**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Affirmative Defenses – Breach of Contract</u>**

The second affirmative defense asserted by Trustmark is material breach of contract.  Trustmark claims that it is relieved from liability to All American because All American breached its contractual obligations duties by taking (and failing to take) various actions in connection with the All American programs.

Trustmark contends that All American committed the following material breaches of contract:

1.   All American failed to ensure that adequate retrocessional coverage was placed for the All American programs;

2.   All American unilaterally usurped control of claims handling relating to the All American programs from WEB;

3.   All American unilaterally handled activities related to the All American programs, including the arbitration and settlement negotiations, to the exclusion of Trustmark and without its consent.

To prevail on its affirmative defense, Trustmark has the burden to prove that All American breached the contract and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.   Whether the breach would defeat the basic purpose of the contract;

2.   Whether the breach would cause disproportionate prejudice to Trustmark;

3.   Whether custom considers such a breach to be material; and

4.   Whether excusing the breach would allow All American to obtain an unreasonable and unfair advantage.

A material failure by All American to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that All American materially breached any of its obligations under the contract, then your verdict must be in favor of Trustmark.

**Source/Authority:**          Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); <u>Mohanty v. St. John Heart Clinic</u>, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); <u>Heritage Bank & Trust Co.</u>

v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a
material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer,
719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159
Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (1st Dist. 1987) ("[A]
party to a contract who commits the first breach of its terms cannot
maintain an action for a subsequent breach by the other party.")
(citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958));
Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164,
168 (1st Dist. 1987) ("A party who materially breaches a contract
cannot take advantage of the terms of the contract which benefit
him, nor can he recover damages from the other party to the
contract.").

**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 113**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Plaintiffs' Count VI:  Affirmative Defenses – Breach of Implied Duty of Utmost Good Faith**</u>

Trustmark also contends that it is relieved from liability to All American because All American materially breached its contractual duty of utmost good faith and fair dealing.

Every reinsurance contract, including the contract alleged by All American, contains an implied duty of utmost good faith and fair dealing.  The duty of utmost good faith and fair dealing obligates the parties to deal fairly, honestly, and candidly with one another.  This duty requires full and timely disclosure of all facts material to the reinsurance relationship.

The duty of utmost good faith and fair dealing applies in the context of claims administration and handling, including settlement and the payment of premiums.

To find a breach of the duty of utmost good faith and fair dealing, you need not find that the failure to disclose material facts was fraudulent or even intentional.  An innocent failure to disclose a material fact is sufficient to constitute a breach of the duty.

Trustmark contends that it is relieved from liability to All American because All American breached its contractual duty of utmost good faith and fair dealing by taking (and failing to take) various actions in connection with the All American programs, including:

1.      Failing to fulfill its obligation to oversee the placement of adequate retrocessional coverage,

2.      Unilaterally usurping control of claims handling and activities, to the exclusion of Trustmark,

3.      Denying Trustmark material information, including information relating to claims, arbitrations, and settlement discussions, and

4.      Excluding Trustmark from participating in arbitrations and settlement discussions relating to the All American programs.

To prevail on its affirmative defense, Trustmark has the burden to prove that All American breached the implied duty of utmost good faith and fair dealing and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.      Whether the breach would defeat the basic purpose of the contract;

150

2.      Whether the breach would cause disproportionate prejudice to Trustmark;

3.      Whether custom considers such a breach to be material; and

4.      Whether excusing the breach would allow All American to obtain an unreasonable and unfair advantage.

A material failure by All American to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that All American committed a material breach of its duty of utmost good faith and fair dealing, then your verdict must be in favor of Trustmark.

**Source/Authority:**          Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Martindell v. Lake Shore Nat'l Bank, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (Ill. 1958) ("Every contract implies good faith and fair dealing between the parties to it"); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract."); In the Matter of the Liquidation of Union Indem. Ins. Co. v. N.Y., 89 N.Y.2d 94, 106-07 (2d Cir. 1992); Unigard Sec. Ins. Co. v. N. River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992).

**Given:**                _____

**Given as Modified:**    _____

**Rejected:**             _____

**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 114**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Plaintiffs' Count VI:  Damages</u>**

If you find in favor of All American, you must then decide how much money would fairly compensate All American for Trustmark's breach of contract.  All American has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of Trustmark's breach.  In calculating All American's damages, you should determine that sum of money that will put All American in as good a position as it would have been in if both All American and Trustmark had performed all of their obligations under the contract.

All American seeks direct damages for Trustmark's failure to pay half of amounts owed by All American with respect to numerous underlying treaties.

"Direct damages" are the amount of gain All American would have received if both the parties had fully performed the contract.  You calculate the amount of this gain by determining the value of the contract benefits All American did not receive because of Trustmark's breach and then subtracting from that value of whatever expenses All American saved because of the breach.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                _____
**Given as Modified:**    _____
**Rejected:**             _____
**Withdrawn:**            _____

152

**DEFENDANT'S PROPOSED INSTRUCTION NO. 115**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Claims Against US Life:  Introduction</u>**

In this case, the defendant Trustmark has asserted claims against US Life for breach of partnership duties and breach of contract.

Trustmark contends that US Life and All American on the one hand, and Trustmark on the other hand, were equal partners in a joint venture to issue reinsurance.

According to Trustmark, under the partnership:

    (a)    WEB would bind assumed risks.  WEB could do so on Trustmark, US Life, or All American paper.  Although the technical steps which followed might vary depending upon which paper was used, the parties' agreement was that Trustmark, on the one hand, and US Life and All American, on the other hand, would share equally in the net profits and losses from the WEB business

    (b)    If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then net liability, after giving effect to retrocessional coverage, would be shared with Trustmark.

    (c)    If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American in the first instance.  All American would cede a percentage of the risk to the applicable retrocessional programs and then share the net liability, after giving effect to retrocessional coverage, with Trustmark.

    (d)    Claims decisions were to be made by a common claims agent (initially WEB) on behalf of the partnership, or with the consent of both partners.

    (e)    Between the partners, the responsibility for overseeing WEB's underwriting was assigned to Trustmark.  The responsibility for overseeing the placement and collection of retrocessional coverage resided with US Life or All American.

Trustmark alleges that US Life breached its duties to Trustmark by, among other things, failing to ensure placement of retrocessional coverage, usurping claims handling authority from WEB, improperly handling the claims, failing to obtain Trustmark's consent, acting over Trustmark's objection, making decisions in its own self-interest (or in the interest of their affiliates), failing to disclose information to Trustmark, and failing to pay amounts due.

US Life denies Trustmark's allegations.  In addition, US Life claims that it is relieved of any obligations under the doctrine of estoppel.


**Source/Authority:**        Counterclaim ¶¶ 13-94.
**Given:**                   _____
**Given as Modified:**       _____
**Rejected:**                _____
**Withdrawn:**               _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 116**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life:  Introduction</u>**

In Count I, Trustmark claims that US Life breached its partnership duties to Trustmark by taking (and failing to take) various actions in connection with California Special Schedule P Deposits, including:

1.    Reneging on its agreement to be solely responsible for any Special Schedule P Deposit required in connection with the Superior National Treaty;

2.    Unilaterally stipulating and agreeing with the California Department of Insurance to post such a Deposit;

3.    Wrongfully demanding cash contributions from Trustmark for such Deposit; and

4.    Filing a lawsuit as a negotiation ploy to leverage such funds and to coerce Trustmark into giving up its legal rights and defenses.

Trustmark seeks damages of $80.2 million and, in addition, punitive damages.  US Life denies that it acted wrongfully and denies that any action or failure to act on its part caused damage to Trustmark.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 117**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life:  Elements</u>**

In Count I, Trustmark claims that it is entitled to recover damages from US Life for breach of partnership duty.  Trustmark has the burden of proving:

1.    The existence of a partnership between Trustmark and US Life.

2.    Damage resulting from US Life's breach of partnership duty.

If Trustmark shows the existence of a partnership relationship, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.  US Life must show:

1.    That it complied with its partnership duty of good faith and due care;

2.    That it complied with its partnership duty of loyalty and disclosure; and

3.    That it complied with its partnership duty of equal control, or that US Life and Trustmark agreed to vary this duty by contract.

I will explain and define these legal terms elsewhere in these instructions.

If you find that a partnership and resulting damage has been proved, and that US Life has not proved its compliance with partnership duties by clear and convincing evidence, then you must consider US Life's claims of affirmative defenses.

US Life has the burden of proving the following affirmative defense:

1.    Estoppel

Trustmark denies US Life's affirmative defense.

If you find from your consideration of all of the evidence that Trustmark has proved the elements of its case, and US Life has not proved the elements on which it bears the burden of proof, you must find in favor of Trustmark and consider the amount of damages to be awarded.  If US Life proves its affirmative defense, then it is relieved of its obligations and you must find in favor of US Life.

**Source/Authority:**          <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637

N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Barton v. Evanston Hosp.</u>, 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (Ill. App. Ct. 1987); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty).

**Given:**                    _____

**Given as Modified:**        _____

**Rejected:**                 _____

**Withdrawn:**                _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 118

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count I Against US Life:  Partnership

As stated in instruction 117, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 119**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count I Against US Life:  Partnership Duties**

As stated in instruction 117, if you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.  Partners may not alter these fiduciary duties by agreement.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner violates its duty of due care if it takes actions or makes omissions that are in willful disregard of its duty or that are grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  It does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

**Source/Authority:**      Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48,

53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); <u>Saballus v. Timke</u>, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. 1983); <u>City of Mt. Carmel v. Guthridge</u>, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); <u>Zokoych v. Spalding</u>, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); <u>see also</u> <u>Triple Five of Minn., Inc. v. Simon</u>, 404 F.3d 1088, 1098 (8th Cir. 2005); <u>Konover Dev. Corp. v. Zeller</u>, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); <u>Spector v. Konover</u>, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); <u>see also</u> 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

160

## DEFENDANT'S PROPOSED INSTRUCTION NO. 120

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count I Against US Life:  Partnership Duties

As stated in instruction 117, in the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.

Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.

The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

**Source/Authority:**    805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); see also 805 Ill. Comp. Stat § 206/401(j) (West 2007); Hagshenas v. Gaylord, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty); Northmon Inv. Co. v. Milford Plaza Assocs., 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); Covalt v. High, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983); Summers v. Dooley, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.03(c)(1) (2007).

**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 121**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life: Partnership Duties</u>**

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

| | |
|---|---|
| **Source/Authority:** | 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>see</u> 805 Ill. Comp. Stat. § 206/401 (j) (West 2007) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners."); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 122**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life:  Resulting Damage</u>**

If you find that US Life has failed to comply with its partnership duties, you must decide whether Trustmark sustained damages as a result of US Life's breach.

As stated in Instruction 117, to recover on its claim, Trustmark must prove that because of US Life's failure to comply with its partnership duties, Trustmark has been damaged.  Trustmark claims that, as a result of US Life's breach, Trustmark has suffered damages of at least $84.02 million.

US Life denies that Trustmark sustained damage as a result of US Life's failure to comply with its duties.

| | |
|---|---|
| **Source/Authority:** | <u>Beerman v. Graff</u>, 259 Ill. App. 3d 632, 638-39, 621 N.E.2d 173, 178 (Ill. App. Ct. 1993) (partners who violate their fiduciary duties owed to the partnership are liable for damages); <u>see also</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995) (partners who are subject to liability due to co-partner's breach of fiduciary duty are entitled to damages). |

**Given:**                          _____

**Given as Modified:**      _____

**Rejected:**                     _____

**Withdrawn:**                 _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 123**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life:  Affirmative Defenses</u>**

The law recognizes that sometimes, even though Trustmark may have met its burden of proving that a partnership exists, facts or circumstances may exist which would excuse US Life from being liable to Trustmark.  These facts or circumstances are called affirmative defenses.

If this lawsuit, US Life has raised and has the burden to prove the following affirmative defense:

      1.      Estoppel.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**        _____
**Given as Modified:**        _____
**Rejected:**        _____
**Withdrawn:**        _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 124**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life: Affirmative Defenses – Estoppel</u>**

If Trustmark led US Life to reasonably believe that compliance with a particular obligation would not be required, Trustmark cannot now enforce that obligation. This is known as "estoppel."

US Life claims that Trustmark is barred by estoppel in the following respects. US Life claims that Trustmark should be estopped from asserting that US Life and Trustmark were partners in a partnership or joint venture and that US Life owes Trustmark partnership duties.

In order to prove a defense based on estoppel, US Life must show the following facts by clear and convincing evidence:

      1.      Trustmark misrepresented or concealed material facts about the parties' relationship;

      2.      Trustmark knew these misrepresentations were untrue at the time they were made;

      3.      US Life did not know the representations were untrue at the time they were made and acted upon;

      4.      Trustmark intended or reasonably expected that US Life would act upon the representations;

      5.      US Life reasonably relied on the representations in good faith to its detriment;

      6.      US Life would be prejudiced by its reliance on the representations if Trustmark is permitted to deny the truth thereof.

If you find each of these propositions to be proved, Trustmark should be barred from claiming that US Life was its partner in a joint venture or partnership.

| | |
|---|---|
| **Source/Authority:** | <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); <u>see</u> Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 125**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against US Life: Damages</u>**

If you find in favor of Trustmark, you must also fix the amount of money which would reasonably compensate Trustmark for all losses arising from US Life's breach.  Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of US Life's breach.  In calculating Trustmark's damages, you should determine the sum of money that will put Trustmark in as good a position as it would have been in if US Life had performed its partnership duties.

Trustmark seeks damages of $84.02 million and punitive damages for US Life's breach of partnership duties with respect to Schedule P.

**Source/Authority:**     <u>Beerman v. Graff</u>, 259 Ill. App. 3d 632, 638-39, 621 N.E.2d 173, 178 (Ill. App. Ct. 1993) (partners who violate their fiduciary duties owed to the partnership are liable for damages); <u>see</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995) (partners who are subject to liability due to co-partner's breach of fiduciary duty are entitled to damages); <u>see also</u> Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified); <u>Caparos v. Morton</u>, 364 Ill. App. 3d 159, 176-77, 845 N.E.2d 773, 778 (Ill. App. Ct. 2006); <u>LID Assocs. v. Dolan</u>, 324 Ill. App. 3d 1047, 756 N.E.2d 866 (Ill. App. Ct. 1980); <u>PGI, Inc. v. Rathe Prods., Inc.</u>, 576 S.E.2d 438 (Va. 2003).

**Given:**                     _____

**Given as Modified:**   _____

**Rejected:**                 _____

**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 126**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count I Against US Life: Punitive/Exemplary Damages**

If you find that US Life's conduct was willful and wanton and proximately caused injury to Trustmark, and if you believe that justice and the public good require it, you may, in addition to any other damages to which you find Trustmark entitled, award an amount which will serve to punish US Life and to deter US Life and others from similar conduct.

The expression "willful and wanton conduct" means a course of action that shows a conscious disregard for Trustmark's interests. Whereas "willful and wanton" requires more than an act which an ordinary company in US Life's position should have known would cause harm to Trustmark, it does not require that US Life act intentionally or with the intent to harm Trustmark.

**Source/Authority:**    Illinois Pattern Jury Instructions § 35.01 (2006 ed.) (modified); see Ziarko v. Soo Line R.R., 641 N.E.2d 402, 406 (Ill. 1994) ("Willful and wanton conduct is conduct generally considered in that area of fault between ordinary negligence and actual malice. Under the facts of one case, willful and wanton misconduct may only be degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing") (internal citations omitted); Mattyazovszky v. W. Towns Bus Co., 330 N.E.2d 509, 511 (Ill. 1975) ("[S]ituations in which punitive damages become an issue cover a broad spectrum that ranges from the intentional tort which is also a crime, to what we characterize today as 'willful and wanton' conduct, a characterization that shades imperceptibly into simple negligence") (internal citations omitted).

**Given:**              _____
**Given as Modified:**  _____
**Rejected:**           _____
**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 127**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against US Life:  Introduction</u>**

In Count II against US Life, Trustmark seeks a declaratory judgment that Trustmark's liability for any loss pertaining to the Superior National Treaty is limited to, at most, 12 ½ %.

Trustmark claims that US Life breached its partnership duties to Trustmark with respect to obtaining retrocessional coverage for the Superior National Treaty.  Trustmark claims that:

      a.     US Life and Trustmark agreed that reinsurance for 75% of the risk on the Superior National Treaty should be obtained for the partnership;

      b.     US Life represented to Trustmark and others that it had obtained 75% reinsurance for the Superior National Treaty and that 50% had been or would be ceded to the Variable Quota Share ("VQS") Treaty;

      c.     US Life improperly accepted and failed to cancel the Superior National Treaty before it had obtained the retrocessional cover and verified the retrocessional placements;

      d.     US Life failed to conduct an investigation to determine whether the Superior National risk could be ceded to the VQS Treaty;

      e.     US Life ignored legal advice from its own counsel that it obtain an endorsement executed by the VQS;

      f.     US Life failed to share this legal advice, or the fact that documentation was incomplete, with Trustmark;

      g.     US Life unilaterally, without Trustmark's consent, elected not to cede the Superior National Treaty to the VQS; and

      h.     US Life failed to obtain the promised reinsurance for the Superior National Treaty and refused offers by the VQS to accept some share for the Superior National Treaty.

US Life denies that it acted wrongfully.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 128**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against US Life:  Elements</u>**

In Count II, Trustmark claims that it is relieved of liability for more than 12 ½ % of the risk on the Superior National Treaty due to US Life's breach of partnership duty.  Trustmark has the burden of proving:

      1.     The existence of a partnership between Trustmark and US Life.

If Trustmark shows the existence of a partnership relationship, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.  US Life must show:

      1.     That it complied with its partnership duty of good faith and due care;

      2.     That it complied with its partnership duty of loyalty and disclosure; and

      3.     That it complied with its partnership duty of equal control, or that US Life and Trustmark agreed to vary this duty by contract.

I will explain and define these legal terms elsewhere in these instructions.

If you find that a partnership has been proved, and that US Life has not proved its compliance with partnership duties by clear and convincing evidence, then you must consider US Life's claims of affirmative defenses.

US Life has the burden of proving the following affirmative defense:

      1.     Estoppel

Trustmark denies US Life's affirmative defense.

If you find from your consideration of all of the evidence that Trustmark has proved the elements of its case, and US Life has not proved the elements on which it bears the burden of proof, you must find in favor of Trustmark.  If US Life proves its affirmative defense, then it is relieved of its obligations and you must find in favor of US Life.

| | |
|---|---|
| **Source/Authority:** | <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Barton v. Evanston Hosp.</u>, 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (Ill. App. Ct. 1987); |

<u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty).

**Given:**                    _____

**Given as Modified:**   _____

**Rejected:**                _____

**Withdrawn:**           _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 129**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against US Life:  Partnership</u>**

As stated in instruction 128, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions.  The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); <u>Thomson v. Hiter</u>, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. 2005); <u>Koestner v. Wease & Koestner Jewelers, Inc.</u>, 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

**Given:**                           _____
**Given as Modified:**      _____
**Rejected:**                       _____
**Withdrawn:**                   _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 130**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count II Against US Life:  Partnership Duties**

As stated in instruction 128, if you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.  Partners may not alter these fiduciary duties by agreement.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner violates its duty of due care if it takes actions or makes omissions that are in willful disregard of its duty or that are grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  It does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

| | |
|---|---|
| **Source/Authority:** | Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48, |

53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); <u>Saballus v. Timke</u>, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. 1983); <u>City of Mt. Carmel v. Guthridge</u>, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); <u>Zokoych v. Spalding</u>, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); <u>see also</u> <u>Triple Five of Minn., Inc. v. Simon</u>, 404 F.3d 1088, 1098 (8th Cir. 2005); <u>Konover Dev. Corp. v. Zeller</u>, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); <u>Spector v. Konover</u>, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); <u>see also</u> 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.06: 6:91-96; 102-04 (2007).

**Given:**                   _____

**Given as Modified:**   _____

**Rejected:**                _____

**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 131**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count II Against US Life:  Partnership Duties**

As stated in instruction 128, in the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.

Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.

The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

| | |
|---|---|
| **Source/Authority:** | 805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401(j) (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983) (applying Illinois version of the UPA); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg and Ribstein on Partnership</u> § 6.03(c)(1) (2007). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

174

**DEFENDANT'S PROPOSED INSTRUCTION NO. 132**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against US Life:  Partnership Duties</u>**

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

| | |
|---|---|
| **Source/Authority:** | 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>see</u> 805 Ill. Comp. Stat. § 206/401 (j) (West 2007) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners."); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>see also</u> <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 133**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count II Against US Life: Affirmative Defenses**

The law recognizes that sometimes, even though Trustmark may have met its burden of proving that a partnership exists, facts or circumstances may exist which would excuse US Life from being liable to Trustmark.  These facts or circumstances are called affirmative defenses.

If this lawsuit, US Life has raised and has the burden to prove the following affirmative defense:

      1.      Estoppel.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**        _____
**Given as Modified:**        _____
**Rejected:**        _____
**Withdrawn:**        _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 134**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against US Life: Affirmative Defenses – Estoppel</u>**

If Trustmark led US Life to reasonably believe that compliance with a particular obligation would not be required, Trustmark cannot now enforce that obligation.  This is known as "estoppel."

US Life claims that Trustmark is barred by estoppel in the following respects.  US Life claims that Trustmark should be estopped from asserting that US Life and Trustmark were partners in a partnership or joint venture and that US Life owes Trustmark partnership duties.

In order to prove a defense based on estoppel, US Life must show the following facts by clear and convincing evidence:

      1.      Trustmark misrepresented or concealed material facts about the parties' relationship;

      2.      Trustmark knew these misrepresentations were untrue at the time they were made;

      3.      US Life did not know the representations were untrue at the time they were made and acted upon;

      4.      Trustmark intended or reasonably expected that US Life would act upon the representations;

      5.      US Life reasonably relied on the representations in good faith to its detriment;

      6.      US Life would be prejudiced by its reliance on the representations if Trustmark is permitted to deny the truth thereof.

If you find each of these propositions to be proved, Trustmark should be barred from claiming that US Life was its partner in a joint venture or partnership.

| | |
|---|---|
| **Source/Authority:** | <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); *see* Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 135**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against US Life:  Introduction</u>**

In Count III against US Life, Trustmark seeks a declaratory judgment that it is relieved of responsibility for any loss pertaining to the Superior National Treaty.

Trustmark claims that US Life breached its partnership duties by unilaterally usurping control of claims handling and activities relating to the Superior National Treaty, to the exclusion of Trustmark, committed prejudicial errors, and denied Trustmark information.  In particular, Trustmark claims that US Life:

    (a)    US Life refused to allow Trustmark full access to partnership books and records;

    (b)    US Life unilaterally conducted settlement negotiations and made settlement offers and agreements without the consent of Trustmark.

    (c)    US Life excluded Trustmark from settlement negotiations (despite repeated requests to participate) and failed to provide Trustmark information that would enable it to evaluate any settlement offer or agreement.

    (d)    US Life refused to allow Trustmark or its counsel to participate in, and failed to keep Trustmark advised of, activities related to the Superior National Treaty.

    (e)    US Life unilaterally selected counsel for the Superior National Treaty arbitration, who represented US Life and were adverse to Trustmark, and denied Trustmark the right to have legal counsel who represented the interests of the partnership.

    (f)    US Life made all decisions relating to the arbitration, including what witnesses and evidence to present.

    (g)    US Life failed to keep Trustmark advised of its decisions and strategy both with respect to the arbitration and to Treaty matters generally.

    (h)    US Life failed to rescind the Superior National Treaty in a timely fashion.

    (i)    US Life prejudiced its position in the Superior National arbitration by shopping for retrocessional coverage with the same allegedly faulty information that gave rise to its rescission claim.

    (j)    US Life unilaterally and improperly handled an arbitration against the WEB principals, ultimately settling and waiving claims.

    (k)    US Life unilaterally arbitrated against the WEB principals at a time it knew that the WEB principals would be key witnesses in the Superior National arbitration.

    (l)    US Life unilaterally waived claims during the Superior National arbitration.

    (m)    US Life unilaterally chose not to require reconstitution of the Superior National arbitration panel following the death of one of the arbitrators.

US Life denies that it acted wrongfully.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 136**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against US Life:  Elements</u>**

In Count III, Trustmark claims that it is relieved of liability for any losses on the Superior National Treaty due to US Life's breach of partnership duty.  Trustmark has the burden of proving:

      1.      The existence of a partnership between Trustmark and US Life.

If Trustmark shows the existence of a partnership relationship, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.  US Life must show:

      1.      That it complied with its partnership duty of good faith and due care;

      2.      That it complied with its partnership duty of loyalty and disclosure; and

      3.      That it complied with its partnership duty of equal control, or that US Life and Trustmark agreed to vary this duty by contract.

I will explain and define these legal terms elsewhere in these instructions.

If you find that a partnership has been proved and that US Life has not proved its compliance with partnership duties by clear and convincing evidence, then you must consider US Life's claims of affirmative defenses.

US Life has the burden of proving the following affirmative defense:

      1.      Estoppel

Trustmark denies US Life's affirmative defense.

If you find from your consideration of all of the evidence that Trustmark has proved all the elements of its case and US Life has not proved the elements on which it bears the burden of proof, you must find in favor of Trustmark.  If US Life proves its affirmative defense, then it is relieved of its obligations under the partnership and you must find in favor of US Life.

**Source/Authority:**      <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Barton v. Evanston Hosp.</u>, 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (1987); <u>Hagshenas v.</u>

<u>Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty).

**Given:**                  _____

**Given as Modified:**      _____

**Rejected:**               _____

**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 137**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against US Life:  Partnership</u>**

As stated in instruction 136, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions.  The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); <u>Thomson v. Hiter</u>, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); <u>Koestner v. Wease & Koestner Jewelers, Inc.</u>, 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

| | |
|---|---|
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 138**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count III Against US Life:  Partnership Duties**

As stated in instruction 136, if you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.  Partners may not alter these fiduciary duties by agreement.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner violates its duty of due care if it takes actions or makes omissions that are in willful disregard of its duty or that are grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances.  It does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

| | |
|---|---|
| **Source/Authority:** | Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Georgou v. Fritzhall, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); ARTRA Group, Inc. v. Salomon Bros. Holding Co., 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); Winston & Strawn v. Nosal, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); Peskin v. Deutsch, 134 Ill. App. 3d 48, |

53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); Saballus v. Timke, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. 1983); City of Mt. Carmel v. Guthridge, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); Zokoych v. Spalding, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); see also Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1098 (8th Cir. 2005); Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); Spector v. Konover, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); see also 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.06: 6:91-96; 102-04 (2007).

| | |
|---|---|
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 139**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against US Life:  Partnership Duties</u>**

As stated in instruction 136, in the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.

Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.

The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

| | |
|---|---|
| **Source/Authority:** | 805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401(j) (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983) (applying Illinois version of the UPA); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.03(c)(1) (2007). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 140**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count III Against US Life: Partnership Duties**

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

**Source/Authority:**    805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); see 805 Ill. Comp. Stat. § 206/401 (j) (West 2007) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners."); Bras v. Bras, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); see also Peterson v. Superior Bank FSB, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers).

**Given:**              _____
**Given as Modified:**  _____
**Rejected:**           _____
**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 141**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count III Against US Life:  Affirmative Defenses**

The law recognizes that sometimes, even though Trustmark may have met its burden of proving that a partnership exists, facts or circumstances may exist which would excuse US Life from being liable to Trustmark.  These facts or circumstances are called affirmative defenses.

If this lawsuit, US Life has raised and has the burden to prove the following affirmative defense:

      1.      Estoppel.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 142**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against US Life: Affirmative Defenses – Estoppel</u>**

If Trustmark led US Life to reasonably believe that compliance with a particular obligation would not be required, Trustmark cannot now enforce that obligation.  This is known as "estoppel."

US Life claims that Trustmark is barred by estoppel in the following respects.  US Life claims that Trustmark should be estopped from asserting that US Life and Trustmark were partners in a partnership or joint venture and that US Life owes Trustmark partnership duties.

In order to prove a defense based on estoppel, US Life must show the following facts by clear and convincing evidence:

1.   Trustmark misrepresented or concealed material facts about the parties' relationship;

2.   Trustmark knew these misrepresentations were untrue at the time they were made;

3.   US Life did not know the representations were untrue at the time they were made and acted upon;

4.   Trustmark intended or reasonably expected that US Life would act upon the representations;

5.   US Life reasonably relied on the representations in good faith to its detriment;

6.   US Life would be prejudiced by its reliance on the representations if Trustmark is permitted to deny the truth thereof.

If you find each of these propositions to be proved, Trustmark should be barred from claiming that US Life was its partner in a joint venture or partnership.

| | |
|---|---|
| **Source/Authority:** | <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); *see* Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 143**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against US Life:  Introduction</u>**

In Count IV against US Life, Trustmark claims that it entered into an agreement with US Life to govern certain aspects of the parties' relationship.  Trustmark contends that US Life breached the agreement by:  (1) wrongly demanding contribution from Trustmark for a Special Schedule P Deposit, (2) failing to ensure that 75% retrocessional coverage was obtained for the Superior National Treaty, and (3) unilaterally taking control of claims handling and activities relating to the Superior National Treaty, acting without Trustmark's consent, and denying Trustmark equal participation.

Trustmark claims that, as a direct and proximate result of US Life's breaches, it has suffered losses of $80.2 million and, in addition, any losses it may be required to pay with respect to the Superior National Treaty.

US Life denies these allegations.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 144**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against US Life:  Elements</u>**

Under Count IV, Trustmark claims that it is entitled to recover contract damages from US Life for breach of contract.  Trustmark has the burden of proving:

1. The existence of a contract or enforceable promise between Trustmark and US Life.

2. Performance by Trustmark of all of its obligations.

3. US Life's failure to adequately perform its obligations under the contract.

4. Resulting damage to Trustmark.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of US Life.

If you find from your consideration of all of the evidence that Trustmark has proved all the elements of its case, you must find in favor of Trustmark.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.02 (2006 ed.) (modified).
**Given:**                _____
**Given as Modified:**    _____
**Rejected:**             _____
**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 145**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count IV Against US Life:  Proof of Formation of Contract**

As stated in instruction 144, the first element of a contract claim Trustmark must prove is the existence of a contract or enforceable promise.  There is a contract if Trustmark proves there was an offer by one party, acceptance by the other party and consideration between the parties.

Trustmark claims that it entered into an agreement with US Life, which had the following terms:

(a)     WEB would bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

(b)     If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then net liability, after giving effect to retrocessional coverage, would be shared with Trustmark.

(c)     Claims decisions were to be made by a common claims agent (initially WEB) subject to the joint control of US Life or All American and Trustmark, or with the consent of both partners.

(d)     Between the partners, Trustmark bore the responsibility for overseeing WEB's underwriting.  The responsibility for overseeing the placement and collection of retrocessional coverage resided with US Life or All American.

(e)     US Life agreed to accept responsibility for any Special Schedule P Deposit that the California Department of Insurance might require with respect to the Superior National Treaty.

To prove the existence of a contract between Trustmark and US Life, Trustmark has the burden of proving each of the following propositions:

First, US Life must make or have made an offer to Trustmark, or vice versa.  An offer is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

(1)     The communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;
(2)     The important and necessary terms must be definite;
(3)     The terms must be communicated by words or conduct to the other party; and
(4)     The communication must give the other party the power to agree to its terms.

190

Second, the party receiving the offer must have accepted it.  Acceptance of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

    (1)      the recipient must agree to all of the material terms in the offer; and

    (2)      the recipient must have communicated agreement to the offering party.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if Trustmark can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, a promise to act or not act, or any payment that was of benefit to one party or a disadvantage to the other.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).
**Given:**                _____
**Given as Modified:**    _____
**Rejected:**             _____
**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 146**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Trustmark's Count IV Against US Life:  Promissory Estoppel**</u>

In the alternative, Trustmark claims that an enforceable promise existed between the parties because Trustmark justifiably relied on promises made by US Life.  Trustmark has the burden of showing that:

1.    US Life promised Trustmark that:

      a.    in exchange for Trustmark's overseeing WEB's underwriting, it would bear the responsibility for ensuring the placement and collection of retrocessional coverage; and/or

      b.    US Life would accept responsibility for any Special Schedule P Deposit that the California Department of Insurance might require with respect to the Superior National Treaty.

2.    Trustmark refrained from taking actions with respect to ensuring the placement of retrocessional coverage and posting Special Schedule P Deposits based on US Life's promise(s).

3.    US Life expected or reasonably should have expected that its promise(s) would cause Trustmark to refrain from taking actions with respect to ensuring the placement of retrocessional coverage and posting Special Schedule P Deposits;

4.    Trustmark was damaged because it relied on US Life's promise(s).

**Source/Authority:**    Illinois Pattern Jury Instructions § 700.04 (2006 ed.) (modified).
**Given:**    _____
**Given as Modified:**    _____
**Rejected:**    _____
**Withdrawn:**    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 147**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against US Life:  Performance</u>**

As stated in instruction 144, the second element of a contract claim Trustmark must prove is it performed all conditions required of it under the contract or enforceable promise.  To recover on its claim, Trustmark must prove it did what the contract required it to do or had a valid excuse for not doing so.

Trustmark claims that it performed by overseeing WEB's underwriting, or that it was excused from performing by US Life's conduct.

**Source/Authority:**  Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**  _____
**Given as Modified:**  _____
**Rejected:**  _____
**Withdrawn:**  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 148**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against US Life:  Breach of Contract</u>**

Generally, if a party fails to perform its obligations according to the terms of the contract or enforceable promise, the party has breached the agreement.  You must decide whether US Life failed to do what it was required to do.

As stated in instruction 144, the third element of a breach of contract claim which Trustmark must prove is US Life's breach of the contract or enforceable promise.  To recover on its claim, Trustmark has the burden to prove that US Life failed to do something the contract or promise required it to do.  Trustmark claims and has the burden of proving that US Life breached the contract or enforceable promise by:

(a)     Demanding contribution from Trustmark for a Special Schedule P Deposit;

(b)     Failing to obtain 75% retrocessional coverage for the Superior National Treaty; or

(c)     Unilaterally taking control of claims handling and activities relating to the Superior National Treaty and denying Trustmark equal participation.

US Life claims that it did not breach the contract.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 149**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count IV Against US Life:  Damages as a Result of Breach**

If you find that US Life has breached the contract or enforceable promise, you must decide whether Trustmark sustained damages as a result of US Life's breach or breaches.

As stated in instruction 144, the fourth element of a contract claim is damages.  Trustmark must prove it sustained damage resulting from US Life's breach or breaches.

Trustmark claims that, as a result of US Life's breach of contract, it has suffered losses in excess of $80.2 million and, in addition, any losses it may be required to pay with respect to the Superior National Treaty.

US Life denies that Trustmark sustained damage.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 150**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against US Life:  Damages</u>**

If you find in favor of Trustmark, you must then decide how much money, if any, would fairly compensate Trustmark for US Life's breach or breaches of its contract or enforceable promise. Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of US Life's breach or breaches.  In calculating Trustmark's damages, you should determine that sum of money that will put Trustmark in as good a position as it would have been in if both US Life and Trustmark had performed all of their obligations.

**Source/Authority:**          Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                              _____
**Given as Modified:**         _____
**Rejected:**                         _____
**Withdrawn:**                     _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 151**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Claims Against All American:  Introduction</u>**

In Counts I-IV of this case, Trustmark also has asserted claims against All American for breach of partnership duties and breach of contract.

Trustmark contends that US Life and All American on the one hand, and Trustmark on the other hand, were equal partners in a joint venture to issue reinsurance.

According to Trustmark, under the partnership:

(a)     WEB would bind assumed risks.  WEB could do so on Trustmark, US Life, or All American paper.  Although the technical steps which followed might vary depending upon which paper was used, the parties' agreement was that Trustmark, on the one hand, and US Life and All American, on the other hand, would share equally in the net profits and losses from the WEB business.

(b)     If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then net liability, after giving effect to retrocessional coverage, would be shared with Trustmark.

(c)     If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American in the first instance.  All American would cede a percentage of the risk to the applicable retrocessional programs and then share the net liability, after giving effect to retrocessional coverage, with Trustmark.

(d)     Claims decisions were to be made by a joint agent (initially WEB) on behalf of the partnership, or with the consent of both partners.

(e)     Between the partners, the responsibility for overseeing WEB's underwriting was assigned to Trustmark.  The responsibility for overseeing the placement and collection of retrocessional coverage resided with US Life or All American.

Trustmark alleges that All American breached its duties to Trustmark by, among other things, failing to accept contracts issued by WEB as partnership business, usurping claims handling authority from WEB, improperly handling claims, failing to obtain Trustmark's consent, acting over Trustmark's objection, making decisions in its own self-interest (or in the interest of its affiliates), failing to disclose information to Trustmark, and failing to pay amounts due.

All American denies Trustmark's allegations.  In addition, All American claims that it is relieved of any obligations under the doctrine of estoppel.

197

**Source/Authority:**        AAL Compl. ¶¶ 16-53.
**Given:**        _____
**Given as Modified:**        _____
**Rejected:**        _____
**Withdrawn:**        _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 152**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark:
Introduction</u>**

In Count I against All American, Trustmark claims that approximately 39 contracts written by
WEB on Trustmark paper (the "Disputed Contracts") are subject to the partnership between
Trustmark and All American.  These contracts collectively are called the "Disputed Contracts."

Trustmark seeks a declaratory judgment that the Disputed Contracts are subject to the WEB
facility partnership and damages for All American's share of the losses on those contracts in the
amount of approximately $27.4 million.

Plaintiffs contend that they have no liability on the Disputed Contracts because they were bound
by WEB after December 31, 1998.

Trustmark denies plaintiffs' allegations and claims that, even if the Disputed Contracts were
bound by WEB after December 31, 1998, All American had the obligation to cede the contracts
to the WEB facility retrocessionaires.  Trustmark seeks damages for All American's failure to do
so.

## DEFENDANT'S PROPOSED INSTRUCTION NO. 153

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Elements

In Count I, Trustmark seeks a declaration that the Disputed Contracts are subject to the partnership between All American and Trustmark, and damages for All American's failure to pay losses and retrocessional recoveries on the Disputed Contracts to Trustmark.

Trustmark has the burden of proving:

      1.      The existence of a partnership between Trustmark and All American.

      2.      That each Disputed Contract was bound by WEB prior to January 1, 1999.

      3.      Damages resulting from All American's failure to accept the Disputed Contracts as partnership business.

If you find that Trustmark has proved these elements by a preponderance of the evidence, your verdict must be in favor of Trustmark, and you must consider the amount of damages to be awarded to Trustmark.

Even if you find that Trustmark has not proved these elements, you must consider whether Trustmark is entitled to damages for All American's failure to cede the Disputed Contracts to the WEB facility's retrocessionaires.

Trustmark has the burden of proving:

      1.      The existence of a partnership between Trustmark and All American.

      2.      That All American had the obligation to cede the Disputed Contracts to the WEB facility's retrocessionaires.

      3.      Damages resulting from All American's failure to cede the Disputed Contracts to the WEB facility's retrocessionaires.

If you find that Trustmark has proved these elements by a preponderance of the evidence, your verdict must be in favor of Trustmark, and you must consider the amount of damages to be awarded to Trustmark.

If you find that Trustmark has failed to prove the elements on either of the above claims, then your verdict on the Disputed Contracts must be in favor of All American.

**Source/Authority:**     <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000).

**Given:**                _____

**Given as Modified:**    _____

**Rejected:**             _____

**Withdrawn:**            _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 154

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark: Partnership

As stated in instruction 153, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and All American.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership. The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship. You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership. It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.) at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 155**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark:**
**Binding of a Contract**

A contract is "bound" when the parties to the contract reach agreement as to the material terms and conditions of the contract.

To prove agreement as to the material terms and conditions of the contract, Trustmark has the burden of proving each of the following propositions:

First, that WEB made an offer to a cedent, or vice versa.  An offer is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

    (1)    The communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

    (2)    The important and necessary terms must be definite;

    (3)    The terms must be communicated by words or conduct to the other party; and

    (4)    The communication must give the other party the power to agree to its terms.

Second, that the party receiving the offer accepted it.  Acceptance of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

    (1)    the recipient must agree to all of the material terms in the offer; and

    (2)    the recipient must have communicated agreement to the offering party.

The material terms and conditions of a reinsurance contract may include the following:

    (1)    A proposed reinsurer;

    (2)    A proposed reinsured;

    (3)    A determined subject of the reinsurance;

    (4)    A specified amount of reinsurance;

    (5)    An ascertainable or understood rate of reinsurance; and

    (6)    A paid premium, if demanded by the reinsurer.

When the parties reach agreement on the material terms, the contract is bound.  Execution of a formal contract or certificate of reinsurance is not necessary for a binding agreement and may occur after the contract is bound.

**Source/Authority:**          Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).
                                     Quake Constr., Inc. v. Am. Airlines, Inc., 141 Ill. 2d 281, 287, 565
                                     N.E.2d 990, 993 (Ill. 1990) ("[W]here the parties have assented to
                                     all the terms of the contract, the mere reference to a future contract

in writing will not negative the existence of a present contract."); <u>Zannini v. Reliance Ins. Co. of Illinois, Inc.</u>, 590 N.E.2d 457, 464, 147 Ill. 2d 437, 454 (Ill. 1992); <u>see also</u> <u>V'Soske v. Barwick</u>, 404 F.2d 495, 499 (2d Cir. 1968) ("The mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event."); <u>Sumitomo Marine & Fire Ins. Co. v. Cologne Reins. Co. of Am.</u>, 75 N.Y.2d 295, 301-02, 552 N.E.2d 139, 142 (N.Y. 1990); <u>Mills v. Everest Reins. Co.</u>, 410 F. Supp. 2d 243, 250-52 (S.D.N.Y. 2006) (holding that reinsurance binder contained all essential terms even though definition of premium was later modified in signed contract); <u>SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC</u>, 467 F.3d 107, 113 (2d Cir. 2006) (enforcing insurance policies and finding terror attacks a single occurrence even though, "as of September 11, 2001, the Silverstein Parties were still in the midst of negotiating final property insurance coverage for the WTC").

**Given:**                          _____

**Given as Modified:**      _____

**Rejected:**                       _____

**Withdrawn:**                   _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 156**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count I Against All American/Plaintiffs' Count III Against Trustmark:</u>**
**<u>Damages</u>**

As stated in instruction 153, to recover on its claim, Trustmark must prove damages resulting from All American's failure to accept the Disputed Contracts as partnership business and/or damages resulting from All American's failure to cede the Disputed Contracts to the WEB facility's retrocessionaires.

Trustmark contends that All American damaged Trustmark by failing to pay Trustmark 50% of losses in connection with the Disputed Contracts and by failing to obtain retrocessional recoveries.  Trustmark seeks damages of approximately $27.4 million.

If you find in favor of Trustmark, you must fix the amount of money which would reasonably compensate Trustmark for All American's failure to pay.  Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of All American's failure to fulfill it partnership obligations.  In calculating Trustmark's damages, you should determine the sum of money that will put Trustmark in as good a position as it would have been in if All American had performed its partnership duties.

| | |
|---|---|
| **Source/Authority:** | Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified); <u>see also</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *4 (N.D. Ill. Nov. 20, 1995); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 157**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against All American:  Introduction</u>**

In Count II, Trustmark seeks damages and a declaration that Trustmark is relieved from liability in connection with numerous reinsurance contracts written by WEB on All American paper due to All American's breach of partnership duties.  These contracts collectively are called the "All American Contracts."

Trustmark claims that All American breached its partnership duties to Trustmark with respect to the All American Contracts by:

(a)    failing to obtain reinsurance or obtained reinsurance of such poor quality that it provided no protection to the partnership.

(b)    failing to provide timely notice and reports to the retrocessionaires.

(c)    failing properly to cede losses and to pursue retrocessional recoveries.

(d)    engaging in misconduct that caused the loss of reinsurance.

(e)    failing to pay proper premiums and retrocessional recoveries to Trustmark.

(f)    engaging in unilateral conduct, without Trustmark's consent, that caused the partnership to lose reinsurance.

(g)    taking actions with respect to partnership business, including agreeing to settlements and initiating arbitrations, without the consent of, and over the objection of, Trustmark.

(h)    failing to advise, consult, or share information with Trustmark with respect to partnership business, including with respect to arbitrations, litigations, and settlements.

(i)    taking actions with respect to partnership business without any consideration of how those actions might affect partnership interests, but rather solely considered the interests of All American and its affiliates.

(j)    unilaterally making omissions and taking actions, such as initiating arbitrations and entering settlement agreements, without considering the best interests of the partnership.

(k)    unilaterally making omissions and taking actions, such as initiating arbitrations and agreeing to settlements, that were not in the best interests of the partnership.

(l)    failing properly to prepare for and conduct arbitration and litigation proceedings.

(m)    excluding Trustmark and its counsel from settlement negotiations and arbitration and litigation proceedings.

All American denies these allegations and denies that its actions or failures to act was a proximate cause of damages to Trustmark.

206

**DEFENDANT'S PROPOSED INSTRUCTION NO. 158**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against All American:  Elements</u>**

In Count II, Trustmark claims that it is relieved from liability and entitled to recover damages from All American for breach of partnership duty.  Trustmark has the burden of proving:

    1.      The existence of a partnership between Trustmark and All American.

    2.      Damage resulting from All American's breach of partnership duty.

If Trustmark shows the existence of a partnership relationship, the burden of proof then shifts to All American to prove by clear, convincing, unequivocal and unmistakable evidence that All American acted in a manner consistent with the partnership duties owed to Trustmark.  All American must show:

    1.      That it complied with its partnership duties of good faith and due care;

    2.      That it complied with its partnership duties of loyalty and disclosure; and

    3.      That it complied with its partnership duty of equal control, or that All American and Trustmark agreed to vary this obligation by contract.

I will explain and define these duties in a moment.

If you find that a partnership has been proved and that All American has not proved its compliance with partnership duties by clear and convincing evidence, then you must consider All American's claims of affirmative defenses.

All American has the burden of proving the following affirmative defense:

    1.      Estoppel

Trustmark denies All American's affirmative defense.

If you find from your consideration of all of the evidence that Trustmark has proved all the elements of its case and All American has not proved the elements on which it bears the burden of proof, you must find in favor of Trustmark and consider the amount of damages to be awarded.  If All American proves its affirmative defense, then it is relieved of its obligations under the partnership and you must find in favor of All American on Count II.

**Source/Authority:**    Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Barton v. Evanston Hosp., 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (Ill. App. Ct. 1987); Hagshenas v. Gaylord, 199 Ill. App. 3d 60, 73-74, 557 N.E.2d 316, 325 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 159**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count II Against All American:  Partnership**

As stated in instruction 158, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and All American.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

|  |  |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); Thomson v. Hiter, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); Koestner v. Wease & Koestner Jewelers, Inc., 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 160**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Trustmark's Count II Against All American:  Partnership Duties**</u>

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to All American to prove by clear, convincing, unequivocal and unmistakable evidence that All American acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts that are in willful disregard of this duty and acts that are grossly negligent.

You are to determine gross negligence from the totality of the circumstances.  Gross negligence does not require intentional wrongdoing.  You may consider all of All American's individual acts and the circumstances surrounding those acts as a whole in determining whether All American acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

| | |
|---|---|
| **Source/Authority:** | <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); <u>ARTRA Group, Inc. v. Salomon Bros. Holding Co.</u>, 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); <u>Winston & Strawn v. Nosal</u>, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); <u>Peskin v. Deutsch</u>, 134 Ill. App. 3d 48, |

53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); Saballus v. Timke, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct. 1983); City of Mt. Carmel v. Guthridge, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); Zokoych v. Spalding, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); see also Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1098 (8th Cir. 2005); Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); Spector v. Konover, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); see also 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 161**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Trustmark's Count II Against All American: Partnership Duties**</u>

As stated in instruction 158, in the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.  In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.

Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.  The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

| | |
|---|---|
| **Source/Authority:** | 805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); <u>see also</u> 805 Ill. Comp. Stat § 206/401(j) (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.03(c)(1) (2007). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

212

**DEFENDANT'S PROPOSED INSTRUCTION NO. 162**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against All American:  Partnership Duties</u>**

Before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

**Source/Authority:**  805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>see</u> 805 Ill. Comp. Stat. § 206/401 (j) (West 2007) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners."); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>see also</u> <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d 1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers).

**Given:**                          _____

**Given as Modified:**      _____

**Rejected:**                       _____

**Withdrawn:**                  _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 163**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against All American:  Resulting Damage</u>**

If you find that All American has failed to comply with its partnership duties, you must decide whether Trustmark sustained damages as a result of All American's breach.

As stated in Instruction 158, to recover on its claim, Trustmark must prove that because of All American's failure to comply with its partnership duties, Trustmark has been damaged. Trustmark claims that, as a result of All American's breach, Trustmark has suffered damages of at least $4.5 million and, in addition, any loss it otherwise may be required to pay on the All American Contracts.

All American denies that Trustmark sustained damage as a result of All American's failure to comply with its duties.

| | |
|---|---|
| **Source/Authority:** | <u>Beerman v. Graff</u>, 259 Ill. App. 3d 632, 638-39, 621 N.E.2d 173, 178 (Ill. App. Ct. 1993) (partners who violate their fiduciary duties owed to the partnership are liable for damages); <u>see also</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995) (partners who are subject to liability due to co-partner's breach of fiduciary duty are entitled to damages). |

**Given:**               _____
**Given as Modified:**   _____
**Rejected:**            _____
**Withdrawn:**           _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 164

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count II Against All American:  Affirmative Defenses

The law recognizes that sometimes, even though Trustmark may have met its burden of proving that a partnership exists, facts or circumstances may exist which would excuse All American from being liable to Trustmark.  These facts or circumstances are called affirmative defenses.

If this lawsuit, All American has raised and has the burden to prove the following affirmative defense:

      1.      Estoppel.

**Source/Authority:**    Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**    _____
**Given as Modified:**    _____
**Rejected:**    _____
**Withdrawn:**    _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 165

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count II Against All American: Affirmative Defenses – Estoppel

If Trustmark led All American to reasonably believe that compliance with a particular obligation would not be required, Trustmark cannot now enforce that obligation.  This is known as "estoppel."

All American claims that Trustmark is barred by estoppel in the following respects.  All American claims that Trustmark should be estopped from asserting that All American and Trustmark were partners in a partnership or joint venture and that All American owes Trustmark partnership duties.

In order to prove a defense based on estoppel, All American must show the following facts by clear and convincing evidence:

1. Trustmark misrepresented or concealed material facts about the parties' relationship;

2. Trustmark knew these misrepresentations were untrue at the time they were made;

3. All American did not know the representations were untrue at the time they were made and acted upon;

4. Trustmark intended or reasonably expected that All American would act upon the representations;

5. All American reasonably relied on the representations in good faith to its detriment;

6. All American would be prejudiced by its reliance on the representations if Trustmark is permitted to deny the truth thereof.

If you find each of these propositions to be proved, Trustmark should be barred from claiming that All American was its partner in a joint venture or partnership.

216

**Source/Authority:** <u>Geddes v. Mill Creek County Club, Inc.</u>, 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing <u>Vaughn v. Speaker</u>, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); *see* Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 166**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count II Against All American: Damages</u>**

If you find in favor of Trustmark, you must also fix the amount of money which would reasonably compensate Trustmark for all losses arising from All American's breach.  Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of All American's breach.  In calculating Trustmark's damages, you should determine the sum of money that will put Trustmark in as good a position as it would have been in if All American had performed its partnership duties.

Trustmark seeks damages of at least $4.5 million and, in addition, any loss it may otherwise be required to pay on the All American contracts.

**Source/Authority:**   <u>Beerman v. Graff</u>, 259 Ill. App. 3d 632, 638-39, 621 N.E.2d 173, 178 (Ill. App. Ct. 1993) (partners who violate their fiduciary duties owed to the partnership are liable for damages); <u>see also</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995) (partners who are subject to liability due to co-partner's breach of fiduciary duty are entitled to damages).

**Given:** _____
**Given as Modified:** _____
**Rejected:** _____
**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 167**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**Trustmark's Count III Against All American:  Introduction**</u>

In Count III, Trustmark seeks damages in connection with numerous reinsurance contracts written by WEB on Trustmark paper.  Trustmark claims that, although All American concedes these contracts are partnership business, it has failed to pay Trustmark for its share of losses and failed to reimburse Trustmark for recoveries it has received from retrocessionaires.  These contracts collectively are called the "Trustmark Contracts."

All American denies these allegations.

**DEFENDANT'S PROPOSED INSTRUCTION NO. 168**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against All American:  Elements</u>**

In Count III, Trustmark claims that it is entitled to recover damages from All American for its breach of partnership duties.  Trustmark has the burden of proving:

    1.      The existence of a partnership between Trustmark and All American.

    2.      That All American failed to pay Trustmark 50% of the losses and retrocessional recoveries in connection with the Trustmark Contracts.

If you find from your consideration of all of the evidence that Trustmark has proved all the elements of its case, you must find in favor of Trustmark and consider the amount of damages to be awarded.  If you find that Trustmark has not proved the elements of its case, your verdict must be in favor of All American.

**Source/Authority:** <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Barton v. Evanston Hosp.</u>, 159 Ill. App. 3d 970, 974, 513 N.E.2d 65, 67 (Ill. App. Ct. 1987); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (taking action over objection of co-partner constitutes breach of fiduciary duty).

**Given:**                    _____

**Given as Modified:**    _____

**Rejected:**             _____

**Withdrawn:**          _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 169**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against All American:  Partnership</u>**

As stated in instruction 168, Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and All American.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions.  The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); <u>Thomson v. Hiter</u>, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); <u>Koestner v. Wease & Koestner Jewelers, Inc.</u>, 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |

**Given:**                        _____

**Given as Modified:**      _____

**Rejected:**                    _____

**Withdrawn:**               _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 170**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count III Against All American:  Damages</u>**

As stated in instruction 168, to recover on its claim, Trustmark must prove that All American failed to pay Trustmark 50% of losses and retrocessional recoveries in connection with the Trustmark Contracts.

If you find in favor of Trustmark, you must fix the amount of money which would reasonably compensate Trustmark.  Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of All American's failure to fulfill its obligations.  In calculating Trustmark's damages, you should determine the sum of money that will put Trustmark in as good a position as it would have been in if All American had performed its partnership duties.

Trustmark seeks damages of approximately $21.0 million.

**Source/Authority:**        <u>Beerman v. Graff</u>, 259 Ill. App. 3d 632, 638-39, 621 N.E.2d 173, 178 (Ill. App. Ct. 1993) (partners who violate their fiduciary duties owed to the partnership are liable for damages); <u>see also</u> <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995) (partners who are subject to liability due to co-partner's breach of fiduciary duty are entitled to damages).

**Given:**                      _____
**Given as Modified:**    _____
**Rejected:**                  _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 171**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Introduction</u>**

In Count IV against All American, Trustmark claims that it entered into an agreement with All American to govern certain aspects of the parties' relationship.  Trustmark claims that it is entitled to recover damages for breach of contract.

Trustmark claims that All American breached its agreement with Trustmark with respect to the All American Contracts by doing of failing to do one or more of the following:

     (a)     failing to obtain reinsurance or obtained reinsurance of such poor quality that it provided no protection to the partnership.

     (b)     failing to provide timely notice and reports to the retrocessionaires.

     (c)     failing properly to cede losses and to pursue retrocessional recoveries.

     (d)     engaging in misconduct that caused the loss of reinsurance.

     (e)     failing to pay proper premiums and retrocessional recoveries to Trustmark.

     (f)     engaging in unilateral conduct, without Trustmark's consent, that caused the partnership to lose reinsurance.

     (g)     taking actions with respect to partnership business, including agreeing to settlements and initiating arbitrations, without the consent of, and over the objection of, Trustmark.

     (h)     failing to advise, consult, or share information with Trustmark with respect to partnership business, including with respect to arbitrations, litigations, and settlements.

     (i)     taking actions with respect to partnership business without any consideration of how those actions might affect partnership interests, but rather solely considered the interests of All American and its affiliates.

     (j)     unilaterally making omissions and taking actions, such as initiating arbitrations and entering settlement agreements, without considering the best interests of the partnership.

     (k)     unilaterally making omissions and taking actions, such as initiating arbitrations and agreeing to settlements, that were not in the best interests of the partnership.

     (l)     failing properly to prepare for and conduct arbitration and litigation proceedings.

     (m)     excluding Trustmark and its counsel from settlement negotiations and arbitration and litigation proceedings.

Trustmark claims that All American breached its agreement with Trustmark with respect to the Disputed Contracts by refusing to accept the Disputed Contracts as partnership business and failing to pay Trustmark for losses and retrocessional recoveries on those contracts.

Trustmark claims that All American breached its agreement with Trustmark with respect to the Trustmark Contracts by failing to reimburse Trustmark for losses and retrocessional recoveries on those contracts.

Trustmark claims that, as a direct and proximate result of All American's breaches, it has suffered losses in the amount of $4.5 million and, in addition, any losses it may be required to pay on the All American Contracts.  It has suffered losses in the amount of approximately $48.4 million on the Disputed and the Trustmark Contracts.

All American denies these allegations.

**Source/Authority:**     AAL Compl. ¶¶  20-21, 27, 32, 42, 50-53.
**Given:**                _____
**Given as Modified:**    _____
**Rejected:**             _____
**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 172**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Elements</u>**

Under Count IV, Trustmark claims that it is entitled to recover contract damages from All American for breach of contract.  Trustmark has the burden of proving:

1.    The existence of a contract or enforceable promise between Trustmark and All American.

2.    Performance by Trustmark of all of its obligations.

3.    All American's failure to adequately perform its obligations under the contract.

4.    Resulting damage to Trustmark.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of All American.

If you find from your consideration of all of the evidence that Trustmark has proved all the elements of its case, you must find in favor of Trustmark.

**Source/Authority:**        Illinois Pattern Jury Instructions § 700.02 (2006 ed.) (modified).
**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

225

**DEFENDANT'S PROPOSED INSTRUCTION NO. 173**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Proof of Formation of Contract</u>**

As stated in instruction 172, the first element of a contract claim Trustmark must prove is the existence of a contract or enforceable promise.  There is a contract if Trustmark proves there was an offer by one party, acceptance by the other party and consideration between the parties.

Trustmark claims that it entered into an agreement with All American, which had the following terms:

(a)    WEB would bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

(b)    If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then net liability, after giving effect to retrocessional coverage, would be shared with Trustmark.

(c)    If the risk was bound on Trustmark paper, Trustmark would cede the risk to All American who, in turn, would cede a percentage of the risk to applicable retrocessional programs and bear 50% of the net retained liability.

(d)    Claims decisions were to be made by a common claims agent (initially WEB) subject to the joint control of US Life or All American and Trustmark, or with the consent of both partners.

(e)    Between the partners, Trustmark bore the responsibility for overseeing WEB's underwriting.  The responsibility for overseeing the placement and collection of retrocessional coverage resided with US Life or All American.

To prove the existence of a contract between Trustmark and All American, Trustmark has the burden of proving each of the following propositions:

First, All American must make or have made an offer to Trustmark, or vice versa.  An offer is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

(1)    The communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;
(2)    The important and necessary terms must be definite;
(3)    The terms must be communicated by words or conduct to the other party; and
(4)    The communication must give the other party the power to agree to its terms.

226

Second, the party receiving the offer must have accepted it.  Acceptance of an offer is a communication of agreement to the terms of the offer.  For the acceptance to be valid:

    (1)      the recipient must agree to all of the material terms in the offer; and

    (2)      the recipient must have communicated agreement to the offering party.

Third, the agreement included an exchange of promises or value, which is known as consideration.  There is sufficient consideration if Trustmark can prove that something of value was bargained in exchange for the other's promise.  "Something of value" may consist of a promise, an act, a promise to act or not act, or any payment that was of benefit to one party or a disadvantage to the other.

**Source/Authority:**          Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**            _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 174

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### Trustmark's Count IV Against All American:  Promissory Estoppel

In the alternative, Trustmark claims that an enforceable promise existed between the parties because Trustmark justifiably relied on promises made by All American.  Trustmark has the burden of showing that:

1. All American promised Trustmark that in exchange for Trustmark's overseeing WEB's underwriting, it would bear the responsibility for ensuring the placement and collection of retrocessional coverage.

2. Trustmark refrained from taking actions with respect to ensuring the placement of retrocessional coverage based on All American's promise.

3. All American expected or reasonably should have expected that its promise would cause Trustmark to refrain from taking actions with respect to ensuring the placement of retrocessional coverage;

4. Trustmark was damaged because it relied on All American's promise.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.04 (2006 ed.) (modified).
**Given:**                _____
**Given as Modified:**    _____
**Rejected:**             _____
**Withdrawn:**            _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 175**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Performance</u>**

As stated in instruction 172, the second element of a contract claim Trustmark must prove is that it performed all conditions required of it under the contract or enforceable promise.  To recover on its claim, Trustmark must prove it did what the contract required it to do or had a valid excuse for not doing so.

Trustmark claims that it performed by overseeing WEB's underwriting, or that it was excused from performing by All American's conduct.

**Source/Authority:**    Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**                      _____
**Given as Modified:**    _____
**Rejected:**                  _____
**Withdrawn:**              _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 176**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**Trustmark's Count IV Against All American:  Breach of Contract**

Generally, if a party fails to perform its obligations according to the terms of the contract or enforceable promise, the party has breached the agreement.  You must decide whether All American failed to do what it was required to do.

As stated in instruction 172, the third element of a breach of contract claim which Trustmark must prove is All American's breach of the contract or enforceable promise.  To recover on its claim, Trustmark has the burden to prove that All American failed to do something the contract or promise required it to do.  Trustmark claims that All American breached the contract or enforceable promise with respect to the All American Contracts by doing or failing to do one or more of the following:

|   |   |
|---|---|
| a. | failing to place or improperly placing retrocessional coverage; |
| b. | failing to report to, ceding to, or collect from retrocessionaires; |
| c. | engaging in misconduct that caused the loss of reinsurance; |
| d. | failing to pay proper premiums and retrocessional recoveries to Trustmark; |
| e. | engaging in unilateral conduct, without Trustmark's consent, that caused the loss of reinsurance; |
| f. | engaging in unilateral actions with respect to partnership business, including agreeing to settlements and initiating arbitrations, without the consent of, and over the objection of, Trustmark; |
| g. | failing to advise, consult, or share information with Trustmark with respect to partnership business, including with respect to arbitrations, litigations, and settlements; |
| h. | taking actions with respect to partnership business without any consideration of how those actions might affect partnership interests; |
| i. | engaging in unilateral actions and omissions, such as initiating arbitrations and entering settlement agreements, without considering the best interests of the partnership or that were not in the best interests of the partnership; |
| j. | failing properly to prepare for and conduct arbitration and litigation proceedings; |
| k. | excluding Trustmark and its counsel from settlement negotiations and arbitration and litigation proceedings. |

Trustmark claims that All American breached its agreement with Trustmark with respect to the Disputed Contracts by refusing to accept the Disputed Contracts as partnership business and failing to pay Trustmark for losses and retrocessional recoveries on those contracts.

230

Trustmark claims that All American breached its agreement with Trustmark with respect to the Trustmark Contracts by failing to reimburse Trustmark for losses and retrocessional recoveries on those contracts.

All American claims that it did not breach the contract.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 177**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Damages as a Result of Breach</u>**

If you find that All American has breached the contract or enforceable promise, you must decide whether Trustmark sustained damages as a result of All American's breach or breaches.

As stated in instruction 172, the fourth element of a contract claim is damages.  Trustmark must prove it sustained damage resulting from All American's breach or breaches.

Trustmark claims that, as a result of All American's breach of its agreement with Trustmark, Trustmark has suffered losses of approximately $4.5 million and any additional amounts it may be required to pay with respect to the All American Contracts, $27.4 million with respect to the Disputed Contracts, and $21.0 with respect to the Trustmark Contracts.

All American denies that Trustmark sustained damage.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                            _____
**Given as Modified:**        _____
**Rejected:**                        _____
**Withdrawn:**                    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 178**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Count IV Against All American:  Damages</u>**

If you find in favor of Trustmark, you must then decide how much money, if any, would fairly compensate Trustmark for All American's breach or breaches of its contract or enforceable promise.  Trustmark has the burden of proving each element of damages claimed and that it occurred as a direct and natural result of All American's breach or breaches.  In calculating Trustmark's damages, you should determine that sum of money that will put Trustmark in as good a position as it would have been in if both All American and Trustmark had performed all of their obligations.

**Source/Authority:**          Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                          _____
**Given as Modified:**        _____
**Rejected:**                       _____
**Withdrawn:**                    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 179**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Claim Against US Life:  Introduction</u>**

In a separate action, Trustmark asserted a claim against US Life for breach of contract. Trustmark claims that Trustmark and US Life entered into a contractual agreement dated April 9, 2004, in an attempt to resolve some of the disputes arising from their partnership.  Trustmark contends that US Life breached the April 9, 2004 Agreement by failing to negotiate with Trustmark in good faith and wrongfully demanding payments relating to WEB business.

Trustmark claims it is entitled to recover damages of at least $27.4 million, and/or damages for monies paid by Trustmark to US Life pursuant to the April 9, 2004 Agreement.

US Life denies these allegations.

## DEFENDANT'S PROPOSED INSTRUCTION NO. 180

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### <u>Trustmark's Claim Against US Life:  Elements</u>

Trustmark claims that US Life breached a contract between the two parties.

The terms of the contract are as follows.  Trustmark agreed to pay US Life a substantial sum.  In turn, US Life agreed that:

1.     It would promptly begin a due diligence review of the Disputed Business;

2.     After completion of its review, it would enter into "good faith" negotiations with Trustmark to reach a resolution with respect to the Disputed Business; and

3.     Neither US Life nor its affiliate All American would make "any demand for payment" relating to WEB business (except with respect to the Centre Re and Converium Re portions of the Superior National Treaty) before the parties concluded their good faith effort to resolve the Disputed Contracts.

Trustmark has the burden of proving US Life breached the contract in the following way or ways:

1.     US Life did not negotiate in good faith with Trustmark to reach a resolution with respect to the Disputed Business; and

2.     US Life demanded payment with respect to WEB business before the parties concluded their good faith effort to resolve the Disputed Contracts.

US Life denies that it breached the contract.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.01 (2006 ed.) (modified).
**Given:**                 _____
**Given as Modified:**     _____
**Rejected:**              _____
**Withdrawn:**             _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 181

## INSTRUCTIONS AT CLOSE OF EVIDENCE

## <u>Trustmark's Claim Against US Life: Breach of Contract</u>

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether US Life failed to do what it was required to do under the contract.

Trustmark is required to prove that US Life breached the contract.  To recover on its claim, Trustmark has the burden to prove that US Life failed to do something the contract required it to do.

Trustmark claims and has the burden of proving that US Life breached the contract by:

     (a)    Failing to negotiate in good faith with Trustmark to reach a resolution with respect to the Disputed Contracts; or

     (b)    Making demands for payment from Trustmark before the parties completed their good faith effort to resolve the Disputed Contracts.

**Source/Authority:**     Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**     _____
**Given as Modified:**     _____
**Rejected:**     _____
**Withdrawn:**     _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 182**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>Trustmark's Claim Against US Life:  Resulting Damage</u>**

If you find that US Life breached the April 9, 2004 Agreement, you must decide whether Trustmark sustained damages as a result of US Life's breach of contract.

Trustmark must prove it sustained damage resulting from US Life's breach.  To recover on its claim, Trustmark must prove that because of US Life's failure to perform the contract, it has been damaged or not received the benefits to which it is entitled under the contract.

US Life denies Trustmark sustained damage.

**Source/Authority:**    Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**            _____
**Given as Modified:**    _____
**Rejected:**          _____
**Withdrawn:**         _____

237

## DEFENDANT'S PROPOSED INSTRUCTION NO. 183

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### **Trustmark's Claim Against US Life:  Damages**

If you find in favor of Trustmark, you must then decide how much money, if any, would fairly compensate Trustmark for US Life's breach of contract.  Trustmark has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of US Life's breach.  In calculating Trustmark's damages, you should determine that sum of money that will put Trustmark in as good a position as it would have been if both US Life and Trustmark had performed all of their obligations under the contract.

Trustmark seeks an award for direct damages.  "Direct damages" are the amount of gain Trustmark would have received if US Life had fully performed the contract.  You calculate the amount of this gain by determining the value of the contract benefits Trustmark did not receive because of US Life's breach and then subtracting from that value, the amount you calculate the value of whatever expenses Trustmark saved because of the breach.

**Source/Authority:**       Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                  _____
**Given as Modified:**      _____
**Rejected:**               _____
**Withdrawn:**              _____

238

**DEFENDANT'S PROPOSED INSTRUCTION NO. 184**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Introduction**

US Life has asserted a counterclaim against Trustmark.  In its Counterclaim, US Life contends that, in the event you find that it breached the April 9, 2004 Agreement, you should find that, under the Pooling Arrangement, Trustmark is liable for a 37.5% share of a settlement that US Life entered with Centre Re with respect to the Superior National Treaty.

Trustmark denies US Life's allegations.  In addition, Trustmark claims that any obligation with respect to the Superior National Treaty was relieved in whole or in part by US Life's breaches of its partnership and contractual duties, under the doctrine of estoppel, and that any obligation with respect to the Centre Re settlement was relieved under the doctrine of waiver.

| | |
|---|---|
| **Source/Authority:** | Counterclaim ¶¶ 5-12; Answer to Countercl. ¶¶ 5-12; Affirm. Defenses 2-7. |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 185**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Elements**</u>

Under Count I, US Life claims that Trustmark breached the parties' Pooling Arrangement by failing to pay 37.5% of its settlement with Centre Re on the Superior National Treaty.  US Life has the burden of proving by a preponderance:

      1.      The existence of a contract between US Life and Trustmark.

      2.      Performance by US Life of all of its obligations.

      3.      Trustmark's failure to perform its obligations under the contract.

      4.      Resulting damage to US Life.

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Trustmark.

If you find that each of the above elements has been proved, then you must consider Trustmark's claims of affirmative defenses.

Trustmark claims and has the burden of proving the following affirmative defenses:

      1.      Breach of partnership duty

      2.      Breach of contractual duty

      3.      Breach of implied duty of utmost good faith and fair dealing

      4.      Estoppel

      5.      Waiver

US Life denies Trustmark's affirmative defenses.

If you find from your consideration of all of the evidence that US Life has proved all the elements of its case and Trustmark has not proved any affirmative defense, you must find in favor of US Life on its counterclaim.  If Trustmark proves one of its affirmative defenses, then it is relieved of its obligations under the contract and you must find in favor of Trustmark.

**Source/Authority:**       Illinois Pattern Instructions § 700.02 (modified).

**Given:**                  _____

**Given as Modified:**     _____

**Rejected:**             _____

**Withdrawn:**           _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 186**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Existence of a Contract**

As stated in Instruction 185, the first element of a contract claim US Life must prove is the existence of a contract.  There is a contract if US Life proves there was an offer by one party, acceptance by the other party and consideration between the parties.

US Life claims that US Life and Trustmark entered into a contract called the "Pooling Arrangement," which had the following terms:

(a)     WEB could bind assumed risks on either Trustmark, US Life, or All American paper depending on the circumstances.

(b)     If the risk was bound on US Life or All American paper, US Life or All American would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the facility to Trustmark.

(c)     If the risk was bound on Trustmark paper, then Trustmark would cede 100% of the risk to All American, which in turn would cede a percentage of the risk to the applicable retrocessional programs and then cede 50% of the portion retained by the WEB facility back to Trustmark.

(d)     Each party had full authority to settle or otherwise resolve claims made under treaties bound on its own paper with the obligation of the joint venture partner to share in the resulting liability arising after such a claim was settled or otherwise resolved in good faith by the issuing party.

(e)     The shared liability commenced obligatorily and simultaneously with the issuing party's payment or settlement of the claim.

(f)     Trustmark was obligated to contribute toward any Special Schedule P Deposit made by US Life.

To prove the existence of a contract between US Life and Trustmark, US Life has the burden of proving each of the following propositions:

First, US Life must make or have made an offer to Trustmark or vice versa.  An "offer" is a communication of a willingness to enter into a contract.  The communication must satisfy four conditions:

(1)     the communication must have included a definite promise by the person making the communication, showing a willingness to make an agreement;

(2)     the important and necessary terms must be definite;

(3)      the terms must be communicated by words or conduct to the other party; and

(4)      the communication must give the other party the power to agree to its terms.

Second, the recipient of the offer accepted the offer made by the other party. "Acceptance" of an offer is a communication of agreement to the terms of the offer. For the acceptance to be valid:

(1)      the recipient of the offer must agree to all of the material terms in the offer; and

(2)      the recipient of the offer must have communicated agreement to the maker of the offer.

Third, the agreement included an exchange of promises or value, which is known as consideration. There is sufficient consideration if US Life can prove that something of value was bargained in exchange for the other's promise. "Something of value" may consist of a promise, an act, or a promise to act or not to act.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.03 (2006 ed.) (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 187**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Contingent Contract**

As indicated in instruction 186, to prove that the parties entered into a valid contract, US Life must prove that the parties reached a final agreement.

Trustmark contends that the parties negotiated only to the point of a tentative agreement and that a final agreement was contingent upon the parties finalizing and signing a contract.

US Life has the burden to prove that the parties reached a final agreement.  To establish that the parties reached a final agreement, US Life must prove at least one of the following facts:

1.      That the parties reached a final agreement without any contingency that the parties finalize and sign a contract;

2.      That, if the agreement was contingent on the parties finalizing and signing a contract, the contingency occurred; or

3.      That, if the agreement was contingent on the parties finalizing and signing a contract and the contingency did not occur, the only reason it did not occur was because Trustmark failed to act reasonably with respect to matters under its control.

In determining whether the parties intended a final agreement to be contingent on their finalizing and signing a contract, you should consider any factors that you deem important, which may include the following factors: (1) whether agreements of this type are usually put in writing; (2) the complexity of the agreement; (3) the amount of money involved in the agreement; and (4) whether the negotiations between the parties indicate that the parties intended for there to be a formal written agreement at the end of the negotiations.

**Source/Authority:**          Kehoe, Robert E., Jr., Jury Instructions for Contract Cases § 4.08 (1995) (modified); see Quake Constr., Inc. v. American Airlines, Inc., 565 N.E.2d 281, 288, 289 (Ill. 1990) (holding that "[w]here the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done" and setting forth a list of factors that may be considered in "determining whether the parties intended to reduce their agreement to writing"); see also Kipnis v.

244

<u>Mandel Metals, Inc.</u>, 471 N.E.2d 1033, 1037 (Ill. App. Ct. 2000) (holding that no binding contract existed where the parties expressed their intention to execute a "definitive written agreement" and no such agreement was ever executed).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 188**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Performance by Plaintiff**

As stated in Instruction 185, the second element of a contract claim US Life must prove is it performed all obligations required of it under the contract.  To recover on its claim, US Life must prove it did what the contract required it to do or had a valid excuse for not doing so.

US Life claims that it performed under the contract by settling or otherwise resolving Centre Re's claims with respect to the Superior National Treaty in good faith.  Trustmark denies that US Life performed under the contract by acting in good faith with respect to Centre Re's claims under the Superior National Treaty.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.07 (2006 ed.) (modified).
**Given:**                           _____
**Given as Modified:**       _____
**Rejected:**                       _____
**Withdrawn:**                    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 189**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Breach of Contract**</u>

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether Trustmark failed to do what it was required to do under the contract.

As stated in instruction 185, the third element of a contract claim which US Life must prove is Trustmark's breach of the contract.  To recover on its claim, US Life has the burden to prove that Trustmark failed to do something the contract required it to do.  US Life claims and has the burden of proving that, under the contract, Trustmark was required to pay 37.5% of the settlement US Life entered with Centre Re on the Superior National Treaty.

Trustmark denies US Life's allegations.  Trustmark also claims that it did not breach the contract because the parties agreed:

     1.     That any settlement or other resolution of claims would be made by a mutual joint agent or with the approval of both US Life and Trustmark; and

     2.     That US Life would be responsible for overseeing placement of retrocessional coverage and collecting from the retrocessionaires before sharing any retained risk with Trustmark.

Trustmark claims that US Life failed to involve Trustmark in the settlement negotiations and agreement with Centre Re or obtain Trustmark's consent, and that US Life failed to ensure the placement of retrocessional coverage for the Superior National Treaty or collect from retrocessionaires.  The law regarding conditions will be explained in the next instruction.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.10 (2006 ed.) (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

247

**DEFENDANT'S PROPOSED INSTRUCTION NO. 190**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Existence And/Or Failure of Condition Precedent**</u>

As stated in instruction 185, the third element US Life must prove is Trustmark's failure to perform the obligations under the contract.  In this case, Trustmark claims the parties agreed that Trustmark did not have an obligation to pay until US Life had performed its obligations to:

1.    Obtain Trustmark's informed consent to any settlement or other resolution of claims; and

2.    Oversee placement of the agreed amount of retrocessional coverage and collect from the WEB facility's retrocessionaires before sharing any retained risk with Trustmark.

US Life has the burden of proving these conditions were not part of the contract.

If you find these conditions were part of the contract, you must then decide whether US Life obtained Trustmark's informed consent to the Centre Re settlement, and whether US Life ensured the placement of the agreed amount of retrocessional coverage for the Superior National Treaty and collected from the WEB facility's retrocessionaires.  If these conditions did not occur, then US Life cannot recover.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.09 (2006 ed.) (modified).
**Given:**                        _____
**Given as Modified:**      _____
**Rejected:**                    _____
**Withdrawn:**                _____

248

**DEFENDANT'S PROPOSED INSTRUCTION NO. 191**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Resulting Damages**</u>

If you find that Trustmark has breached the contract, you must decide whether US Life sustained damages as a result of Trustmark's breach of the contract.

As stated in Instruction 185, the fourth element of a contract claim is damages.  US Life must prove it sustained damage resulting from Trustmark's breach.  To recover on its claim, US Life must prove that because of Trustmark's failure to perform the contract, it has been damaged.

Trustmark denies that US Life sustained damage as a result of Trustmark's alleged breach.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.11 (2006 ed.) (modified).
**Given:**                          _____
**Given as Modified:**      _____
**Rejected:**                     _____
**Withdrawn:**                 _____

249

**DEFENDANT'S PROPOSED INSTRUCTION NO. 192**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Follow the Fortunes Doctrine**</u>

Under a follow the fortunes clause, a reinsurer must reimburse the reinsured for settlement payments made by the reinsurer so long as those settlements were reasonable, made in good faith, and without collusion.

A reinsurer is not bound by settlements made without the reinsurer's consent unless the reinsurance agreement expressly contains a follow the fortunes clause.

A follow the fortunes clause is not automatically implied into all reinsurance contracts as a matter of law.  Where there is no express agreement on a follow the fortunes clause, the clause is not part of the reinsurance contract.

| | |
|---|---|
| **Source/Authority:** | <u>Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters, at Lloyd's London</u>, 93 F.3d 529, 535 (9th Cir. 1996); <u>Employer Reins. Corp v. Laurier Indem. Co.</u>, No. 8:03-cv-1650-T-17MSS, 2007 WL 1831775, at *(M.D. Fla. Jun. 6, 2007) (holding that follow the fortunes clause should not be implied into a reinsurance contract that was silent on the issue); <u>Am. Ins. Co. v. Am. Re-Ins. Co.</u>, 2006 WL 3412079, at *3-5 (N.D. Cal. Nov. 27, 2006); <u>Sec. Ins. Co. v. Trustmark Ins. Co.</u>, No. Civ. 3:00CV1247(PCD), 2002 WL 32500922, at *7 (D. Conn. Sept. 4, 2002); <u>Vill. of Thompsonville v. Fed. Ins. Co.</u>, 592 N.W.2d 760, 763 (Mich. App. 1999). |

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 193**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Reinsurance – No Follow the Fortunes**</u>

To recover from Trustmark for breach of contract, US Life has the burden to prove that it was entitled to reimbursement under the agreement and Trustmark failed to reimburse US Life.

If you find that the contract proved by US Life did not contain a follow the fortunes term, US Life must prove all the following elements by a preponderance of the evidence to prove that it is entitled to reimbursement:

1. That US Life was actually liable for the losses paid in connection with the underlying treaties;

2. That US Life settled or otherwise resolved the claims on the underlying treaties in good faith;

3. That the losses in connection with the underlying treaties fall within the scope of the reinsurance agreement; .

4. That US Life billed Trustmark for certain amounts paid in connection with the losses; and

5. That Trustmark refused to reimburse US Life for the losses.

If you find that US Life has failed to prove any element by a preponderance of the evidence, then your verdict for these claims must be in favor of Trustmark.

| | |
|---|---|
| **Source/Authority:** | <u>Yale University v. CIGNA Ins. Co.</u>, 224 F. Supp. 2d 402, 411 (D. Conn. 2002) ("As a general matter, the existence of coverage is an essential element of the insured's case and the insured has the burden of proving the loss falls within the terms of the policy"); <u>Stonewall Ins. Co. v. Argonaut Ins. Co.</u>, 75 F. Supp. 2d 893, 895 (N.D. Ill. 1999). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 194**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**<u>US Life's Counterclaim:  Reinsurance – Follow the Fortunes</u>**

If you find that US Life and Trustmark entered into a contract that contains a "follow the fortunes" provision, you must determine whether US Life is entitled to reimbursement from Trustmark under the contract.

US Life is only entitled to reimbursement from Trustmark if US Life proves the following by a preponderance of the evidence:

1.     That US Life paid for losses in connection with the underlying treaties;

2.     That the losses reasonably fell within the scope of the underlying treaties;

3.     That US Life settled or otherwise resolved the claims on the underlying treaties in good faith;

4.     That the losses in connection with the underlying treaties fell within the scope of the reinsurance agreement;

5.     That US Life billed Trustmark for certain amounts paid in connection with the losses; and

6.     That Trustmark refused to reimburse US Life for the losses.

If US Life proves all of the above elements by a preponderance of the evidence, then US Life is entitled to reimbursement from Trustmark under the Pooling Arrangement and you must consider Trustmark's affirmative defenses.  However, your verdict must be in favor of Trustmark if the evidence establishes any of the following:

1.     That the losses clearly fell outside the scope of the underlying treaties;

2.     That the losses fell outside the scope of the Pooling Arrangement;

3.     That US Life acted in a grossly negligent or reckless manner; or

4.     That US Life failed to conduct a good faith, reasonable, businesslike investigation into whether the underlying treaties provided coverage for the losses.

**Sources/Authority:**          <u>In re Liquidation of Inter-Am. Ins. Co. of Ill.</u>, 329 Ill. App. 3d 606, 617, 768 N.E.2d 182, 192 (Ill. App. Ct. 2002) (reinsured has

burden to prove "offer and acceptance, consideration, definite and certain terms of the contract, [reinsured's] performance of all required contractual conditions, [reinsurer's] breach of the terms of the contract, and damages resulting from the breach"); <u>Reedy Indus., Inc. v. Hartford Ins. Co. of Ill.</u>, 306 Ill. App. 989, 715 N.E.2d 728 (Ill. App. Ct. 1999) (insured has burden to prove "that its claim falls within the terms of the policy"); <u>Mich. Twp. Participating Plan v. Fed. Ins. Co.</u>, 223 Mich. App. 422, 432, 592 N.W.2d 760, 765 (Mich. Ct. App. 1999) (reinsured carries the "burden of showing that it was entitled to reimbursement in the amount granted"); <u>Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.</u>, 979 F.2d 268, 280 (2d Cir. 1992) (follow the fortunes doctrine only requires reinsurers to indemnify reinsureds for payments that reasonably fall within the scope of the underlying policy; reinsurers are not obligated to indemnify for payments clearly outside the scope of the underlying policy or beyond the scope of the reinsuring agreement); <u>Bellefonte Reins. Co. v. Aetna Cas. & Surety Co.</u>, 903 F.2d 910, 914 (2d Cir. 1990) ("reinsurers are liable only to the extent of the risk they agreed to reinsure.  They cannot be held liable for the insurer's action in excess of the agreement"); Plaintiff's First Amended Complaint, Paragraph 71 (Pooling Arrangement only contemplates claims that are "settled or otherwise resolved in good faith…."); <u>Unigard Sec. Ins. Co. v. North River Ins. Co.</u>, 4 F.3d 1049, 1069 (2d Cir. 1993) (bad faith contemplates gross negligence or recklessness); <u>Suter v. Gen. Accident Ins. Co. of Am.</u>, No. 01-2686 (WGB), 2006 U.S. Dist. LEXIS 48209, at *74 (D.N.J. July 14, 2006) (reinsured is required to make "a good faith and a reasonable, businesslike investigation").

**Given:**                              _____
**Given as Modified:**         _____
**Rejected:**                         _____
**Withdrawn:**                     _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 195**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Affirmative Defenses to Contract Enforcement**

The law recognizes that sometimes, even though US Life may have met its burden of proving that a contract exists, facts or circumstances may exist which would excuse Trustmark from being liable to US Life.  These facts or circumstances are called affirmative defenses.

If this lawsuit, Trustmark has raised and has the burden to prove the following affirmative defenses:

1. Breach of partnership duty;
2. Material breach of contract;
3. Material breach of the implied duty of utmost good faith and fair dealing;
4. Estoppel; and
5. Waiver.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.12 (2006 ed.) (modified).
**Given:**      _____
**Given as Modified:**      _____
**Rejected:**      _____
**Withdrawn:**      _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 196**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Affirmative Defenses – Breach of Partnership Duty**

Trustmark claims that it is relieved from liability to US Life because US Life breached its partnership duties by taking (and failing to take) various actions in connection with the Centre Re settlement and the Superior National Treaty.  Trustmark claims that US Life failed to fulfill its obligation to oversee the placement of retrocessional coverage for the Superior National Treaty and unilaterally negotiated and settled with Centre Re, to the exclusion of Trustmark and without Trustmark's consent.  In particular, Trustmark claims that US Life:

|   |   |
|---|---|
| a. | Misrepresented to Trustmark and others that it had obtained 75% reinsurance for the Superior National Treaty and that 50% had been or would be ceded to the Variable Quota Share ("VQS") Treaty; |
| b. | Improperly accepted and failed to cancel the Superior National Treaty before it had obtained the retrocessional cover and verified the retrocessional placements; |
| c. | Failed to conduct an investigation to determine whether the Superior National risk could be ceded to the VQS Treaty; |
| d. | Ignored legal advice from its own counsel recommending an endorsement executed by the VQS and failed to share this legal advice, or the fact that documentation was incomplete, with Trustmark; |
| e. | Unilaterally, without Trustmark's consent, elected not to cede the Superior National Treaty to the VQS; |
| f. | Failed to obtain the promised reinsurance for the Superior National Treaty and refused offers by the VQS to accept some share for the Superior National Treaty; |
| g. | Unilaterally conducted settlement negotiations and made settlement offers and agreements without the consent of Trustmark; and |
| h. | Excluded Trustmark from settlement negotiations and failed to provide Trustmark information that would enable it to evaluate any settlement offer or agreement. |

US Life denies that it acted wrongfully.

This affirmative defense requires that Trustmark prove by a preponderance of the evidence that a partnership relationship existed between Trustmark and US Life.

If you find that Trustmark has proved that the partnership relationship existed, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

If you find that US Life has failed to meet its burden of proof, then your verdict on US Life's Counterclaim must be in favor of Trustmark.

**Source/Authority:**        Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); Bakalis v. Bressler, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); Cronin v. McCarthy, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); Worner Agency, Inc. v. Doyle, 121 Ill. App. 3d 219, 222-23, 459 N.E.2d 633, 635-36 (Ill. App. Ct. 1984); Kirkland & Ellis v. CMI Corp., No. 95 C 7457, 1999 WL 92257, at *9-10 (N.D. Ill. Feb. 11, 1999); Smith v. Howery, 217 Mont. 23, 28, 701 P.2d 1381, 1384 (Mont. 1985).

**Given:**        _____

**Given as Modified:**        _____

**Rejected:**        _____

**Withdrawn:**        _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 197**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Affirmative Defense – Breach of Partnership Duties**</u>

Trustmark has the burden of proving by a preponderance of the evidence that a partnership existed between Trustmark and US Life.

The association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership.

The substance, rather than the form, of a business relationship determines whether the relationship qualifies as a partnership.  The parties' agreement to a contract or another type of business relationship does not preclude the possibility that the parties also were partners in a partnership.

In considering whether a partnership exists, you may consider all of the facts and circumstances surrounding the formation of the relationship.  You also may consider the parties' admissions. The formality of a written partnership agreement is not necessary to prove the existence of a partnership.  It is also not necessary that the persons intend to form a partnership or intend to be governed by the laws of the Uniform Partnership Act (UPA).

| | |
|---|---|
| **Source/Authority:** | Ruling on the Parties' Cross Motions for Summary Judgment (Covello, J.)  at 18-19; 805 Ill. Comp. Stat. § 205/6 (West 2007); <u>Thomson v. Hiter</u>, 356 Ill. App. 3d 574, 582, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005); <u>Koestner v. Wease & Koestner Jewelers, Inc.</u>, 63 Ill. App. 3d 1047, 1050-51, 381 N.E.2d 11, 14 (Ill. App. Ct. Dist. 1978) (holding that parties who intended to run business on a 50/50 basis should be treated as partners or joint adventurers notwithstanding their decision to incorporate); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 81, 115 N.E.2d 323, 328 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994). |
| **Given:** | _____ |
| **Given as Modified:** | _____ |
| **Rejected:** | _____ |
| **Withdrawn:** | _____ |

**DEFENDANT'S PROPOSED INSTRUCTION NO. 198**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim: Affirmative Defense – Breach of Partnership Duties**</u>

If you find that Trustmark has proved the existence of a partnership, the burden of proof then shifts to US Life to prove by clear, convincing, unequivocal and unmistakable evidence that US Life acted in a manner consistent with the partnership duties owed to Trustmark.

Partners automatically owe fiduciary duties to one another that extend to all matters relating to the partnership business.  Partners may not alter the fiduciary character of their relationship by agreement.  Fiduciary duties between partners include the duty of good faith and the duty of loyalty.

The duty of good faith requires partners to act in the best interests of the partnership and exercise due care in managing the partnership business.  A partner is liable to the partnership for acts which are in willful disregard of this duty or grossly negligent.

What constitutes gross negligence is to be determined from the totality of the circumstances. Gross negligence does not require intentional wrongdoing.  You may consider all of US Life's individual acts and the circumstances surrounding those acts as a whole in determining whether US Life acted with gross negligence.

Partners also have a fiduciary duty of loyalty toward one another.  This duty prohibits all forms of secret dealings and self-preference in any matter related to the partnership.  Each partner must place the interests of the partnership ahead of his own interests in carrying out partnership business.

The duty of loyalty additionally requires partners to make a full and frank disclosure of all material facts relating to the partnership business.  A fact is material if there is a substantial likelihood that a reasonable partner would consider it important in making decisions regarding the partnership business.  The duty to disclose material information is affirmative, requiring disclosure even in the absence of an explicit demand.

**Source/Authority:**     <u>Neade v. Portes</u>, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502 (Ill. 2000); <u>Bakalis v. Bressler</u>, 1 Ill. 2d 72, 79-81, 115 N.E.2d 323, 327-28 (Ill. 1953); <u>Cronin v. McCarthy</u>, 264 Ill. App. 3d 514, 524, 637 N.E.2d 668, 675 (Ill. App. Ct. 1994); <u>Georgou v. Fritzhall</u>, No. 93 C 997, 1995 WL 692019, at *2-4 (N.D. Ill. Nov. 20, 1995); <u>ARTRA Group, Inc. v. Salomon Bros. Holding Co.</u>, 288 Ill. App. 3d 467, 470-71, 680 N.E.2d 769, 772 (Ill. App. Ct. 1997); <u>Winston & Strawn v. Nosal</u>, 279 Ill. App. 3d 231, 239-40, 664 N.E.2d 239, 244-45 (Ill. App. Ct. 1996); <u>Peskin v. Deutsch</u>, 134 Ill. App. 3d 48, 53, 479 N.E.2d 1034, 1038 (Ill. App. Ct. 1985); <u>Saballus v. Timke</u>, 122 Ill. App. 3d 109, 117-18, 460 N.E.2d 755 760-61 (Ill. App. Ct.

1983); City of Mt. Carmel v. Guthridge, 52 Ill. App. 632, 1893 WL 2490, at *1, 3-4 (Ill. App. Ct. 1893); Zokoych v. Spalding, 36 Ill. App. 3d 654, 669-70, 344 N.E.2d 805, 817-18 (Ill. App. Ct.. 1976); see also Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1098 (8th Cir. 2005); Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218-19, 635 A.2d 798, 804-05 (Conn. 1994) (holding that partners have a "fiduciary duty of rendering true accounts and full information about anything which affects the partnership.") (citation omitted); Spector v. Konover, 57 Conn. App. 121, 128, 747 A.2d 39, 44 (Conn. App. 2000) (holding that misuse of partnership property is a clear case of self-dealing and a violation of partnership fiduciary duties); see also 805 ILCS § 206/404(c) (West 2007) (A partner's duty of care to the partnership and to other partners is to refrain "from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law."); Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.06: 6:91-96; 102-04 (2007).

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

DEFENDANT'S PROPOSED INSTRUCTION NO. 199

INSTRUCTIONS AT CLOSE OF EVIDENCE

<u>US Life's Counterclaim: Affirmative Defense – Breach of Partnership Duties</u>

In the absence of a clear agreement to the contrary, each partner also has equal rights in the management and conduct of the partnership business.

In the event of a disagreement as to ordinary matters connected with the partnership business, any difference in opinion may be decided by a majority of the partners.  Where there are only two partners, however, agreement by both partners is required to take any action.  In the absence of an agreement in a two-person partnership, neither partner has the right to impose his will or decision concerning the operation of the partnership business upon the other.  The fact that a transaction may benefit the partnership does not mandate acceptance by all the partners.

Even in the absence of a disagreement, before a partner may take an action outside the ordinary course of the partnership business, the partner must obtain the consent of a majority of the partners.

If a partner takes action within the partnership business over the objection of its co-partner without first obtaining consent from a majority of partners, or takes an action outside the ordinary scope of partnership business without first obtaining the consent of a majority of partners, that partner is liable for all damages resulting from that conduct.


**Source/Authority:**   805 Ill. Comp. Stat. § 205/18(e), (h) (West 2007); 805 Ill. Comp. Stat. §205/9 (2) (West 2007); see also 805 Ill. Comp. Stat § 206/401 (j) ("An act outside the ordinary course of business of a partnership . . . may be undertaken only with the consent of all of the partners.") (West 2007); <u>Northmon Inv. Co. v. Milford Plaza Assocs.</u>, 284 A.D.2d 250, 251 (N.Y. App. Div. 2001) (holding that partner lacked authority to enter into disputed transaction involving partnership assets); <u>Covalt v. High</u>, 100 N.M. 700, 703, 675 P.2d 999, 1002 (N.M. Ct. App. 1983) (applying Illinois version of the UPA); <u>Summers v. Dooley</u>, 98 Idaho 87, 89, 481 P.2d 318, 320 (Idaho 1971) (partner not entitled to reimbursement from co-partner for costs incurred over the objection of co-partner); Alan R. Bromberg & Larry E. Ribstein, <u>Bromberg & Ribstein on Partnership</u> § 6.03(c)(1) (2007); 805 Ill. Comp. Stat. § 205/9(2)-(3) (West 2007); <u>Bras v. Bras</u>, 463 F.2d 413, 416 (10th Cir. 1972) (holding that a partner could not recover from two co-partners for expenses unilaterally incurred to improve property after dissolution where neither co-partner consented to improvements); <u>Peterson v. Superior Bank FSB</u>, 242 Ill. App. 3d 1090, 1093, 611 N.E.2d

1139, 1141 (Ill. App. Ct. 1993) (noting that co-adventurer has no authority to bind a joint venture to an arbitration award if it acted without the authority of its co-adventurers); <u>Hagshenas v. Gaylord</u>, 199 Ill. App. 3d 60, 73-78, 557 N.E.2d 316, 325-28 (Ill. App. Ct. 1990) (partner liable to co-partner for damages in the form of lost profits stemming from partner's breach of fiduciary duty)

**Given:** _____

**Given as Modified:** _____

**Rejected:** _____

**Withdrawn:** _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 200**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

<u>**US Life's Counterclaim:  Affirmative Defenses – Breach of Contract**</u>

The second affirmative defense asserted by Trustmark is material breach of contract.  Trustmark claims that it is relieved from liability to US Life because US Life breached its contractual obligations duties by taking (and failing to take) various actions in connection with the Centre Re settlement and the Superior National Treaty.

Trustmark contends that US Life committed the following material breaches of contract:

1.    US Life failed to ensure that 75% retrocessional coverage was placed for the Superior National Treaty.

2.    US Life unilaterally negotiated with and terminated the retrocessional protection of Overseas Partners Re (OP Re) without advance notice or consent from Trustmark.

3.    US Life unilaterally elected not to cede the Superior National risk to the Variable Quota Share retrocessional treaty without advance notice or consent from Trustmark.

4.    US Life unilaterally usurped claims handling authority from WEB.

5.    US Life unilaterally negotiated and entered a settlement agreement with Centre Re, to the exclusion of Trustmark and without its consent.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the contract and that such breach was material.

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.    Whether the breach would defeat the basic purpose of the contract;

2.    Whether the breach would cause disproportionate prejudice to Trustmark;

3.    Whether custom considers such a breach to be material; and

4.    Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life materially breached any of its obligations under the contract, then your verdict must be in favor of Trustmark.

**Source/Authority:**    Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct.1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract.").

**Given:**               _____
**Given as Modified:**   _____
**Rejected:**            _____
**Withdrawn:**           _____

DEFENDANT'S PROPOSED INSTRUCTION NO. 201

INSTRUCTIONS AT CLOSE OF EVIDENCE

**US Life's Counterclaim:  Affirmative Defenses – Breach of Implied Duty of Utmost Good Faith**

Trustmark also contends that it is relieved from liability to US Life because US Life materially breached its contractual duty of utmost good faith and fair dealing.

Every reinsurance contract, including the contract alleged by US Life, contains an implied duty of utmost good faith and fair dealing.  The duty of utmost good faith and fair dealing obligates the parties to deal fairly, honestly, and candidly with one another.  This duty requires full and timely disclosure of all facts material to the reinsurance relationship.

The duty of utmost good faith and fair dealing applies in the context of claims administration and handling, including settlement and the payment of premiums.

To find a breach of the duty of utmost good faith and fair dealing, you need not find that the failure to disclose material facts was fraudulent or even intentional.  An innocent failure to disclose a material fact is sufficient to constitute a breach of the duty.

Trustmark contends that it is relieved from liability to US Life because US Life breached its contractual duty of utmost good faith and fair dealing by taking (and failing to take) various actions in connection with the Centre Re settlement and the Superior National Treaty, including:

1.  US Life misrepresented to Trustmark and others that 75% reinsurance had been obtained for the Superior National Treaty and that 50% of the risk had been or would be ceded to the Variable Quota Share ("VQS") Treaty;

2.  US Life failed to share legal advice, or the fact that the VQS documentation was incomplete, with Trustmark;

3.  US Life excluded Trustmark from settlement negotiations related to the Superior National Treaty, including the negotiations with Centre Re, despite repeated requests to participate;

4.  US Life made settlement offers and agreements, including the agreement with Centre Re, without Trustmark's knowledge or consent; and

5.  US Life failed to provide Trustmark information that would enable it to evaluate settlement offers or agreements.

To prevail on its affirmative defense, Trustmark has the burden to prove that US Life breached the implied duty of utmost good faith and fair dealing and that such breach was material.

264

Whether a breach is material must be measured in light of what the parties intended at the time they entered into their contract.  You may consider such factors as:

1.      Whether the breach would defeat the basic purpose of the contract;

2.      Whether the breach would cause disproportionate prejudice to Trustmark;

3.      Whether custom considers such a breach to be material; and

4.      Whether excusing the breach would allow US Life to obtain an unreasonable and unfair advantage.

A material failure by US Life to perform any obligation under the alleged contract discharges Trustmark from its obligations.  If you find that US Life committed a material breach of its duty of utmost good faith and fair dealing, then your verdict must be in favor of Trustmark.

| | |
|---|---|
| **Source/Authority:** | Robert E. Kehoe, Jr., Jury Instructions for Contract Cases, § 6.02 (1995) (modified); Martindell v. Lake Shore Nat'l Bank, 15 Ill. 2d 272, 286, 154 N.E.2d 683, 690 (Ill. 1958) ("Every contract implies good faith and fair dealing between the parties to it"); Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 75, 866 N.E.2d 85, 98 (Ill. 2007); Heritage Bank & Trust Co. v. Abnor, 906 F.2d 292, 301 (7th Cir. 1990) (listing factors for a material breach); Fireman's Fund v. Mortg. Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1992); Danigegelis v. Pivan, 159 Ill. App. 3d 1097, 1103, 513 N.E.2d 92, 96 (Ill. App. Ct. 1987) ("[A] party to a contract who commits the first breach of its terms cannot maintain an action for a subsequent breach by the other party.") (citing Kosuga v. Kelly, 257 F.2d 48, 56 (7th Cir. 1958)); Goldstein v. Lustig, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 168 (Ill. App. Ct. 1987) ("A party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract."); In the Matter of the Liquidation of Union Indem. Ins. Co. v. N.Y., 89 N.Y.2d 94, 106-07 (2d Cir. 1992); Unigard Sec. Ins. Co. v. North River Ins. Co., 4 F.3d 1049, 1069 (2d Cir. 1993); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d Cir. 1992). |

**Given:**                         _____

**Given as Modified:**        _____

**Rejected:**                      _____

**Withdrawn:**                  _____

## DEFENDANT'S PROPOSED INSTRUCTION NO. 202

## INSTRUCTIONS AT CLOSE OF EVIDENCE

### US Life's Counterclaim:  Affirmative Defenses – Estoppel

If US Life led Trustmark to reasonably believe that compliance with a particular obligation would not be required, US Life cannot now enforce that obligation.  This is known as "estoppel."

Trustmark claims that US Life is barred by estoppel in the following respects.  Trustmark claims that US Life should be estopped from asserting that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty because:

1.      US Life represented that 75% retrocessional coverage had been placed, 50% with the VQS and 25% with Overseas Partners Re (OP Re); and

2.      US Life represented that Trustmark's share of the Superior National Treaty was 12 ½ %.

US Life denies this.

In order to prove a defense based on estoppel, Trustmark must show the following facts by clear and convincing evidence:

1.      US Life misrepresented or concealed material facts;

2.      US Life knew these misrepresentations were untrue at the time they were made;

3.      Trustmark did not know the representations were untrue at the time they were made and acted upon;

4.      US Life intended or reasonably expected that Trustmark would act upon the representations;

5.      Trustmark reasonably relied on the representations in good faith to its detriment;

6.      Trustmark would be prejudiced by its reliance on the representations if US Life is permitted to deny the truth thereof.

If you find each of these propositions to be proved, US Life should be barred from claiming that Trustmark bears any more than 12 ½ % of the risk on the Superior National Treaty.

**Source/Authority:**    Geddes v. Mill Creek County Club, Inc., 196 Ill. 2d 302, 313-14, 751 N.E.2d 1150, 1157 (Ill. 2001) (citing Vaughn v. Speaker, 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 890 (Ill. 1988)); *see* Kehoe, Robert E, Jr., Jury Instructions for Contract Cases § 8.14 (modified).

**Given:**    _____

**Given as Modified:**    _____

**Rejected:**    _____

**Withdrawn:**    _____

**DEFENDANT'S PROPOSED INSTRUCTION NO. 203**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Affirmative Defenses – Waiver**

Trustmark claims that it is relieved from liability to US Life because US Life waived the right to demand payment for the Centre Settlement because US Life signed an agreement releasing its right to do so.

US Life denies this.

In order to prove a defense based on waiver, the Trustmark must show that US Life intended to relinquish a known right under the alleged contract.  This may be shown by US Life's statements or by US Life's conduct (including delay or inaction), provided that the conduct clearly and unambiguously indicates that US Life intended to relinquish its rights.  A waiver may be express or implied.

**Source/Authority:**          Kehoe, Robert E., Jr., Jury Instructions for Contract Cases §8.13 (1995) (modified); Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 620 N.E.2d 1073 (Ill. 1993).

**Given:**                    _____
**Given as Modified:**        _____
**Rejected:**                 _____
**Withdrawn:**                _____

268

**DEFENDANT'S PROPOSED INSTRUCTION NO. 204**

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

**US Life's Counterclaim:  Damages**

If you find in favor of US Life, you must then decide how much money would fairly compensate US Life for Trustmark's breach of contract.  US Life has the burden of proving each element of damages claimed and that they occurred as a direct and natural result of Trustmark's breach.  In calculating US Life's damages, you should determine that sum of money that will put US Life in as good a position as it would have been in if both US Life and Trustmark had performed all of their obligations under the contract.

US Life seeks direct damages for Trustmark's failure to pay half of the settlement between US Life and Centre Re with respect to the Superior National Treaty.

"Direct damages" are the amount of gain US Life would have received if both the parties had fully performed the contract.  You calculate the amount of this gain by determining the value of the contract benefits US Life did not receive because of Trustmark's breach and then subtracting from that value of whatever expenses US Life saved because of the breach.

**Source/Authority:**      Illinois Pattern Jury Instructions § 700.13 (2006 ed.) (modified).
**Given:**                      _____
**Given as Modified:**      _____
**Rejected:**                   _____
**Withdrawn:**               _____

269

Dated:  October 1, 2007          Respectfully submitted,

TRUSTMARK INSURANCE COMPANY


By:   /s/ Howard K. Levine

      Howard K. Levine
      Federal Bar No. ct10555


Joel T. Pelz (ct 25800)         Anthony M. Fitzgerald (ct 04167)
JENNER & BLOCK LLP       Howard K. Levine (ct 10555)
330 North Wabash Avenue     David S. Hardy (ct 20904)
Chicago, IL  60611-7603      CARMODY & TORRANCE LLP
Phone:  (312) 932-2609       195 Church Street, 18th Floor
Facsimile:  (312) 840-7609    P.O. Box 1950
                       New Haven, CT  06509
                       Phone:  (203) 777-5501
                       Facsimile:  (203) 784-3199
                       Email:  afitzgerald@carmodylaw.com
                                hlevine@carmodylaw.com
                                dhardy@carmodylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2007, a copy of the foregoing **Proposed Jury Instructions** were filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system  [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

        /s/ Howard K. Levine
      Howard K. Levine
