**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES LIFE INSURANCE COMPANY OF THE CITY OF NEW YORK AND AMERICAN GENERAL LIFE INSURANCE COMPANY (AS SUCCESSOR IN INTEREST TO ALL AMERICAN LIFE INSURANCE COMPANY), | |
| Plaintiffs and Counter-Defendants, | No. 3:03 CV2114 (AVC)(LEAD) |
| -against- | October 1, 2007 |
| TRUSTMARK INSURANCE COMPANY, | |
| Defendant and Counter-Plaintiff. | |

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

# <u>OUTLINE</u>

**<u>AG/USL'S PROPOSED OPENING INSTRUCTIONS</u>**

1.  INTRODUCTION
2.  THE PARTIES
3.  THE ORDER OF THE TRIAL
4.  REINSURANCE TERMINOLOGY
5.  THE PARTIES' CONTENTIONS
6.  THE NATURE OF EVIDENCE
7.  CAUTIONARY INSTRUCTION
8.  BURDEN OF PROOF GENERALLY
9.  PREPONDERANCE OF THE EVIDENCE
10. NO DELIBERATIONS UNTIL COMPLETION OF EVIDENCE AND CHARGE
11. NOTE TAKING
12. LIMITATIONS ON CONTACT WITH JURORS
13. COMMUNICATIONS WITH THE COURT

**AG/USL'S PROPOSED CLOSING INSTRUCTIONS**

1. ROLE OF JUDGE/ROLE OF THE JURY
2. DUTY TO FOLLOW THE LAW
3. DUTY TO DECIDE ON THE EVIDENCE
4. DIRECT AND CIRCUMSTANTIAL EVIDENCE
5. STIPULATIONS/UNDISPUTED FACTS
6. JUDICIAL NOTICE
7. LEARNED TREATISES
8. USE OF DEPOSITIONS
9. LIMITING INSTRUCTIONS ON EVIDENCE
10. STRICKEN EVIDENCE
11. RULINGS ON OBJECTIONS
12. PREPONDERANCE OF THE EVIDENCE
13. CREDIBILITY OF WITNESSES
14. FALSE TESTIMONY
15. EXPERT WITNESSES
16. USE OF NOTES DURING DELIBERATIONS
17. SYMPATHY/PREJUDICE
18. BREACH OF CONTRACT
19. FORMATION OF A CONTRACT
20. THE TERMS OF THE CONTRACT
21. CONSIDERATION OF SURROUNDING CIRCUMSTANCES AND COURSE OF CONDUCT
22. REINSURANCE CUSTOM AND PRACTICE
23. THE PARTIES' AGREEMENT TO BE EACH OTHER'S RETROCESSIONAIRE
24. THE UNIFORM PARTNERSHIP ACT
25. THE UNIFORM PARTNERSHIP ACT IS DEFAULT ONLY
26. FOLLOW THE FORTUNES
27. BURDENS OF PROOF UNDER FOLLOW THE FORTUNES
28. RETROCESSIONAIRE'S OBLIGATION TO PAY JUDGMENTS AND ARBITRATION AWARDS
29. RETROCESSIONAIRE'S OBLIGATION TO PAY CLAIMS AND SETTLEMENTS
30. JOINT VENTURE RULES
31. GOOD FAITH OBLIGATIONS TO POLICYHOLDER
32. REINSURANCE ACCOUNTING
33. SUBSTANTIAL PERFORMANCE/MATERIAL BREACH
34. MOTIVE
35. DAMAGES
36. RECOUPMENT/SETOFF
37. DUTY TO DELIBERATE
38. RESTRICTIONS ON DELIBERATIONS
39. PROCEDURES FOR REPORTING VERDICT
40. PROCESS FOR JURY'S DELIBERATIONS
41. DISCHARGE JURY

**AG/USL's Proposed Opening Instructions**

1. **<u>INTRODUCTION</u>**

Ladies and Gentlemen:  I shall take a few minutes now to give you some

initial instructions about this case and about your duties as jurors.  At the end of the

trial, I shall give you further instructions.  I may also give you instructions during

the trial.  Unless I specifically tell you otherwise – all such instructions, both those

I give you now and those I give you later – are binding on you and must be

followed even if you do not agree with them.

This is a civil dispute between insurance companies arising out of their

business relationship involving reinsurance.  As I will describe in more detail

shortly, "reinsurance" is a term that describes the situation where an insurer

assumes all or a portion of the risk under a policy of insurance issued by another

insurer.[1]  The plaintiffs are United States Life Insurance Company of the City of

New York and American General Life Insurance Company (as successor in interest

to All American Life Insurance Company).  I will refer to the plaintiffs

individually as US Life, American General and All American, and collectively as

AG/USL.

---

[1]    *See generally Colonial American Life Ins. Co. v. Commissioner*, 491 U.S. 244 (1989); *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 4 F.3d 1049, 1053 (2d Cir. 1993); *Delta Holdings v. National Distillers & Chem. Corp.*, 945 F.2d 1226, 1228-29 (2d. Cir. 1991), *cert. denied*, 503 U.S. 985 (1992); *Curiale v. Ardra Ins. Co.*, 88 N.Y.2d 268, 271 n.1, 667 N.E.2d 313, 315 n.1, 644 N.Y.S.2d 663, 665 n.1 (1996); *In re Midland Ins. Co.*, 79 N.Y.2d 253, 258, 590 N.E.2d 1186, 1188, 582 N.Y.S.2d 58, 60 (1992); *Sumitomo Marine & Fire Ins. Co. v. Cologne Reins. Co.*, 75 N.Y.2d 295, 301, 552 N.E.2d 139, 142, 552 N.Y.S.2d 891, 894 (1990); *Bluewater Ins. Ltd. v. Balzano*, 823 P.2d 1365, 1367 (Colo. 1992).

The defendant is Trustmark Insurance Company.  Trustmark has also asserted "counterclaims" against AG/USL, so you may sometimes hear Trustmark referred to as the "counterclaimant" and AG/USL as the "counter-defendant."  All of the parties are in the business of providing life and health insurance, and related services, to individuals and businesses located throughout the United States.

Beginning in January 1997, AG/USL and Trustmark each authorized an entity known as WEB Management LLC, which is often referred to as WEB for short, to underwrite and administer a book of reinsurance business covering personal accident and health risks, including certain parts of workers' compensation policies.  Put more simply, AG/USL and Trustmark each authorized WEB to sell reinsurance on their behalf to various third parties.  Over the course of two years, WEB sold (or "bound") approximately 130 reinsurance risks (or "programs") on reinsurance policies (or "paper") issued in the name of Trustmark and AG/USL.  I recognize that some of this reinsurance terminology may be unfamiliar to you, and I will provide additional guidance shortly.

The business bound by WEB (or the "WEB facility") has proven to be highly unprofitable.  Many of the risks bound by WEB have incurred substantial losses.  The largest risk that WEB bound, known as the Superior National Treaty, has resulted in hundreds of millions of dollars of losses.  This trial concerns responsibility for WEB facility losses as between AG/USL and Trustmark.

2.      **THE PARTIES**

Now that you are generally familiar with the subject matter of this case, I will introduce all of the parties to you along with their respective counsel.  This lawsuit was brought by plaintiffs American General and US Life.  A bit of corporate history may be helpful here.  All American Life was the original party to the WEB facility arrangement, and US Life was All American's parent corporation.  In 1997, American General acquired US Life and All American, eventually merging All American into itself while leaving US Life as a subsidiary corporation.  In 2001, American International Group, Inc., or "AIG" for short, acquired American General (and thus US Life and All American).  AIG is not a party to this lawsuit.

*[Introduce counsel for AG/USL]*

The defendant in this case is Trustmark, which is based in Illinois and, as noted, is in the business of providing health and life insurance and benefits administration services to employer groups.

*[Introduce counsel for Trustmark]*

You will also hear and see a lot of evidence concerning several entities which are not parties to this lawsuit, but whose employees and documents are relevant to the issues that you will be required to decide.  These non-party entities include:

- WEB, which served as the managing general agent for AG/USL and Trustmark in connection with the reinsurance business that is the subject of this lawsuit.  The three principals who founded WEB are Steven Wright, Robin Ekwall and Charles Bastan.  The first initials of their last names – W, E and B – spell the name WEB.

- Collins Associates, which was the brokerage firm that helped the WEB principals form their agency and assisted WEB in soliciting AG/USL's and Trustmark's participation in the WEB facility.  The individual at Collins Associates principally involved was James Grant.

- Superior National Insurance Company and a group of related and/or affiliated insurers, which are the cedents under a risk issued on AG/USL paper known as the "Superior National Treaty," the largest risk bound under the WEB facility.

3.      **THE ORDER OF THE TRIAL**

It is useful for you to know what the various parts of the trial are so that you may be aware throughout the trial of what stage of the proceedings is in progress and what comes next.  The trial starts with opening statements by the lawyers. They will state the nature of their factual and legal claims.  Opening statements are not proof or evidence; they are merely statements of the parties' claims, so that you will be aware as you hear the evidence of what legal claims each party is trying to establish through the evidence.

After the opening statements, AG/USL will present its evidence by calling witnesses and showing you documents.  Trustmark's lawyers may cross examine each witness.  After AG/USL has presented all of its witnesses, Trustmark will have an opportunity to present witnesses and documents in opposition to AG/USL's claims and in support of its own counterclaims.  AG/USL's lawyers may cross examine any witnesses that Trustmark presents.

Once all of the witnesses and evidence have been presented, the lawyers will make closing arguments to you.  These closing arguments, like the opening statements, are not evidence.

The final step is that I will tell you what the legal principles are that apply to the claims that have been made and the evidence that has been presented.  That instruction is known as the charge to the jury.  At the end of the charge I will

explain the process you should use for your deliberations and for delivering your

verdict.

[Order of the Trial derived from Connecticut Pattern Jury Instructions 1.2]
[*See also* Kevin F. O'Malley, et al., 3 Federal Jury Practice and Instruction, §
101.02 (5th Ed. 2000)]

4.    **REINSURANCE TERMINOLOGY**

Before proceeding any further, I will briefly explain some of the insurance and reinsurance terminology that the lawyers and witness will be using throughout this case.  As the name implies, reinsurance is insurance for insurance companies. Through reinsurance, an insurer (known as the "ceding company" or "cedent") transfers (or "cedes") to another insurer (known as the "reinsurer") all or part of liabilities that the insurer assumed under policies that the insurer issued.  In exchange for being relieved of these liabilities, the cedent pays a fee or provides a share of the policy premiums to the reinsurer.  The reinsurer may agree to reinsure a specific policy of insurance issued by the cedent to a particular policyholder (which is known as "facultative reinsurance"), or it may agree to reinsure a particular line of insurance business (which is known as "treaty reinsurance"). Reinsurers may themselves elect to secure reinsurance on risks they have assumed. A reinsurer of a reinsurer is known as a "retrocessionaire."[2]  Similarly, reinsurance on reinsurance is sometimes called retrocessional protection.

A "managing general agent" or "MGA" is an outside entity typically authorized by a reinsurer to receive reinsurance submissions, to negotiate and

---

[2]      1A Couch on Insurance § 9:3 (3rd Ed. 2007).

accept agreements in the reinsurer's name, to receive notices, and to handle claims submitted under the reinsurance it has issued.[3]

A reinsurance "facility" is a pool or group of reinsurers issuing reinsurance through an MGA.

"Quota share reinsurance" is a type of pro rata or proportional reinsurance in which a carrier covers a fixed percentage of loss on each policy written by the ceding company.  A "variable quota share" or "VQS" is a reinsurance treaty whereby the reinsured is bound to cede and the reinsurer is bound to accept a variable share, subject to a minimum and maximum percentage, of all risks falling within the scope of the treaty.[4]

"Workers' compensation carve-out" refers to that portion of workers' compensation insurance that can, under applicable state law, be underwritten by life and health insurance carriers such as AG/USL and Trustmark.

---

[3]     Graydon S. Staring, *Law of Reinsurance,* § 7:2 (2007).

[4]     *Id.* at § 2:2.

5.    **THE PARTIES' CONTENTIONS**

Now I will briefly explain to you the parties' contentions.  They parties agree that they intended and agreed to split 50/50 all profits and losses on all risks bound through the WEB facility by agreeing to reinsure each other through mutual reinsurance contracts.  Specifically, the parties intended and agreed that:

- where WEB underwrote a reinsurance contract on AG/USL paper, Trustmark agreed to reinsure AG/USL for 50% of the retained risk (net of any retrocessional coverage obtained by WEB);

- where WEB underwrote a reinsurance contract on Trustmark paper, AG/USL agreed to reinsure Trustmark for 50% of the retained risk (net of any retrocessional coverage obtained by WEB);

AG/USL further asserts that it has paid and will pay in good faith hundreds of millions of dollars in WEB facility losses (through claim payments, settlements and judgments).  AG/USL argues that Trustmark has breached its reinsurance agreement with AG/USL by failing to reimburse it for 50% of the net retained amount of WEB facility losses that AG/USL has paid.

Trustmark contends that it should not be required to pay 50% of the WEB facility losses that AG/USL has paid for several reasons.  First, Trustmark contends that the parties' partnership agreement did not address the management and control of WEB facility business and therefore the parties' rights and responsibilities are governed by the default rules of a statute known as the Uniform

Partnership Act.  Trustmark contends that in the absence of any agreement between the partners providing otherwise, the Uniform Partnership Act provides a default term that partners have an equal right in the management and control of partnership business.  Trustmark asserts that AG/USL breached this partnership duty by:  (i) failing to obtain Trustmark's consent to the payments for which AG/USL now seeks reimbursement; and (ii) failing to afford Trustmark a sufficient opportunity to participate equally with AG/USL in directing the various underlying arbitrations and litigations which have produced judgments against AG/USL which AG/USL has paid and for which AG/USL seeks reimbursement.  Trustmark advances this "partnership" argument both as a defense to AG/USL's claims and as an independent counterclaim.

AG/USL, for its part, denies that its relationship with Trustmark was a partnership or that the Uniform Partnership Act applies.  AG/USL further takes the position that, even if the Uniform Partnership Act did apply, the provision of that statute giving partners equal rights in the management of partnership business was superseded by an agreement between AG/USL and Trustmark to abide by an arrangement known as "follow the fortunes," pursuant to which Trustmark was bound to follow and respect AG/USL's good faith decisions on matters involving AG/USL paper and did not have an equal right to participate in such decisions, and

AG/USL was similarly bound to follow and respect Trustmark's good faith decisions on matters involving AG/USL paper.

In addition to defending against AG/USL's claims, Trustmark brings an affirmative counterclaim asserting that AG/USL is required to pay Trustmark for 50% of the net retained risk on a series of contracts that WEB wrote on Trustmark paper in 1999.  AG/USL terminated its participation in the WEB facility by a letter sent to WEB in September 1998 with an effective date of December 31, 1998 and WEB therefore had no authority to bind AG/USL on any risks through the WEB facility that were either bound or made effective after December 31, 1998.  Trustmark, for purposes of this counterclaim, asserts that the risks at issue were effective prior to December 1998 and that AG/USL is, therefore, required to reinsure them.

## 6.  **THE NATURE OF EVIDENCE**

You are to determine what the facts are by careful consideration of all the evidence presented and based solely upon the evidence, giving to each part of the evidence the weight you consider it deserves in reaching your ultimate conclusion. When I say evidence, I include the following:

- testimony by witnesses in court, including what you may observe in any demonstrations to be presented during their testimony;

- testimony by witnesses by way of the reading of transcripts or the showing of videotapes;

- exhibits received into evidence as full exhibits, including any pictures or documents that are full exhibits;

- facts that the parties have stipulated to; and

- facts that I have told you are to be taken as true by judicial notice.

The testimonial evidence includes both what is said on direct examination and what is said on cross examination, without regard to which party calls the witness.

There are a number of things that may be seen or heard during the trial which are not evidence and which you cannot rely on as evidence in deciding whether a party has proven a claim or a defense.  For example:

- the statements made by lawyers, including statements made both in their opening statements and in their closing arguments, are not evidence;

- a question is not evidence:  it is the answer, not the question or the assumption made in the question, that is evidence;

- the fact that a party has filed a claim or a defense in the court is not evidence that proves the claim or the defense is true;

- testimony or exhibits that are refused or stricken by me or that I tell you to disregard must not be relied upon as evidence in resolving the case;

- testimony or exhibits that I tell you are to be used only for a particular purpose are not evidence for any other issue; and

- exhibits marked for identification that are not received in evidence as full exhibits are not evidence.

Your duty is to decide the case based on what is admitted into evidence in this courtroom only, and not on any information about the issues that is not presented into evidence in this courtroom.

[Derived from Connecticut Pattern Instruction 1-22]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, §§ 101.40, 101.44]
[*See also* Leonard B. Sand, et al., 4 Modern Federal Jury Instructions, § 74.01]

7.     **CAUTIONARY INSTRUCTION**

You have taken an oath that governs your conduct from the start of this trial through the time that you render a verdict in this case.  That oath and the rules of court obligate you to do certain things.  I'll refer to these obligations as the rules of juror conduct, and I will remind you of these rules during the trial.  Here are the rules of juror conduct:

- decide the case based only on the evidence presented in court and on the law I give you;

- do not perform any investigation or research of any kind concerning any claim or issue in the case;

- if there is any publicity about the case or any issue involved in the case, do not expose yourself to it;

- do not discuss or make any remark about the case or anything about it to *anyone* until I tell you it's time to do so. "Anyone" includes your fellow jurors, the people you go home to, the people you see and converse with on days the case is not in progress, the lawyers, and all court staff;

- do not allow anyone to make any comment to you about the case or any issue involved in it;

- when you are deliberating at the end of the case, keep your discussions secret until you deliver your verdict;

- report any violations of these rules of juror conduct to me.

[Derived from Connecticut Pattern Instruction 1-1]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.11]
[*See also* Sand, 4 Modern Federal Jury Instructions, §§ 71.03, 71.04, 71.12]

## 8.    <u>BURDEN OF PROOF GENERALLY</u>

The party making a claim has the burden of proof with respect to that claim. Thus, AG/USL has the burden of proving each essential element of the causes of action upon which AG/USL relies.  I briefly summarized those causes of action with you when I discussed the parties' respective contentions, and I will do so again in greater detail at the close of the evidence.  Defendant Trustmark does not have to present evidence to disprove the essential elements of AG/USL's claims.

Trustmark, in addition to denying AG/USL's claims, has affirmatively asserted certain special defenses to the plaintiff's claims. AG/USL does not have the burden to disprove the allegations of Trustmark's special defenses.

Trustmark also has asserted counterclaims against AG/USL.  Trustmark has the burden of proving each essential element of the causes of action upon which Trustmark relies.  AG/USL does not have to present evidence to disprove Trustmark's counterclaims.

AG/USL, in addition to denying the counterclaims by Trustmark, has also affirmatively asserted special defenses to Trustmark's counterclaims.  You should note that the same rules apply – AG/USL has the burden of proof as to the allegations of any special defenses on which it relies.

[Derived from Connecticut Pattern Instructions 1-34]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.41]
[*See also* Sand, 4 Modern Federal Jury Instructions, §73.1]

9. **PREPONDERANCE OF THE EVIDENCE**

In order to meet its burden of proof, a party must satisfy you that his or her claims on an issue are more probable than not.  You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence.  In civil cases such as this one, a different standard of proof applies. The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that, more probably than not, the assertion is true.  In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important; one piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence.  The weight to be accorded each piece of evidence is for you to decide.

As an example of what I mean, imagine in your mind the scales of justice. Put all the credible evidence on the scales regardless of which party offered it, separating the evidence favoring each side.  If the scales remain even, or if they tip against the party making the claim, then that party has failed to establish that assertion.  Only if the scales incline, even slightly, in favor of the assertion may you find the assertion has been proved by a fair preponderance of the evidence.

[Derived from Connecticut Pattern Instructions 1-36]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 104.01]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 73.2]

10.   **NO DELIBERATIONS UNTIL COMPLETION OF EVIDENCE AND CHARGE**

The evidence may take a number of days or weeks to present.  You must wait until you have heard all of the evidence and have heard my final charge to you on the law that applies before you make up your mind about any issue in this case. You may not begin to discuss the case even with each other until after you have heard the charge on the law, because your duty is to wait until you have heard all of the evidence and the applicable law before making up your mind or discussing the claims and issues.

[Derived from Connecticut Pattern Jury Instructions 1.3]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.11]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 71.4]

11.   <u>**NOTE TAKING**</u>

You may, if you wish, take notes during the course of the trial.  Some jurors find that taking notes is helpful in keeping track of the proceedings and some do not.  You should remember that your main job as jurors is to listen to and observe the witnesses.  If taking notes would distract you from that job, then don't take notes.  There is no need to try to take down the testimony word for word.  If, during your deliberations at the end of the case, you need to hear what a witness said, we have an official tape-recording or court stenographer's record that will give you an accurate record of all the testimony.

You should not make any notes outside of court and bring them here.  Your notebooks will be collected at the end of each day and kept secure by the clerk.  No one will look at them.  You should not disclose your notes to anybody during the trial.  It will be up to you whether to disclose them to your fellow jurors during deliberations at the end of the trial.

I take notes because I may be asked to rule on issues during the course of the evidence.  Your decision whether to take notes at any point should not be influenced by my note taking.

[Derived from Connecticut Pattern Jury Instructions 1.4]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.13]

## 12.   <u>LIMITATIONS ON CONTACT WITH JURORS</u>

Under the rules of juror conduct, you must not speak to anyone about any aspect of this case while it is in progress.  You will be instructed to use only certain routes to the courtroom to avoid contact with parties, witnesses, and lawyers.

While the court staff and I will greet you and give you any necessary instructions, we are not permitted to talk to jurors about a case while it is going on. Similarly, the lawyers are bound by a rule of professional conduct that forbids them from having any contact with jurors during a trial, so you should not hold it against any party or lawyer that they maintain their distance and do not converse with you if you see them in the building.

Jurors are supposed to decide cases strictly on the basis of the evidence and law presented in court, and these rules exist to keep away outside influences of any kind.

[Derived from Connecticut Pattern Instructions 1.6]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.11]
[*See also* Sand, 4 Modern Federal Jury Instructions, §§ 71.3, 71.4]

13.    <u>**COMMUNICATIONS WITH THE COURT**</u>

During the course of the trial you cannot have any communication with me except in open court on the record.  If some issue, such as a sudden illness, occurs while the trial is in progress, you should write a note and give it to the court staff, who will give it to me to respond to on the record if need be.

If some emergency occurs when court is not in session, you should call the jury administrator at 860-240-3208 and explain that you are a member of a jury in Judge Covello's courtroom and indicate what the problem is.  Obviously, since you have been chosen as a juror, it is your duty to be here every day that the case is on trial, and you can imagine the inconvenience to everyone else if a juror fails to be here punctually.  In the unlikely event that there is some emergency or problem, I have just described the procedure to follow.

[Derived from Connecticut Pattern Instructions 1.8]

## AG/USL'S PROPOSED CLOSING INSTRUCTIONS

## 1.   ROLE OF JUDGE/ROLE OF THE JURY

Ladies and gentlemen of the jury, you have listened to the evidence and to the arguments of counsel, and it is now time to listen to me as I charge you on the law that applies to this dispute.

You, as the jury, and I, as the judge, have two separate functions. It is your function to find what the facts are in this case; with respect to the facts, you and you alone are charged with that responsibility. My function is to instruct you as to the law to be applied to the facts that you find in order to decide this case. With respect to the law, what I say to you is binding upon you and you must follow my instructions.

I do not have any preference as to the outcome of this case. I have not meant to convey by facial expression or tone of voice or in any other way at any time during the trial any preference or inclination as to how you should decide the facts, and you should not make any such interpretations. If, in my instructions to you, I refer to one party more than the other, or do anything that in your mind suggests a preference for one side or the other, it is not done on purpose. My task has been to apply the rules of evidence and to instruct you as to the law. It is for you alone to decide the outcome of this case.

[Derived from Connecticut Pattern Instructions 1.20]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.10]
[*See also* Sand, 4 Modern Federal Jury Instructions, §§ 71.2, 71.3]

## 2.   __DUTY TO FOLLOW THE LAW__

It is your duty to follow my instructions and conscientiously apply the law as I give it to you to the facts as you find them in order to arrive at your ultimate verdict.  If you should have a different idea of what the law is or even what you feel it ought to be, you must disregard your own notions and apply the law as I give it to you.  The parties are counting on having their claims decided according to particular legal standards that are the same for everyone, and those are the standards I will give you and that you must follow.  If what counsel said about the law differs from what I tell you, you will dismiss from your minds what they may have said to you.  You must decide this case based only on the law that I furnish to you and on the basis of all of the law as I give it to you regardless of the order of my instructions.  You must not single out any particular instruction or give it more or less emphasis than any other, but rather must apply all of my instructions on the law that apply to the facts as you find them.

[Derived from Connecticut Pattern Instructions 1-21]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.11]
[*See also* Sand, 4 Modern Federal Jury Instructions, §§ 71.3, 71.4]

**3.**     **DUTY TO DECIDE ON THE EVIDENCE**

You are to determine what the facts are by careful consideration of all the evidence presented and based solely upon the evidence, giving to each part of the evidence the weight you consider it deserves in reaching your ultimate conclusion. As I stated before the trial began, when I say evidence, I include the following:

- testimony by witnesses in court, including what you may have observed in any demonstrations they presented during their testimony;

- testimony by witnesses by way of the reading of transcripts or the showing of videotapes;

- exhibits that have been received into evidence as full exhibits, including any pictures or documents that are full exhibits;

- facts that the parties have stipulated to; and

- facts that I have told you are to be taken as true by judicial notice.

The testimonial evidence includes both what was said on direct examination and what was said on cross examination, without regard to which party called the witness.

There are a number of things that may have been seen or heard during the trial which are not evidence and which you cannot rely on as evidence in deciding whether a party has proven a claim or a defense.  For example:

- the statements made by lawyers, including statements made both in their opening statements and in their closing arguments, are not evidence;

- a question is not evidence:  it is the answer, not the question or the assumption made in the question, that is evidence;

- the fact that a party has filed a claim or a defense in the court is not evidence that proves the claim or the defense is true;

- testimony or exhibits that were offered but refused or stricken by me or that I told you to disregard must not be relied upon as evidence in resolving the case;

- testimony or exhibits that I told you were to be used only for a particular purpose are not evidence for any other issue; and

- exhibits marked for identification that were not received in evidence as full exhibits are not evidence.

Your duty is to decide the case based on what has been admitted into evidence in this courtroom only, and not on any information about the issues that was not presented into evidence in this courtroom.

It have the right to make comments to you on the evidence, but where I do that, such comments are merely to suggest to you what point of law or what controversy I am speaking about.  If I have referred or do refer hereafter to certain facts or certain evidence in the case, do not assume that I mean to emphasize those facts or that evidence and do not limit your consideration to the things that I may

have mentioned.  Likewise, you should attach no importance to it if I mention one

party more than the other.  If I have overlook any evidence in the case, you'll

supply it from your own recollection; if I incorrectly state anything about the

evidence in relation to what you remember, you should apply your own

recollection and correct my error.  In the same way, what any of the lawyers may

have said in their respective summaries to you as to the facts or evidence in the

case should have weight with you only if their recollection agrees with your own;

otherwise, it's your own recollection of the facts and evidence that should have

weight in your deliberations.

[Derived from Connecticut Pattern Instructions 1-22]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.40]
[*See also* Sand, 4 Modern Federal Jury Instructions, §74.1]

### 4.   <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

There are, generally speaking, two types of evidence from which you can properly find the truth as to the facts of the case.  One is direct evidence, such as the testimony of an eye witness.  The other is indirect or circumstantial evidence, that is, the inferences which may be drawn reasonably and logically from the proven facts.  Let me give you an example of what I mean by direct evidence and circumstantial evidence.  If you're looking out a third floor window and you see smoke rising outside the window, that's direct evidence that there is smoke outside.  It is also circumstantial evidence that there is a fire of some sort below the window.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of *all* the evidence in the case, both direct and circumstantial.  Thus, both direct and circumstantial evidence are permissible evidence and each type should be treated equally.  In your consideration of the evidence, you are not limited to the bald statements of the witness, that is, the exact words that they use.  On the contrary, you are permitted to draw from facts which you find to have been proven such reasonable inferences as seem justified in the light of your experience.

While you may make inferences and rely on circumstantial evidence, you should be careful not to resort to guesswork or speculation or conjecture to determine the facts in the case.

[Derived from Connecticut Pattern Instructions 1-23]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.42]
[*See also* Sand, 4 Modern Federal Jury Instructions, §74.2]

**5.       STIPULATIONS/UNDISPUTED FACTS**

Any facts to which the parties have stipulated, either in writing or orally during the course of the trial, you will treat as proven.  Similarly, if you have been told in open court that a party has agreed not to dispute certain evidence presented by the other, you will treat that evidence as proven as well.  It is still up to you to decide what weight or importance those facts or evidence have, if any, in deciding the issues in the case.

[Derived from Connecticut Pattern Instructions 1-24]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 102.11]
[*See also* Sand, 4 Modern Federal Jury Instructions, §74-4]

6.      **<u>LEARNED TREATISES</u>**

Among the items placed in evidence is [_____] that was introduced during the testimony of an expert witness.  That exhibit can be used by you only for the limited purpose of determining what weight to give that witness' testimony concerning the subject the treatise covers.  You should not use that exhibit as independent evidence of the matters stated in the treatise, but only for the purpose of assessing the credibility and reliability of the expert witness.

[Derived from Connecticut Pattern Instruction 1-29]
[Revisit inclusion of this instruction upon completion of expert scripts]

7.    **<u>USE OF DEPOSITIONS</u>**

While some of the witnesses whose testimony has been presented to you were here to testify in person, the testimony of ___, was presented to you by having a transcript read to you of questions asked and answers given by that witness under oath at an earlier time [or by the showing of a videotape].

Testimony that is presented in this manner may be accepted or rejected by you in the same way as the testimony of witnesses who have been physically present in court.

[Derived from Connecticut Pattern Instruction 1-29]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 102.23]
[*See also* Sand, 4 Modern Federal Jury Instructions, §74.14]
[Revise this instruction upon completion of scripts and designations]

8.     **LIMITING INSTRUCTIONS ON EVIDENCE**

You will recall that I have ruled that some testimony and evidence have been allowed for a limited purpose only.  Any testimony or evidence which I identified as being received for a limited purpose, you will consider only as it relates to the limited issue for which it was allowed, and you shall not consider such testimony and evidence in finding any other facts as to any other issue.

[Derived from Connecticut Pattern Instruction 1-30]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.45]

9.    **<u>STRICKEN EVIDENCE</u>**

Some evidence may have come before you in error, and at the time that

occurred, I ordered that evidence stricken and told you that you must disregard it.

That evidence is not a part of this case and you may not consider that evidence in

reaching your verdict.

[Derived from Connecticut Pattern Instructions 1-31]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.49]

10.   **RULING ON OBJECTIONS**

A trial is governed by rules of evidence.  It is my duty to apply these rules to the testimony and exhibits offered by the parties to determine if that evidence should be admitted for you to consider.  Lawyers have the right and sometimes the obligation to object to evidence that is offered and seek a ruling as to the admissibility of that evidence under the rules.  You should not hold it against a lawyer, or the party he or she represents, if the lawyer objects to evidence or moves to strike evidence, regardless of my ruling.  Just because evidence is admitted after an objection, you are not required to treat that evidence as true, but you should weigh and consider it in the same way as other evidence.  You should not infer from my rulings on evidence that I favor or disfavor any party or lawyer; the court is neutral and is merely enforcing the rules of evidence so as to assure a fair trial. Do not speculate as to what the answer would have been had I not sustained an objection and do not place any emphasis on a piece of evidence merely because I overruled an objection as to it.

[Derived from Connecticut Pattern Instructions 1-33]

## 11.   **PREPONDERANCE OF THE EVIDENCE**

In order to meet its burden of proof, a party must satisfy you that its claims

on an issue are more probable than not.  You may have heard in criminal cases that

proof must be beyond a reasonable doubt, but I must emphasize to you that this is

not a criminal case, and you are not deciding criminal guilt or innocence.  In civil

cases such as this one, a different standard of proof applies.  The party who asserts

a claim has the burden of proving it by a fair preponderance of the evidence, that

is, the better or weightier evidence must establish that, more probably than not, the

assertion is true.  In weighing the evidence, keep in mind that it is the quality and

not the quantity of evidence that is important; one piece of believable evidence

may weigh so heavily in your mind as to overcome a multitude of less credible

evidence.  The weight to be accorded each piece of evidence is for you to decide.

As an example of what I mean, imagine in your mind the scales of justice.

Put all the credible evidence on the scales regardless of which party offered it,

separating the evidence favoring each side.  If the scales remain even, or if they tip

against the party making the claim, then that party has failed to establish that

assertion.  Only if the scales incline, even slightly, in favor of the assertion may

you find the assertion has been proved by a fair preponderance of the evidence.

[Derived from Connecticut Pattern Instructions 1-36]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 104.01]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 73.2]

**12.** **CREDIBILITY OF WITNESSES**

The credibility of witnesses and the weight to be given to their testimony are matters for you as jurors to determine.  However, there are some principles that you should keep in mind.  No fact is, of course, to be determined merely by the number of witnesses who testify for or against it; it is the quality and not the quantity of testimony that controls.  In weighing the testimony of each witness you should consider the witness' appearance on the stand and whether the witness has an interest of whatever sort in the outcome of the trial.  You should consider a witness' opportunity and ability to observe facts correctly and to remember them truly and accurately, and you should test the evidence each witness gives you by your own knowledge of human nature and the motives that influence and control human actions.

You may consider the reasonableness of what the witness says and the consistency or inconsistency of his or her testimony.  You may consider his or her testimony in relation to facts that you find to have been otherwise proven.  You may believe all of what a witness tells you, some of what a witness tells you, or none of what a particular witness tells you.  You need not believe any particular number of witnesses and you may reject uncontradicted testimony if you find it reasonable to do so.  In short, you are to apply the same considerations and use the

same sound judgment and common sense that you use for questions of truth and

veracity in your daily life.

[Derived from Connecticut Pattern Instruction 1-39]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 105]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 76]

13.   **<u>FALSE TESTIMONY</u>**

If you believe that a witness testified falsely as to a part of his or her testimony, you may choose to disbelieve other parts of his or her testimony, or the whole of it, but you are not required to do so.  You should bear in mind that inconsistencies and contradictions within a witness' testimony or between that testimony and other evidence do not necessarily mean that the witness is lying. Failures of memory may be the reason for some inconsistencies and contradictions; also, it is not uncommon for two honest people to witness the same event, yet perceive or recall things differently.  Yet, if you find that a witness has testified falsely as to an issue, you should of course take that into account in assessing the credibility of the remainder of his or her testimony.

[Derived from Connecticut Pattern Instruction 1-40]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 105.04]
[*Compare* Sand, Modern Federal Jury Instructions, § 76.7]

## 14.   __EXPERT WITNESSES__

We have had in this case the testimony of expert witnesses.  Expert witnesses are people who, because of their training, education, and experience, have knowledge beyond that of the ordinary person.  Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions.  Ordinarily, a witness cannot give an opinion about anything, but rather is limited to testimony as to the facts in that witness' personal knowledge.  The experts in this case have given opinions.  However, the fact that these witnesses may qualify as experts does not mean that you have to accept their opinions.  You can accept their opinions or reject them.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had, and the documents or other physical evidence available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the fact, activity and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result.  You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence.  Based on

all of those things together with your general observation and assessment of the

witness, it is then up to you to decide whether or not to accept the opinion.  You

may believe all, some or none of the testimony of an expert witness.  In other

words, an expert's testimony is subject to your review like that of any other

witness.

[Derived from Connecticut Pattern Instruction 1-41]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 104.40]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 76.9]

### 15.   <u>USE OF NOTES DURING DELIBERATIONS</u>

As I told you at the beginning of the trial, the notes you may have taken are simply aids to your individual memory.  When you deliberate, you should rely on your independent recollection of the evidence you have seen and heard during the trial.  You should not give precedence to your own notes or to any other juror's notes over your independent recollection of the evidence, because, as we all know, notes are not necessarily accurate or complete.

Jurors who have not taken notes should rely on their own recollection of the evidence and should not be influenced in any way by the fact that other jurors have taken notes.  Your deliberations should be determined not by what is or is not in your notes but by your independent recollection of the evidence.  If you have a question about any particular testimony, you may ask that it be read or played back to you from the official record, so there is no need to rely on notes.

[Derived from Connecticut Pattern Instruction 1-45]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 101.13]

16.     **SYMPATHY/PREJUDICE**

Obviously, your verdict must not be reached on the basis of sympathy for any party or on the basis of prejudice in favor of or against any party.  The parties come to court asking simply for a cool, impartial determination of the disputed issues based on the facts and the law.  That is what they are entitled to and that is how you should approach the decision of this case.

[Derived from Connecticut Pattern Instruction 1-47]
[*See also* Sand, 4 Modern Federal Jury Instructions, § 71.10]

17.   **BREACH OF CONTRACT**

Each party alleges that the other has acted in breach of contract.  AG/USL alleges that Trustmark breached an agreement to reinsure AG/USL for 50% of the losses sustained by AG/USL on risks bound by WEB on AG/USL paper in 1997 and 1998.  Trustmark alleges AG/USL breached an agreement to act jointly with Trustmark in conducting WEB facility business written on AG/USL paper. Trustmark also alleges that AG/USL breached an agreement to reinsure Trustmark for 50% of losses sustained by Trustmark on certain risks placed on Trustmark paper that AG/USL alleges were bound by WEB in 1999, after AG/USL's participation in the WEB facility had terminated on December 31, 1998, but which Trustmark alleges were effective prior to that time.

As I explained at the start of the trial, the party making a claim has the burden of proof with respect to that claim.  Thus, AG/USL has the burden of proving each essential element of the causes of action upon which AG/USL relies, and Trustmark has the burden of proving each essential element of the causes of action upon which Trustmark relies.

The essential elements of a cause of action for breach of contract are: (1) the formation of a contract, (2) performance by one party, (3) breach of the contract by

the other party, and (4) damages.[5]

---

[5]      *Rosato v. Mascardo*, 82 Conn. App. 396, 411 (2004); *Oliva v. Amtech Reliable Elevator Co.*, 366 Ill. App. 3d 148, 152 (1st Dist. 2006) ("In order to state a cause of action for breach of contract, plaintiffs must allege the existence of a valid and enforceable contract, substantial performance by plaintiffs, breach of the contract by defendants and resultant injury to plaintiffs.") (citing W.*W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759 (2004)).

18.    **FORMATION OF A CONTRACT**

A contract is an agreement enforceable at law.  There must be mutual assent or a meeting of the minds at the time the contract was formed.[6]  In order for there to be a meeting of the minds, the parties must agree that they have entered into a contract and must have similar understanding as to the essential terms.[7]  If that occurs, a contract is formed.

Contracts may be express or implied.  If the agreement is shown by the direct words of the parties, spoken or written, the contract is an express one.  An express contract may consist of more than one document.[8]  If the agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one.[9]

---

[6]      *See* Conn. Pattern Instructions 3.2.

[7]      *See* Conn. Pattern Instructions 3.6.

[8]      Ill. Pattern Jury Instr.-Civ. 700.06 (2007 ed.); *United Illuminating Co. v. Wisvest-Conn., LLC*, 259 Conn. 665, 671, 791 A.2d 546, 550 (Conn. 2002) ("When there are multiple writings regarding the same transaction, the writings should be considered together in construing the contract.") (internal quotation  marks omitted).

[9]      *See* Conn. Pattern Instructions 3.1.

### 19.    THE TERMS OF THE CONTRACT

A party must prove by a preponderance of the evidence that the contract contains the terms that it seeks to enforce.[10]  To determine what terms are included in the contract between AG/USL and Trustmark, you must decide AG/USL's and Trustmark's intent as manifested by their words and actions.[11]  In other words, you must determine what terms AG/USL and Trustmark mutually intended to apply to their relationship at the time their contract was formed.  Except to the extent certain terms are implied into the contract by operation of law, a possibility I will discuss shortly, the terms of the parties' contract are what the parties mutually intended them to be at the time the contract was formed, nothing more and nothing less.

It is not your function to remake the parties' agreement or to change the terms of the parties' agreement.  You must determine the intent of the parties from

---

[10]    Conn. Pattern Instructions 3-15; *Mannion v. Stallings & Co.,* 204 Ill. App. 3d 179, 186 (1st Dist. 1990) (party seeking to enforce a contract must prove its terms by preponderance of the evidence).

[11]    Conn. Pattern Instructions 3-15; *Amwax Corp. vs. Chadwick,* 28 Conn. App. 739, 141-42 (1992) ("The existence an terms of a contract are determined from the intent of the parties... 'The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were.' It is within the province of the trier to draw reasonable and logical inferences from the facts proven."); *Village of S. Elgin v. Waste Mgmt. of Ill., Inc.,* 348 Ill. App. 3d 929, 941, 810 N.E.2d 658, 670 (2d Dist. 2004) ("The principal objective in construing a contract is to ascertain and give effect to the intent of the parties. 'Intent' refers to objective manifestations of intent in the words of the contract and the actions of the parties; it does not encompass one party's secret, undisclosed intentions or purely subjective understandings of which the other party is unaware.") (internal citations omitted).

the contract the parties themselves made and apply the terms of the contract that the parties in fact made.[12]

Terms of the contract between AG/USL and Trustmark may, in whole or in part, appear in unsigned documents, so long as you conclude that AG/USL and Trustmark intended such terms to apply to their relationship.[13]

It is undisputed that American General, US Life and Trustmark never jointly executed a final written contract that fully articulated the terms of the respective undertakings of the parties.  Nevertheless, Trustmark did execute several documents that evince the existence of the contract between the parties.[14]

One such document was sent by Trustmark to the Illinois Department of Insurance to substantiate the contractual relationship between All American and Trustmark with regard to the WEB business, which attached the "Interests and

---

[12]     *See* Conn. Pattern Instructions 3.17.

[13]     *Hedlund & Hanley, LLC v. Bd. of Trustees of Community College Dist. No. 508*, __ Ill. App. 3d __, 2007 WL 913701, *5 (1st Dist. March 27, 2007) ("Whether a writing constitutes a binding contract, even though it is not signed, as is the situation presented in the present case, usually depends upon the intention of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, [such] as . . . by acts or conduct of the parties.") (internal citations and quotation marks omitted); *Omega Engineering, Inc. v. Omega*, *SA*  414, F. Supp. 2d 138, 148 (D. Conn. 2004) ("It is well established that parties are bound to the terms of a contract even though it is not signed [or even written].") (citing *Schwarzschild v. Martin*, 191 Conn. 316, 320-21, 464 A.2d 774 (1983)) (internal quotation marks omitted); *Weston Chem., Inc. v. Diamond Fertiliser & Chem. Corp.*, 1990 WL 128235, *6 (D. Conn. July 2, 1990) (stating that, on summary judgment, court "must first determine whether there is a genuine issue of fact surrounding the intent of the parties to be bound by the terms of the [unsigned] telex sent from plaintiff Weston to defendant Diamond").

[14]   Court's August 28, 2007 Ruling on Summary Judgment, pp. 25-26.

Liabilities Agreement."  This document explicitly sets forth the essential terms of the parties' contract as alleged by American General and US Life, including the duration of the agreement, the classes of business to be reinsured, and the amounts to be ceded and assumed.

20.    **CONSIDERATION OF SURROUNDING CIRCUMSTANCES AND COURSE OF CONDUCT**

As I've explained, in deciding what terms were part of the parties' contract, you must consider and determine the parties' intent at the time of their agreement. To determine the parties' intent, you may consider any particular document you find to have been part of their agreement or to have reflected part of their agreement in light of the situation of the parties and the circumstances surrounding the making of the contract. You also may consider the motives of the parties and the ends that they sought to accomplish by their contract. You may also consider the parties' course of conduct and dealings with each other after reaching their agreement in determining the parties' intent.[15] However, the circumstances surrounding the making of a contract, the purposes that the parties sought to accomplish and their motives and subsequent conduct cannot prove an intent contrary to the plain meaning of language that you find to have been part of the parties" contract.[16]

---

[15]    *See* Williston on Contracts section 32.14 (2007); *May Centers, Inc. v. Paris Croissant of Enfield Square, Inc.*, 42 Conn. Supp 77, 81 (Conn. Super. 1991)

[16]    *See* Conn. Pattern Instructions 3.16.

**21.   <u>REINSURANCE CUSTOM AND PRACTICE</u>**

In deciding what terms were or were not part of the parties' contract, you may also consider the customs and practices of the reinsurance industry in which these parties operated.  Specifically, AG/USL contends that it is the custom and practice in the reinsurance industry for reinsurers to control coverage, settlement and litigation or arbitration decisions with respect to risks written on their paper, and that a retrocessionaire is bound to follow the reasonable, good faith decisions and actions by the reinsurer.  You may consider these customs and practices in determining the parties' intent if you find that:

- each of the alleged customs and practices are in fact customs and practices in the reinsurance industry and that each party knew or had reason to know of these customs and practices; and

- neither party knew or had reason to know that the other party had intentions inconsistent with these customs and practices.

[Derived from Connecticut Pattern Instruction 3-24]

## 22.   <u>THE PARTIES' AGREEMENT TO BE EACH OTHER'S RETROCESSIONAIRE</u>

One aspect of the parties' contract that is not in dispute is that each party agreed to assume, as a retrocessionaire, 50% of the risk that the other party retained on risks bound on its paper by the WEB facility and effective on or before December 31, 1998.  In other words, AG/USL agreed to reinsure Trustmark for 50% of the net retained risk WEB bound on Trustmark paper during the applicable time period, and Trustmark agreed to reinsure AG/USL for 50% of the net retained risk WEB bound on AG/USL paper during the applicable time period.  That was a term of the parties' contract.  Each party claims that the other breached this term by failing to pay its share of payments on certain risks it had reinsured.  In fact, that is the allegation underlying of all of AG/USL's breach of contract claims.

Because it is undisputed that AG/USL and Trustmark reached an agreement to reinsure each other in the manner I just described, if one of the parties establishes that it made the payments to resolve coverage disputes for which it seeks reimbursement through its breach of contract claims, the burden then shifts to the other party to prove by a preponderance of the evidence that those payments do not fall within the scope of the reinsured policy.  If that other party fails to prove that the payments fall outside the scope of the reinsured policy, then you must find that that party is obligated to provide reinsurance, unless that party proves by a preponderance of the evidence that the party seeking reinsurance owed

additional duties under the AG/USL-Trustmark agreement and materially breached

those duties.

### 23.   __THE UNIFORM PARTNERSHIP ACT__

I told you a few moments ago that one undisputed term of the parties'
contract is that each party agreed to assume 50% of the risk that the other party
retained on risks bound on its paper by the WEB facility and effective on or before
December 31, 1998.  I also told you that if you found that a party had made a
payment on a risk fitting that description, you must find the other party obligated to
reimburse 50% of that payment, unless it proves by a preponderance that the
payment in question fell outside the scope of the reinsured policy or that the party
seeking reimbursement materially breached additional duties it owed under the
parties' contract.

Trustmark, in defense to AG/USL's breach of contract claims, asserts that
AG/USL did materially breach an additional duty it owed under the parties'
contract.  Primarily, in this regard, Trustmark claims that AG/USL breached a duty
to afford Trustmark equal say in the management and control of WEB-related
business, including decisions with respect to payments, settlements and disputes
relating to WEB risks written on AG/USL paper.   Trustmark asserts that AG/USL
breached this duty by: (i) failing to obtain Trustmark's consent to the payments for
which AG/USL now seeks reimbursement; and (ii) failing to afford Trustmark a
sufficient opportunity to participate equally with AG/USL in directing the various
underlying arbitrations and litigations which have produced judgments against

AG/USL which AG/USL has paid and for which AG/USL seeks reimbursement.

Trustmark advances this "partnership" argument not only as a defense to

AG/USL's claims but also as an independent counterclaim.

Trustmark does not contend that the parties specifically agreed that each of

them would have an equal say in the management and control of WEB-related

business.  In fact, it is undisputed that the parties did not specifically agree on any

such term.  You may recall, however, that I mentioned that certain terms may be

implied as a matter of law into a contract.  In this instance, Trustmark claims that a

term giving AG/USL and Trustmark equal say in the management and control of

WEB-related business was implied into the parties' agreement by law under

something called the Uniform Partnership Act.

The Uniform Partnership Act is a statute that supplies default terms into

partnership agreements.[17]  One of the default terms in the Uniform Partnership Act

is that all partners in a partnership shall have equal rights in the management and

conduct of the partnership business.[18]  Trustmark argues that this default term

applies to the relationship between Trustmark and AG/USL in the WEB facility,

---

[17]    *See* 805 ILCS 205/18 ("The rights and duties of the parties in relation to the partnership shall be determined, subject to any agreement between them, by the following rules . . ."); *Mut. Life Ins. Co. of N.Y. v. Brush Hill Ass'n*, 1994 WL 465809, *3 (N.D. Ill. Aug. 23, 1993) (the UPA was "clearly was intended to provide a set of default rules that apply in the absence of an agreement").

[18]    805 ILCS 205/18(e) ("All partners have equal rights in the management and conduct of the  partnership business.").

and, therefore, that Trustmark and AG/USL have equal control over the management of coverage disputes and settlements involving WEB facility risks, regardless of which parties' paper is involved.

Before you may conclude that this or any provision of the Uniform Partnership Act was part of the agreement between the parties in this case, you must first determine whether Trustmark has proven by a preponderance that its relationship with AG/USL was, in fact, a partnership.   In order to do that, Trustmark must prove by a preponderance that its relationship with AG/USL involving the WEB facility constituted an association of two or more persons to carry on as co-owners of a business for profit.[19]

If Trustmark succeeds in that regard, you are instructed that the Uniform Partnership Act does apply to the parties' relationship and you may, subject to further instructions I will give you in a moment, consider provisions of the Uniform Partnership Act to be included in the agreement between the parties.  If Trustmark fails to prove that the parties' relationship was a partnership, the Uniform Partnership Act has no applicability and could not have added any terms to the parties' agreement.

---

[19] Court's summary judgment opinion at 19.

24.     **UNIFORM PARTNERSHIP ACT IS DEFAULT ONLY**

In describing the Uniform Partnership Act to you, I said that it can supply

default terms into a partnership agreement.  A default term is a term that is implied

into a contract absent an agreement to the contrary by the parties to the agreement.

However, partners, like other parties to a contract, are generally free to establish

the rights, duties, and obligations that govern their relationship, and therefore they

are not required to accept the default terms set forth in the Uniform Partnership

Act, even where it would otherwise apply.[20]  That means that, even in situations

where the Uniform Partnership Act applies, if partners agree to terms that are

different than or inconsistent with the Uniform Partnership Act's default terms,

then the partners' agreement prevails and the terms that they agree upon supersede

and displace any conflicting terms of the Uniform Partnership Act.

As we've discussed, one of the default terms in the Uniform Partnership Act

is that all partners shall have equal rights in the management and conduct of the

partnership business.[21]  Trustmark argues that this default term apply to the

relationship between Trustmark and AG/USL in the WEB facility, and therefore

Trustmark and AG/USL have equal control over the management of coverage

---

[20]     *See Saballus v. Timke*, 122 Ill. App. 3d 109, 116 (1st Dist. 1983) ("[P]artners have the right to establish between themselves by a partnership agreement or by a dissolution agreement, their rights, duties, and obligations so far as the partnership is concerned."); 805 ILCS 205/18.

[21]     805 ILCS 205/18(e) ("All partners have equal rights in the management and conduct of the  partnership business.").

disputes and settlements involving WEB facility risks, regardless of which parties'
paper is involved.

Consistent with what I told you a few moments ago, even if you find that the
relationship between AG/USL and Trustmark was a partnership, the Uniform
Partnership Act's default term regarding equal management will only apply to
Trustmark's and AG/USL's relationship if you conclude, after considering all of
the evidence, that Trustmark and AG/USL had no other conflicting intention or
understanding regarding their respective rights to manage and to conduct the
partnership business.  If after considering all of the evidence, you conclude that
Trustmark and AG/USL *did* have a different intention or understanding regarding
their respective rights to manage and to conduct the partnership business, then that
intention or understanding will apply to the parties' relationship, and the Uniform
Partnership Act's default term will not.

25.   **FOLLOW THE FORTUNES**

In the event you determine that the Uniform Partnership Act does apply to the relationship between AG/USL and Trustmark, such that the Uniform Partnership does apply, you should be aware that AG/USL contends that the parties' agreement included an understanding about the parties' respective rights to manage and to conduct WEB-related business that superseded the joint control provision of the Uniform Partnership Act.  Specifically, AG/USL alleges that the parties contract included a term providing that the parties would follow an arrangement that is variously known as the "follow the fortunes" doctrine or the "follow the settlements" doctrine.  For ease of reference, I'll just use the term "follow the fortunes".   AG/USL alleges that the parties agreed upon this term specifically or, in the alternative, that inclusion of a "follow the fortunes" is the industry custom for reinsurance agreements like the one between AG/USL and Trustmark, such that the parties all understood "follow the fortunes" to be part of their agreement, even if they did not expressly say so.  Trustmark denies that the parties agreement included this term.

The "follow the fortunes" doctrine requires reinsurers to accept the cedent's good-faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured, including coverage, tactics, lawsuits,

compromise, resistance, or capitulation.[22]  Thus, the doctrine requires reinsurers to

reimburse cedents for payments made to resolve a coverage dispute, whether by

judgment, settlement or otherwise, as long as the payments were made in good

faith and without collusion, and are arguably within the terms of the reinsured

policy.[23]  Under this doctrine, a reinsurer or retrocessionaire cannot second guess

the good-faith decisions made by its reinsured.[24]  The "follow the fortunes"

doctrine permits the reinsurer to make reasonable, good faith decisions in its own

best interest, even where those decisions have adverse consequences for its

retrocessionaire.[25]

　　　　If you find that the parties' contract included an agreement to abide by the

follow-the-fortunes doctrine, whether expressly or impliedly, I instruct you that the

joint control provision of the Uniform Partnership Act was not part of the

agreement between AG/USL and Trustmark and, further, that any failure on the

part of AG/USL to abide by the Uniform Partnership's joint control agreement

---

[22]　　*See N. River Ins. Co. v. ACE Am. Reinsurance Co.*, 361 F.3d 134, 140 (2d Cir. 2004); *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1205 (3d Cir. 1995).

[23]　　*See Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 517 (2d Cir. 1993); *Hartford Accident & Indem. Co. v. ACE Am. Reinsurance Co.,* 2005 WL 3663930, No. CV03017822S, at *6 (Conn. Super. Ct. Dec. 14, 2005).

[24]　　*See Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.,* 979 F.2d 268, 280 (2d Cir. 1992); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1199 (3d Cir. 1995).

[25]　　*See Travelers Casualty & Surety Co. v. Gerling Global Reins. Corp. of Am.,* 419 F.3d 181 (2d Cir. 2005); *N. River Ins. Co. v. ACE Am. Reins. Co.,* 361 F.3d 134 (2d Cir. 2004).

would not excuse a breach of contract by Trustmark or constitute a breach of

contract by AG/USL.

## 26.   **BURDENS OF PROOF UNDER FOLLOW THE FORTUNES**

If you determine that the contract between AG/USL and Trustmark included an agreement to abide by the follow the fortunes doctrine, then in order to prevail on its breach of contract claims, AG/USL must prove by a preponderance of the evidence that the payments referenced in those claims, for which AG/USL seeks reinsurance from Trustmark, were made in good faith and arguably fall within the scope of coverage of the reinsured policy.  The burden of proof then shifts to Trustmark.   To avoid its payment obligations, Trustmark must prove by a preponderance of the evidence that:  (i) AG/USL committed gross negligence or recklessness in connection with the claim payment or settlement;[26]  (ii) payments made by AG/USL were *ex gratia;*[27] and/or (iii) AG/USL owed additional duties to Trustmark and materially breached those duties.   An *ex gratia* payment is one that is clearly and unambiguously outside the scope of the underlying insurance contract.[28]

---

[26]     *See Travelers Cas.,* 419 F.3d at 191-92; *Ace Am.,* 361 F.3d at 139-40.

[27]     *See Am. Marine Ins. Group v. Neptunia Ins. Co.,* 775 F. Supp. 703, 708-709 (S.D.N.Y. 1991).

[28]     *See State Auto. Mut. Ins. Co. v. Am. Re-Ins. Co.*, 748 F. Supp. 556, 558, 561 (S.D. Ohio 1990); *Mich. Millers Mut. Ins. Co. v. N. Am. Reins. Corp.*, 182 Mich. App. 410, 411-12, 452 N.W.2d 841, 842-43 (Mich. Ct. App. 1990); *Reliance Ins. Co. v. Gen. Reins. Corp.*, 506 F. Supp. 1042, 1050 (E.D. Pa. 1980) ("It is manifest that [a cedent] cannot recover for its losses unless the losses are covered by the terms of the [reinsured policy] and reinsurance certificate"); Thompson, REINSURANCE at 277, 284 (4th ed. 1966) (a ceding company may not "go right outside the terms of its policy, and require nevertheless that the reinsurer shall follow").

## 27.    GOOD FAITH OBLIGATIONS TO POLICY HOLDER

In determining the parties' intent in connection with the management and control of coverage issues involving WEB facility risks, you may consider that an reinsurer has a good faith obligation to settle disputes without regard to the views of its retrocessionaire.  In other words, a reinsurer has a contractual duty to the reinsured to make good faith coverage determinations concerning claims submitted by the reinsured without regard to positions asserted by retrocessionaires.  Breach of that duty exposes the reinsurer to the risk of damages in excess of the reinsurance policy limits for bad faith conduct.  A reinsurer is not permitted to deny coverage merely because the retrocessionaire does not believe a claim is covered.[29]

---

[29]     *Unigard Security Ins. Co., Inc. v. N. River Ins. Co.*, 762 F. Supp. 566, 581 (S.D.N.Y. 1991); *Continental Casualty Co. v. United States Fidel. & Guar. Co.*, 516 F. Supp. 384, 387 (N.D. Cal. 1981); *See also* Jonathan F. Bank and Kenneth R. Pierce, *Reinsurance:  Overview and Discussion of Current Problems,* 518 PLI/Lit. 303, 323 (1995) ("a reinsurer which vociferously objects to settlement or payment of a claim may invite an argument by the original insured that the cedent refused to settle or pay in bad faith out of reinsurance concerns"); *Garner v. Am. Mut. Liability Ins. Co.,* 107 Cal. Rptr. 604 (Ct. App. 1973) (holding that an insurer cannot delegate duty to evaluate claims to a third party).

28.    **REINSURANCE ACCOUNTING**

In evaluating the intent and conduct of the parties, you may consider that reinsurance regulations permit an insurer to take "reserve credit" on its financial statements for exposures reinsured by another carrier.  This means that a reinsurer is permitted to show on its financial statements that another carrier – the retrocessionaire – is committed to pay a portion of the reinsurer's liabilities.  This "reinsurance credit" results in an increase in the reinsurer's capital surplus, which is a financial benefit.

To qualify as reinsurance for statutory accounting purposes and thereby be permitted to take a reserve credit, all of the following must be true: (i) the contract must involve insurance risk; (ii) the retrocessionaire must agree to indemnify the reinsurer for all or a portion of an insurance risk; and (iii) the amount and timing of the retrocessionaire's liability must depend on and vary directly with the amount and timing of claims paid by the reinsurer.  If the agreement between the reinsurer and retrocessionaire does not meet these criteria, a reinsurer may not take reserve credit for the reinsurance coverage provided by the retrocessionaire.[30]

---

[30]    To take such credit, the arrangement must meet the definition of reinsurance set forth in the National Association of Insurance Commissioners Accounting Practices & Procedures Manual (2005) SSAP No. 61, *Life, Deposit-Type and Accident and Health Reinsurance*, ("Reinsurance agreements must transfer risk . . . If the terms of the agreement violate the risk transfer criteria contained herein, (i.e., limits or diminishes the transfer of risk by the ceding entity to the reinsurer), the agreement shall follow the guidance for Deposit Accounting.  In addition, any contractual feature that delays timely reimbursement violates the conditions of reinsurance accounting.  Regardless of what a particular feature might be called, any feature that

Here, in determining whether the parties intended that each would manage and control coverage disputes involving WEB facility risks on its own paper or instead would jointly manage and control coverage disputes on all WEB facility risks, you may consider whether the parties took reserve credit for any reinsurance that they provided to each other for WEB facility risks and how the rules allowing for such accounting treatment bear on the parties' intent.

---

can delay timely reimbursement violates the conditions for reinsurance accounting.  Transfer of insurance risk requires that the reinsurer's payment to the ceding entity depend on and vary directly with the amount and timing of claims settled under the reinsurance contracts. . . . Contacts that fail to meet the requirements for reinsurance accounting shall follow the guidance for Deposit Accounting [which does not permit reserve credits]."); Statement of Financial Accounting Standards No. 113, *Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration* (A contract will not be considered reinsurance if there is a "probability of a significant variation in either the amount or timing of payments by the reinsurer . . . . Contractual provisions that delay timely reimbursement to the ceding enterprise would prevent this condition from being met.").

## 29.   **SUBSTANTIAL PERFORMANCE/MATERIAL BREACH**

As mentioned, one of the essential elements of a cause of action for breach of contract is that the party seeking to enforce the contract must have substantially performed the contract.[31]  Substantial performance is not the same as a full, literal, or strict performance.[32]

Put differently, to enforce a contract, a party may not have materially breached that contract.[33]  If one party commits a material breach of contract and therefore may not enforce that contract, then the other party is necessarily excused

---

[31]     *Oliva*, 366 Ill. App. 3d at 152 ("In order to state a cause of action for breach of contract, plaintiffs must allege the existence of a valid and enforceable contract, substantial performance by plaintiffs, breach of the contract by defendants and resultant injury to plaintiffs.") (citing W.*W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759 (2004)).

[32]     *Bernard v. Las Americas Comm'ncs, Inc.*, 84 F.3d 103, 108 (2d Cir. 1996) ("Of course, the doctrine of substantial performance does not require performance in exact correspondence with the contracted obligation."); *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1367 (11th Cir. 1983) ("The substantial performance doctrine provides that where a contract is made for an agreed exchange of two performances, one of which is to be rendered first, substantial performance rather than exact, strict or literal performance by the first party of the terms of the contract is adequate to entitle the party to recover on it.").

[33]     *See Bernstein v. Nemeyer,* 213 Conn. 665, 666-67 (1990) ("Only where a party seeking to enforce a contract is in material breach will that party be denied enforcement of the contract."); *360Networks Tenn., L.L.C. v. Ill. Cent. R. Co.*, 2007 WL 1423880, *3 (N.D. Ill. 2007) ("Where a party has materially breached a contract, it will not be permitted to take advantage of any contract terms that benefit him or recover damages from the other party to the contract."); McBride v. Pennant Supply Corp., 253 Ill. App. 3d 363, 367 (5th Dist. 1993) ("The real question in the case at bar is whether Pennant's breach was material, because if 'a party has *materially* breached a contract, he cannot take advantage of terms of the contract which benefit him.") (quoting *Robinhorne Constr. Corp. v. Snyder,* 113 Ill. App. 2d 288, 297 (4th Dist. 1969), *aff'd*, 47 Ill. 2d 349 (1970)); Cf. *Bernard*, 84 F.3d at 109 ("A finding that [plaintiff's] conduct . . . materially breached his contract with [defendant], however, is equivalent to a finding that [plaintiff] did not substantially perform under the contract."); Calamari & Perillo, The Law of Contracts 416 (5th ed. 2003) (same); Farnsworth, 2 Farnsworth on Contracts 518 (3d ed. 1999) (same).

from performing its remaining obligations under the contract.[34]   Thus, when considering a party's cause of action for breach of contract, if you conclude that that party failed to prove that it substantially performed the contract, then you must grant judgment to the other party on that cause of action

A party commits a material breach (and therefore does not substantially perform) where it fails to perform with respect to a matter that was of such a nature and of such importance that the contract would not have been made without it.[35]   In other words, if a party breaches a term or terms of a contract that were a prerequisite to the other party entering into the contract, then the breach is "material" and there has not been substantial performance.

If you conclude that a party committed a breach but that the breach was not material, then that party may enforce the contract and the other party is not excused from performance.

---

[34]     *Sahadi v. Continental Ill. Nat'l Bank & Trust Co.*, 706 F.2d 193, 196 (7th Cir. 1983); *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 98 (Ill. 2006); *Bernstein v. Nemeyer*, 570 A.2d 164, 167-68 (Conn. 1990); Restatement (Second) Contracts, § 237 ("Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").

[35]     *Galesburg Clinic Ass'n v. West*, 706 N.E.2d 1035, 1037 (Ill. App. 1999); Trapkus v. Edstrom's, Inc., 489 N.E.2d 340, 345 (Ill. App. 1986)

## 30.   <u>MOTIVE</u>

AG/USL's motive in commencing this lawsuit is not relevant to any of the claims or defenses in this action.[36]  Therefore, you must not consider whether AG/USL's motive in commencing this lawsuit was proper or improper when determining whether AG/USL or Trustmark is entitled to relief on any of their claims.

---

[36]     *Foremost Promotions, Inc. v. Pabst Brewing Co.*, 15 F.R.D. 128, 130 (N.D. Ill. 1953) ("It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim.  The responses might lead to embarrassing admissions of champerty or unconscionable arrangements as to fees and expenses, but these excesses are not in any way relevant to the trial of the particular issue."); *Digital Equipment Corp. v. Sys. Indus. Inc.*, 108 F.R.D. 742, 743 44 (D. Mass. 1986) (stating that "[t]he reasoning applied in *Foremost* has been consistently followed where discovery was sought concerning the initiation of a lawsuit" and denying, on relevance grounds, discovery of plaintiff's motive in bringing lawsuit); *Cresswell v. Prudential-Bache Sec. Inc.*, 105 F.R.D. 64, 64-65 (S.D.N.Y. 1985) (concluding that the "*Foremost* view is persuasive" and ruling that plaintiffs could not be deposed with respect to conversations among themselves regarding the decision to initiate the lawsuit); *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 125 (D. Conn. 1974) (finding *Foremost*'s reasoning persuasive and denying discovery of plaintiff's motive in commencing lawsuit).

31.   <u>**DAMAGES**</u>

If you find that Trustmark is liable to AG/USL for breach of contract, then you must determine the amount of money to award to AG/USL as contract damages.  The following instructions tell you how to do that.  If, however, you find that Trustmark is not liable for breach of contract, then you do not need to consider the subject of damages.  The fact that I am telling you about the law of contract damages does not mean that you will, or should, find against Trustmark.[37]

Damages for breach of contract are measured as of the time of the breach. These damages may consist of expectation damages and consequential damages, both of which I will explain in a moment.[38]  AG/USL must prove by a preponderance of the evidence the amount of any damages to be awarded.  The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty.  Although damages may be based on reasonable and probable estimates, you may not award damages on the basis of guess, speculation or conjecture.[39]

Any damages you award for breach of contract should be designed to place AG/USL, so far as can be done by money, in the same position as it would have

---

[37]    Conn. Pattern Instructions 3-78.

[38]    Conn. Pattern Instructions 3-79.

[39]    Conn. Pattern Instructions 3-80.

been had the contract been fully performed.[40]  Here, Trustmark's contract with

AG/USL was a policy of reinsurance.  If you determine that Trustmark breached

its obligations to AG/USL under the reinsurance policy, AG/USL is entitled to

recover the amount of money that it would have been due under the policy absent

Trustmark's breach less any amount to which Trustmark is entitled as credits,

deductions, or offset on the amount due under the parties' agreement.[41]

       In addition to damages under the terms of the reinsurance policy, any

damages you award for breach of contract also may include amounts to

compensate AG/USL for consequential damages.  Consequential damages are

damages that are reasonably foreseeable for Trustmark as the natural and probable

results of its breach.[42]

---

[40]       Conn. Pattern Instructions 3-82.

[41]       Paul Coltoff, et al., ILL. LAW & PRAC. INSURANCE § 569 (June 2007 ed.); David L.
Leitner, LAW & PRAC. OF INS. COVERAGE LITIG., § 27:17 (July 2007 ed.); *Heller Int'l Corp. v.
Sharp*, 839 F. Supp. 1297, 1302 -03 (N.D. Ill. 1993) ("[G]eneral principles of contract law apply
equally well in the insurance contract context.  In many instances, the measure of damages is
governed by the contractual policy amount. That rule is not an absolute. As noted above, Illinois
law does allow recovery of consequential damages "where they were reasonably foreseeable,
were within the contemplation of the parties at the time the contract was entered, or arose out of
special circumstances known to the parties.") (internal citations omitted).  *Cf. Rametta v. Stella*,
214 Conn. 484, 489 (1990) ("An action against an insurance agent for failure to obtain insurance
may be brought under a theory of either negligence or breach of contract . . .  The measure of the
plaintiff's damages is the amount that should have been recovered under the policy.") (internal
citations omitted).

[42]       Conn. Pattern Instructions 3-87; *Heller Int'l*, 839 F. Supp. at 1303.

## 32.   __RECOUPMENT/SETOFF__

The right of setoff allows two parties that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B also owes A.  Thus, when the plaintiff has sustained an injury or damage because of the defendant's actions and the defendant has sustained an injury or damage because of the plaintiff's actions, the jury must offset all amounts owing from the plaintiff to the defendant against any judgment entered for the plaintiff, and award plaintiff only the net balance.[43]  Likewise, if the jury determines that the damages suffered by the defendant were greater than those suffered by the plaintiff, the jury must offset all amounts owing from the defendant to the plaintiff against any judgment entered for the defendant and award the defendant only the net balance.

---

[43]     *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.");

33.   **<u>DUTY TO DELIBERATE</u>**

Each of you has taken an oath to return a true verdict according to the evidence.  No one must be false to that oath, but you have a duty not only as individuals but also collectively to express your views to the other jurors and to listen to theirs.  That is the strength of the jury system.  Each of you takes your individual experience and wisdom into the jury deliberation room with you.  Your task is to pool that experience and wisdom in considering the evidence.  You do that by giving your views and listening to the views of others.  There must necessarily be discussion and give and take within the scope of your oath.  That is the way in which agreement is reached.

[Derived from Connecticut Pattern Instruction 1-49]
[*See also* O'Malley, 3 Federal Jury Practice and Instructions, § 106.01]
[*See also* Sand, 4 Modern Federal Jury Instructions, §§ 71.3, 71.4]

## 34.   **RESTRICTIONS ON DELIBERATIONS**

You must not discuss the case unless all members of the jury are present.

You will take the usual breaks and luncheon recess, but you must not discuss the

case in two's or three's during those breaks.  You can deliberate only when all of

you are together in the jury deliberation room.  This is important.  We have had

cases that had to be tried all over again because this rule was violated, so please be

very careful not to discuss the case with your fellow jurors except when all of you

are together deliberating.

[Derived from Connecticut Pattern Instruction 1-50]

### 35.   <u>**PROCEDURES FOR REPORTING VERDICT**</u>

When you have reached a verdict, knock on the door and the clerk will alert me.  When you are told to enter the courtroom, the foreperson should sit in the first seat in the first row.  When the jury is asked if it has reached a verdict, the foreperson should respond.  The clerk will then hand the verdict to me and the verdict will be read twice to you.  You will each be asked to respond whether it is your verdict, as a check that the verdict is, in fact, unanimous.

You should not at that point expect me to make any comment about your verdict.  It has been my task to rule on issues of evidence and to instruct you on the law.  It is your task to decide the case, and I will leave that strictly up to you and make no comment on what you decide.  It is, of course, merely the division of duties, and not any lack of appreciation of your efforts, that keeps me from commenting on your decision.

[Derived from Connecticut Pattern Instruction 1-51]

**36.**   **PROCESS FOR JURY'S DELIBERATIONS**

At this time, ladies and gentlemen, I will explain the verdict form(s) to you and then you will be escorted to the jury deliberation room.  You should not begin your deliberations until the exhibits and the verdict form(s) are delivered to you by the clerk.  This will occur after the lawyers have had an opportunity to check that all the exhibits are present and to tell me if they think that any different or additional instructions to you are necessary.  I will recall you to the courtroom if I conclude that further instructions are needed.

When the exhibits are delivered to you, your first task will be to elect a foreperson who will serve as your clerk.  After you have received the exhibits and then elected the foreperson, you will begin deliberating.  If you have questions during your deliberations, the foreperson should write the jury's question on a sheet of paper, sign and date it, and knock on the door.  The clerk will then bring the question to me, and I will respond in open court.  It may take a few minutes to assemble the staff before you are brought to the courtroom to hear the response.  Please try to make any questions very precise.  We cannot engage in an informal dialogue, and I will respond only to the question on the paper.

If you need to have any testimony or any part of my instructions read or played back, follow the same procedure: on a sheet of paper specify what it is that you want to hear as precisely as you can.  For example, if you know that you want

to hear only the direct examination or only the cross examination of a particular witness, specify that.  Otherwise, we will have to repeat the whole testimony.

We will now go over the verdict form(s). [Pass out verdict forms to each juror and explain the circumstances for the use of each form.]

Your verdict must be unanimous, which means that you must all agree on the verdict.

No one will hurry you.  If you are not able to reach a verdict today, you will resume your deliberations tomorrow.  You may have as much time as you need to reach a verdict.

_____, please escort the jury to the jury deliberation room.

[From Connecticut Pattern Instruction 1-48]

### 37.   **<u>DISCHARGE JURY</u>**

Your verdict in this case has now been accepted, and it is time to discharge you from your oath. The time and energy you have spent listening to the evidence and to the charge and in deliberating to a verdict is greatly appreciated by the parties and by the court.  Jury service is both a burden and a privilege of our legal system, which could not function without your participation.  We thank you for your efforts.

The oath that you took at the beginning of this case obligated you to keep silent about your work as jurors during the trial.  Having rendered your verdict, you are released from that oath.  It is, of course, up to you to decide whether or not to talk about your work as jurors.  You certainly have no obligation to do so.

You are now discharged.  You should report to the jury administration room and tell them you have been discharged.

[Derived from Connecticut Pattern Instruction 1-55]

Dated: October 1, 2007

Respectfully submitted,

By: ___/s/ Donald J. Marchesseault_____.
    Bingham McCutchen LLP
    Stuart D. Rosen (ct 05472)
    Donald J. Marchesseault (ct 22305)
    One State Street
    Hartford, Connecticut 06103
    Telephone: (860) 240-2700
    Facsimile: (860) 240-2818
    E-mail: stuart.rosen@bingham.com
    E-mail: donald.marchesseault@bingham.com

          and

    Quinn Emanuel Urquhart Oliver & Hedges LLP
    Kenneth R. Chiate (phv 02118)
    Michael B. Carlinsky (ct 12587)
    Faith E. Gay (phv 02008)
    Kevin S. Reed (phv 02002)
    Jonathan E. Pickhardt (phv 02119)
    51 Madison Avenue, 22 Floor
    New York, NY
    Telephone: 212-847-7000
    Facsimile: 212-847-7100
    Email: kenchiate@quinnemanuel.com
    Email: faithgay@quinnemanuel.com
    Email: michaelcarlinsky@quinnemanuel.com
    Email: kevinreed@quinnemanuel.com
    Email: jonpickhardt@quinnemanuel.com

*Attorneys for Plaintiffs and Counter-Defendants*
*United States Life Insurance Company of the City of*
*New York and American General Life Insurance*
*Company (as successor in interest to All American*
*Life Insurance Company).*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2007, a copy of the foregoing was filed electronically and served by mail on parties unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to parties unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/ Donald J. Marchesseault .
      Donald J. Marchesseault